IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x
: 
In re: : Chapter 11
: 
NATROL, INC., *et al.*, : Case No. 14-11446 (BLS)
: 
    Debtors.[1] : (Jointly Administered)
: 
: **Objection Deadline: October 16, 2014 at 4:00 p.m. (ET)**
: **Hearing Date: October 23, 2014 at 12:00 p.m. (ET)**
:
------------------------------------------------------------X

### DEBTORS' MOTION FOR AN ORDER (I) APPROVING AND AUTHORIZING: (A) BUYOUT OF AUTOMOBILE LEASE, (B) PRIVATE SALE OF AUTOMOBILE TO PURCHASER, (C) ALLOWANCE OF INDEMNITOR CLAIM, AND (D) SUBSEQUENT REJECTION OF AUTOMOBILE LEASE; AND (II) GRANTING RELATED RELIEF

Natrol, Inc. and its affiliated debtors and debtors in possession in the above-captioned cases (each a "Debtor," and collectively, the "Debtors"), by and through their undersigned counsel, hereby move (the "Motion") this Court for entry of an order substantially in the form attached hereto as Exhibit D (the "Proposed Order"), pursuant to sections 105(a), 363(b), and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (i) authorizing and approving (a) the buyout of that certain *Motor Vehicle Lease Agreement* (the "Automobile Lease")[2] entered into between

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Natrol, Inc. (0780); Natrol Holdings, Inc. (4614); Natrol Products, Inc. (7823); Natrol Direct, Inc. (5090); Natrol Acquisition Corp. (3765); Prolab Nutrition, Inc. (3283); and Medical Research Institute (2825). The Debtors' principal offices are located at 21411 Prairie Street, Chatsworth CA 91311.

[2] A copy of the Automobile Lease is attached hereto as Exhibit A.

Natrol, Inc., as lessee ("Natrol"), Ms. Khudagulyan, as indemnitor (the "Indemnitor")[3] and Euromotors West/The Auto Gallery,[4] as lessor (the "Lessor," and together with Natrol and Indemnitor, the "Lease Parties"), (b) the contemporaneous private sale of that certain 2013 Ferrari 458 Spider (the "Automobile"), which is the subject of the Automobile Lease, to Red Shoe Entertainment ("RSE") or another purchaser who is not affiliated with the Debtors and for whom the RSE will act as a broker or agent (together, the "Purchaser"),[5] subject to higher and better offers,[6] pursuant to the buyout letter issued by Ferrari Financial Services ("FFS") (the "Buy Out Letter"),[7] (c) the allowance of Indemnitor's general unsecured claim against the Debtors, and (d) the Debtors' subsequent rejection of the Automobile Lease; and (ii) granting related relief.  In support of this Motion, the Debtors respectfully represent as follows:

**JURISDICTION**

1.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Debtors consent, pursuant to rule 9013-1(f) of the Local

---

[3]  On September 1, 2013, Natrol and Ms. Khudagulyan entered into that certain *Indemnification Agreement* (the "Indemnification Agreement," a copy of which is attached hereto as Exhibit B), which provides, among other things, that Natrol will indemnify and hold harmless Ms. Khudagulyan for expenses incurred or sustained in connection with her services as the Chief Operating Officer of Natrol, including as serving as a guarantor for automobiles.  Ms. Khydagulyan is an employee of the Debtors and may also be considered an "insider" of the Debtors, as defined in section 101 of the Bankruptcy Code.

[4]  Since the execution of the Lease Agreement, the location where the Lease Parties entered into the Lease Agreement, and presumably, the Lessor, has ceased operations.  The Automobile Lease is being administered by FFS.  Out of an abundance of caution, the Debtors will serve this Motion on the Lessors at the address set forth in the Automobile Lease.

[5]  RSE is not an "affiliate" or "insider" of the Debtors, as defined in section 101 of the Bankruptcy Code.  In the event RSE acts as a third party broker or agent for another buyer, such buyer will not be an "affiliate" or "insider" of the Debtors either.  The owner and operator is an established dealer of exotic automobiles, including Ferraris, with approximately 20 years of experience in the area, including having spent approximately 12 years working for FFS.

[6]  The Debtors will consider higher and better offers from third parties that are submitted by October 16, 2014.

[7]  A copy of the Buy-Out Letter is attached hereto as Exhibit C.

Rules of Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought herein are sections 105(a), 363, and 365, Bankruptcy Rules 2002, 6004 and 9014, and Local Rule 6004-1.

## GENERAL BACKGROUND

3. On June 11, 2014, each of the Debtors in the above-captioned chapter 11 cases (the "Chapter 11 Cases") commenced a voluntary case under chapter 11 of Bankruptcy Code.  The Debtors' Chapter 11 Cases are consolidated for procedural purposes only and are jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules and Local Rule 1015-1.  No trustee or examiner has been appointed in the Chapter 11 Cases.

4. A description of the Debtors' business and the reasons for commencing these Chapter 11 Cases are set forth in the *Declaration of Mesrop G. Khoudagoulian in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 31] and the *Declaration of Jeffrey C. Perea in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 32], which were filed on June 18, 2014 and are incorporated by reference herein.

5. On June 19, 2014, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") [Docket No. 61].

01:16038800.10

**RELEVANT BACKGROUND**

6. On January 1, 2014, the Lease Parties entered into the Automobile Lease. The Automobile Lease provides for monthly lease payments of $4,158.21 (each, a "Monthly Payment"), with such Monthly Payments to be paid on the ninth of each month for a total of 60 months. As of the date hereof, 51 Monthly Payments remain on the Automobile Lease, with approximately $212,068.71 of Monthly Payments remaining, exclusive of late charges and other miscellaneous charges, as applicable. The Automobile Lease also required a down payment in the amount of $25,232.32, a security deposit in the amount of $4,175.00, and contains a purchase option (the "Purchase Option"). As of October 31, 2014, the amount required to purchase the Automobile pursuant to the Purchase Option will be approximately $301,047.78, subject to a slight upward or downward adjustment depending on the application of the security deposit and any other charges due under the Automobile Lease as of the date of entry of the Proposed Order (the "Buy Out Price").[8]

7. On July 30, 2014, the Court entered the *Order Pursuant to Sections 105(a), 361, 362, and 363 of the Bankruptcy Code and Bankruptcy Rule 9019 (I) Authorizing and Approving Compromise and Settlement Agreement with Cerberus Business Finance LLC, (II) Authorizing and Approving the Agreed Final Order Authorizing the Use of Cash Collateral, and (III) Granting Related Relief* [Docket No. 315], which approved the Settlement Agreement entered into among the Debtors, the Committee, Cerberus, and Natrol Global Fze LLC that resolved various issues, including a dispute regarding the use of cash collateral and Cerberus's request to appoint a chapter 11 trustee. Pursuant to the Settlement Agreement, the Debtors are

---

[8] FFS is not exercising the early termination clause under the Automobile Lease. In light of the fact that the Buy Out Price remains subject to adjustment and will directly impact the amount Indemnitor will be required to remit to FFS, the Debtors will file a statement under notice (the "Notice") of the actual amounts paid by all parties within 5 business days of the consummation of the transactions contemplated herein.

01:16038800.10

4

permitted to make only 3 monthly post-petition payments in connection with the Automobile Lease, the last allowable payment being for the month of September, 2014. See Settlement Agreement, at p. 4.

8. Since the Petition Date, the Debtors have been evaluating options to alleviate their estates of the burdens under the Automobile Lease, including a potential straightforward rejection, an assumption and assignment of the Automobile Lease to a third party, consignment of the Automobile to a third party, and the exercise of the Purchase Option under the Automobile Lease, while simultaneously seeking to avoid saddling the estates with a large claim for rejection and/or other damages. After reviewing all available options, the Debtors, in their business judgment, determined that exercising the Purchase Option and partnering with the Purchaser and Indemnitor to effectuate a buyout of the Automobile Lease, while at the same time rejecting the Automobile Lease, would result in the best possible outcome for the Debtors' estates.

9. After soliciting offers from several independent third parties, conducting independent research, and conducting negotiations, the Debtors, in the exercise of their sound business judgment, determined that exercising the Purchase Option and partnering with the Purchaser to buy out the Automobile Lease was the most cost-effective and efficient method of disposing of the Automobile while avoiding large claims against the estates.

**PROPOSED TRANSACTIONS**

10. The transactions (collectively, the "Transactions") contemplated by this Motion are as follows:

    a. the Debtors will exercise the Purchase Option under the Automobile Lease;

    b. the Purchaser will remit $250,000 (the "Purchase Price") directly to FFS;

    c. Indemnitor will remit approximately $51,047.78 to FFS, which amount represents the difference between the Buy Out Price and the Purchase Price, and for which Indemnitor will hold an allowed general unsecured claim against the estates;

    d. the Debtors will remit a processing fee of $2,500 (the "Fee") to the Purchaser;

    e. after the Buy Out Price has been fully remitted to FFS, the Purchaser will own the Automobile free and clear of all liens, claims, encumbrances, and interests; and

    f. the Automobile Lease will terminate upon the consummation of the Purchase Option with no further obligations of the Debtors remaining; however, out of an abundance of caution, the Debtors will reject the Automobile Lease, and FFS will hold no claim for rejection damages, or otherwise, against the estates.

11. The Debtors determined that pursuing this course of action would (a) avoid large rejection damages claims against the estates; (b) avoid a potential administrative or other claim for indemnification by Ms. Khudaguylan pursuant to the Indemnification Agreement for the full amount of the remaining Monthly Payments and any other charges, including an early termination fee, under the Automobile Lease; (c) alleviate the estates of the burden of the Automobile Lease; and (d) enable the Debtors to comply with the terms and spirit of the Settlement Agreement.

## RELIEF REQUESTED

12. By this Motion, the Debtors seek entry of an order, pursuant to sections 105(a), 363(b), and 365 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004, (i) authorizing and approving (a) the buyout of the Automobile Lease as contemplated herein, (b) the sale of the Automobile to Purchaser, or another party submitting a higher and better offer, free and clear of all liens, claims and encumbrances, (c) allowing the general unsecured claim of Indemnitor, and (d) the Debtors' subsequent rejection of the Automobile Lease; and (ii) granting related relief.

01:16038800.10

**BASES FOR RELIEF REQUESTED**[9]

**A.     The Buy Out of the Automobile Lease and Purchase by the Purchaser Should be Approved.**

13.     For the reasons explained herein, the Debtors believe that the approval of a buy out of the Automobile Lease pursuant to the terms set forth herein is appropriate and in the best interests of the estates.

14.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1) (2006).  Although section 363 does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan, courts in this Circuit and others, in applying this section, have required that the decision to sell assets outside the ordinary course of business be based upon the debtor's sound business judgment and a finding of "good faith."  See In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 149-50 (3d Cir. 1986) (requiring a finding of "good faith" to approve a sale under section 363(b)); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property under [section 363(b)], courts require the debtor to show that a sound business purpose justifies such actions."); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991) (examining the history of the standard required for a pre-confirmation sale of assets under section 363(b) and opining that the Third Circuit (i) has implicitly abandoned the "emergency"

---

[9]   Unexpired leases are property of the estate pursuant to section 541(a) of the Bankruptcy Code.  See L.R.S.C. Co., v. Rickel Home Centers, Inc. (In re Rickel Homes Center, Inc.), 209 F.3d 291, 297 (3d Cir. 2000) (noting that "[a]s the legislative history makes clear, 'the scope of [section 541(a)] is broad.  It includes all kinds of property, including tangible or intangible property, causes of action….[and] also includes title to property, which is an interest, just as are a possessory interest or leasehold interest, for example.'") (external citations omitted).

01:16038800.10

test under earlier precedent and (ii) has adopted the "sound business judgment" test as utilized by other courts).

15. The Debtors submit that more than ample business justification exists to exercise the Purchase Option under the Automobile Lease and consummate the Transactions contemplated herein, including partnering with the Purchaser to buy out the Automobile Lease, remitting the Fee, and granting Indemnitor an allowed general unsecured claim in light of the Indemnification Agreement. After evaluating all of their options, and after much solicitation and negotiation, the Debtors believe that the Transactions outlined herein are both reasonable and necessary to preserve the value of the Debtors' estates for the benefit of all stakeholders.

16. As noted above, the Debtors explored several options before deciding to seek authority to consummate the Transactions, including a straightforward rejection of the Automobile Lease and consignment of the Automobile to a third party. After careful consideration, the Debtors determined that a straightforward rejection of the Automobile Lease would result in the Lessor/FFS holding a large claim for rejection damages, and/or Indemnitor holding a large claim against the estates under the Indemnification Agreement, and that consignment of the Automobile to a third party would be costly and held a high degree of uncertainty with respect to, among other things, the sale timing and price ultimately obtained for the Automobile. On the other hand, the Transactions contemplated will relieve the estates of the burden of the Automobile Lease, avoid large claims against the estates, and will comport with the requirements and spirit of the Settlement Agreement.

17. Further, under the circumstances, the Automobile has been subjected to a reasonable marketing process, and given the small market for exotic cars such as the Automobile, and given the fact that such vehicles are more often purchased in warmer weather

01:16038800.10

months, the Debtors believe they have performed an exhaustive search for possible purchasers such that it is unlikely that any auction or further marketing of the Automobile would result in a higher purchase price than that presently set forth by the Purchaser.  The Debtors negotiated with the Purchaser at arm's-length over the course of several weeks to ensure that partnering with the Purchaser represented the best possible manner in which to alleviate the estates of the burdens of the Automobile and the Automobile Lease.  Indeed, the Debtors submit that further marketing efforts would only increase administrative costs and jeopardize the Purchaser's willingness to close on the contemplated transaction, especially as time is of the essence given the time of year and market for such exotic cars.

18. Accordingly, the Debtors submit that the Transactions contemplated herein, including the Debtors' exercise of the Purchase Option, partnering with the Purchaser, remitting the Fee to the Purchaser, and granting Indemnitor an allowed general unsecured claim against the estates, represent the sound exercise of the Debtors' business judgment.

**B.    An Auction of the Automobile Lease Is Not Required.**

19. A debtor has broad discretion in determining the manner in which its assets are sold.  See In re Alisa P'ship, 15 B.R. 802, 802 (Bankr. D. Del. 1981) ("The manner of the sale is within the discretion of the Trustee. . . .").  Under the circumstances here, the Debtors do not intend to conduct an auction for the Automobile Lease.  See Del. Bankr. L.R. 6004-1(b)(iv)(D).

20. Bankruptcy Rule 6004 sets forth the procedural parameters for asset sales outside of the ordinary course of business and provides that such sales may be by either public or private sales.  Fed. R. Bankr. P. 6004(f)(1).  Accordingly, a debtor may sell estate assets, including their interests in unexpired leases, outside of the ordinary course of business without

01:16038800.10

conducting a public auction thereof, or, as the case may be, soliciting a bid higher or better than that contained in a privately negotiated purchase agreement.  See In re Woodscape Ltd. P'ship, 134 B.R. 165, 174 (Bankr. D.Md. 1991) ("There is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction.").

21.     A debtor is obligated to maximize the return to its estate resulting from an asset sale, whether public or private.  See In re Bakalis, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998) ("When a debtor or trustee conducts a sale under § 363(b), it has an obligation to maximize revenues for the estate."); In re Nepsco, Inc., 36 B.R. 25, 26 (D. Me. 1983) ("Clearly, the thrust of the statutory scheme is to provide maximum flexibility to the trustee, subject to the oversight of those for whose benefit he acts, i.e., the creditors of the estate.").  Accordingly, if a debtor in possession concludes that a particular private purchase offer is the "most advantageous of the estate," a court should defer to the debtor in possession's business judgment.  Bakalis, 220 B.R. at 532.

22.     The Debtors submit that the proposed Transactions are in the best interests of the Debtors' estates inasmuch as they will avoid large claims and the costs and uncertainty attendant to maintaining the Automobile Lease.  In addition, as a practical matter, the proposed transactions represent an efficient means for the disposition of the Automobile.  The Debtors believe that conducting an auction on notice during the pendency of these Chapter 11 Cases for this type of asset, particularly in light of their marketing efforts to date, would not only be futile, but would be costly and impractical.  A public auction is unnecessary because the Purchaser's offer will benefit the estates, and the Debtors and their advisors have concluded, in their professional opinion after consideration of the offers already received and the market for the Automobile, that there is a high degree of certainty that the proposed Transactions will result in

01:16038800.10

the disposition of the Automobile and that the Purchaser will provide the highest and best value for the Automobile.  In addition, partnering with the Purchaser eliminates the step of the Debtors remitting the full Buy Out Price and then selling the Automobile to the Purchaser.  Under the construct contemplated herein, the $2,500 direct cash outlay required by the Debtors is warranted to avoid future administrative costs to the Debtors' estates.

C. **The Purchaser Is Entitled to the Protections of Section 363(m) of the Bankruptcy Code.**

23. The Debtors additionally request that this Court find that the Purchaser is entitled to the protections provided by section 363(m) of the Bankruptcy Code in connection with the proposed Transactions.

24. Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) . . . of this section of a sale . . . of property does not affect the validity of a sale . . . under such authorization to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

25. Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal.  Although the Bankruptcy Code does not define "good faith purchaser," the Third Circuit, construing section 363(m) of the Bankruptcy Code, has stated that "the phrase encompasses one who purchases in 'good faith' and for 'value.'"  Abbotts Dairies, 788 F.2d at 147.  To constitute lack of good faith, a party's conduct in connection with the sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders."  Id. (citing In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1198 (7th Cir. 1978)).

26.     The Debtors submit that their agreement with the Purchaser to undertake to buyout the Automobile Lease was the result of an arm's-length, actively negotiated transaction, acted in good faith under the standards set forth in Abbotts Dairies.  Accordingly, the Debtors request that this Court make a factual determination that the Purchaser will purchase the Debtors' interests in the Automobile Lease (and ultimately own the Automobile) in "good faith," as defined in section 363(m) of the Bankruptcy Code and under Circuit precedent in Abbotts Dairies.

**D.     Rejection of the Automobile Lease Subsequent to Consummation of the Buy Out Is Appropriate.**

27.     Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or an unexpired lease." 11 U.S.C. § 365(a); see also In re University Med. Ctr., 973 F.2d 1065, 1075 (3d Cir. 1992).  The Court may approve a debtor's rejection of an executory contract or unexpired lease if such rejection is made in the exercise of such debtor's sound business judgment, and if such rejection benefits its estate.  See, e.g., Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp., 872 F.2d 36, 39 (3d Cir. 1989); In re Bildisco, 682 F.2d 72, 79 (3d Cir. 1982), aff'd, 465 U.S. 513 (1984); In re Patterson, 119 B.R. 59 (E.D. Pa. 1990); see also, In re Federated Dep't. Stores, Inc., 131 B.R. 808, 811 (S.D. Ohio 1991) ("Courts traditionally have applied the business judgment standard in determining whether to authorize the rejection of executory contracts and unexpired leases."); In re Bradlees, Inc., 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996) ("[U]nder the business judgment test . . . [a court should approve a debtor's proposed rejection] if the debtor can demonstrate that rejection will benefit the estate.").  It is enough if a debtor determines in its business judgment that a benefit will be realized.  Sharon Steel Corp., 872 F.2d at 39 (citing In re Wheeling-Pittsburgh Steel Corp., 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987)).  The business

01:16038800.10

12

judgment standard requires that the Court approve the debtor's business decision unless that judgment is the product of bad faith, whim, or caprice.  <u>Lubrizol Enter., Inc. v. Richmond Metal Finishers</u>, 756 F.2d 1043, 1047 (4th Cir. 1985).

28. Once the buyout of the Automobile Lease is consummated, the Automobile Lease will terminate and FFS will have no interest in the Automobile and no claim against the estates.  Out of an abundance of caution, the Debtors seek to reject the Automobile Lease as part and parcel of the transactions contemplated hereunder.  The Debtors clearly no longer have a need for the Automobile or the Automobile Lease.  Accordingly, the Debtors submit that the rejection of the Automobile Lease is within its sound business judgment and is in the best interest of the Debtors, their estates, creditors, and other parties-in-interest.

E. **<u>Waiver of Stay of Order Is Necessary.</u>**

29. Pursuant to Bankruptcy Rule 6004(h), an order authorizing the sale of property is stayed for fourteen days after the entry of the order unless the Court orders otherwise.  The Debtors request that the Court order that such stay not apply with respect to the transactions contemplated herein.  Given the fact that the Automobile is a high-ticket, exotic, luxury item and that the Buy Out Price and Purchase Price each have expiration dates and deadlines associated with them, time is of the essence and the Debtors must consummate the transactions contemplated hereunder as quickly as possible in order to ensure that they receive the most favorable terms and conditions, and to prevent the Debtors from being forced to expend additional estate funds that would otherwise be necessary if the transitioning of the Automobile to the Purchaser is delayed.

## NOTICE

30. Notice of this Motion has been provided to (i) the U.S. Trustee; (ii) counsel for the Committee; (iii) counsel for Cerberus; (iv) FFS; (v) the Lessor; (vi) the

01:16038800.10

Purchaser; (vii) Indemnitor; (viii) all parties that may have a lien on the Automobile; and (ix) any party requesting notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as <u>Exhibit D</u>, , (i) authorizing and approving (a) the buyout of the Automobile Lease as contemplated herein, (b) the sale of the Automobile to the Purchaser, (c) the allowance of the general unsecured claim of Indemnitor, and (d) the Debtors' subsequent rejection of the Automobile Lease; and (ii) granting related and such other and further relief as the Court deems just and proper.

Dated:   October 2, 2014
         Wilmington, Delaware

*/s/ Maris J. Kandestin*
Michael R. Nestor (No. 3526)
Maris J. Kandestin (No. 5294)
Ian J. Bambrick (No. 5455)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel to the Debtors and*
*Debtors in Possession*

01:16038800.10