## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x
                :

In re:                   :    Chapter 11
                :

LEAF123, INC. (f/k/a NATROL, INC.), *et al.*,  :    Case No. 14-11446 (BLS)
                :

    Debtors.[1]         :    (Jointly Administered)
                :
                :    **Hearing Date:  TBD**
                :    **Objection Deadline:  February 20, 2015, at 4:00 p.m. (ET)**
------------------------------------------------------------x

**DEBTORS' SECOND MOTION FOR ENTRY OF AN ORDER,
PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE, FURTHER
EXTENDING THE EXCLUSIVE PERIODS FOR THE FILING OF A CHAPTER 11
PLAN AND SOLICITATION OF ACCEPTANCES THEREOF**

Leaf123, Inc. (f/k/a Natrol, Inc.) and its affiliated debtors and debtors in

possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby move

(the "Motion") this court (the "Court") for entry of an order in the form attached hereto as

Exhibit 1 (the "Proposed Order"), pursuant to section 1121(d) of title 11 of the United States

Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), further extending the Exclusive Periods

(as defined below) for the filing of a chapter 11 plan and solicitation of acceptances thereof.[2]  In

support thereof, the Debtors respectfully represent as follows:

### JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C.

§§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States

---

[1]    The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows:  Leaf123, Inc. (f/k/a Natrol, Inc.) (0780); Leaf123 Holdings, Inc. (f/k/a Natrol Holdings, Inc.) (4614); Leaf123 Products, Inc. (f/k/a Natrol Products, Inc.) (7823); Leaf123 Direct, Inc. (f/k/a Natrol Direct, Inc.) (5090); Leaf123 Acquisition Corp. (f/k/a Natrol Acquisition Corp.) (3765); Leaf123 Nutrition, Inc. (f/k/a Prolab Nutrition, Inc.) (3283); and Leaf123 Research Institute (f/k/a Medical Research Institute) (2825).  The Debtors' principal offices are located at 21411 Prairie Street, Chatsworth CA 91311.

[2]    The Exclusive Periods were previously extended by the Court by order entered on October 21, 2014 [Docket No. 604].

District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and procedural predicates for the relief requested herein are section 1121(d) of the Bankruptcy Code as supplemented by Rule 9006 of the Federal Rules of Bankruptcy Procedure and Local Rule 9006-2.

## BACKGROUND

3.      On June 11, 2014 (the "Petition Date"), each of the Debtors commenced a voluntary case (the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

4.      On June 19, 2014, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee"). No trustee or examiner has been appointed in these cases.

5.      On September 29, 2014, the Debtors filed the *Motion of the Debtors for Orders (A)(I) Approving Sale Procedures; (II) Approving Stalking Horse Protections; (III) Scheduling a Hearing to Consider Sale of Certain Assets; (IV) Approving Form and Manner of Notice of Sale Procedures and Notice of Potential Assumption, Assignment, and/or Sale of Contracts and Leases; and (V) Granting Related Relief; and (B)(I) Authorizing the Sale of Assets*

01:16577111.6

*Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and*

*Approving Purchase Agreement Thereto; (III) Approving the Assumption, Assignment, and/or*

*Sale of Certain Executory Contracts and Unexpired Leases Related Thereto; (IV) Providing for*

*Indefeasible Payment of Sale Proceeds to Secured Lender; and (V) Granting Related Relief*

[Docket No. 524] (as amended by Docket No. 586, the "<u>Sale Motion</u>") with the Court.

6.    On October 23, 2014, the Court conducted a hearing with respect to

approval of the bid procedures (the "<u>Bid Procedures</u>") set forth in the Sale Motion, as amended

as set forth in the *Notice of Amendment of Bid Procedures and Sale Motion* [Docket No. 701],

and on October 24, 2014, the Court entered the *Order (I) Approving Bid Procedures;*

*(II) Approving Stalking Horse Protections; (III) Scheduling a Hearing to Consider a Sale of*

*Certain Assets or a Refinancing Transaction; (IV) Approving Form and Manner of Notice of Bid*

*Procedures and Notice of Potential Assumption, Assignment, and/or Sale of Contracts and*

*Leases; and (V) Granting Related Relief* [Docket No. 622] (the "<u>Bid Procedures Order</u>").[3]

7.    On November 10, 2014, the Debtors held an Auction for the Sale of the

Assets.  At the conclusion of the Auction, Aurobindo Pharma USA Inc. was determined to be the

Successful Bidder, and SRN Acquisition Corp. was determined to be the Next Highest Bidder, as

set forth in the *Notice of Filing of Successful Bidder and Next Highest Bidder* [Docket No. 681].

8.    On November 11, 2014, the Debtors filed the *Notice of Filing of*

*(I) Purchase Agreement; (II) List of Contracts and Leases of Which the Successful Bidder and,*

*Alternatively, the Next Highest Bidder Intend to Take Assignment; and (III) the Proposed Sale*

*Order* [Docket No. 697].  Attached as Exhibit A thereto is the asset purchase agreement executed

by the Debtors and the Successful Bidder (the "<u>Purchase Agreement</u>").

---

[3]    All capitalized terms used but otherwise not defined herein have the meanings set forth in the Bid Procedures or
Bid Procedures Order, as applicable.

9.      On November 12, 2014, the Court entered an order approving the Sale of the Assets to the Successful Bidder, pursuant to the terms and conditions set forth in the Purchase Agreement [Docket No. 709].

10.     On December 4, 2014, the Sale of the Assets to the Successful Bidder closed.  See Docket No. 769.

11.     Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of the Chapter 11 Cases can be found in the *Declaration of Mesrop G. Khoudagoulian in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 31] and the *Declaration of Jeffrey C. Perea in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 32].

## RELIEF REQUESTED

12.     By this Motion, the Debtors request, pursuant to section 1121(d)(1) of the Bankruptcy Code, entry of an order further extending the periods within which only the Debtors may file a chapter 11 plan and solicitation of acceptances thereof by approximately thirty (30) days.  Unless extended, the Debtors' Plan Period and Solicitation Period (each as defined below) will expire on February 6, 2015,[4] and April 7, 2015, respectively.  The Debtors seek to extend the Plan Period and Solicitation Period through and including March 9, 2015, and May 7, 2015, respectively, without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods.  This Motion is the Debtors' second request to extend the Exclusive Periods.

---

[4]    Pursuant to Local Rule 9006-2, the filing of this Motion prior to the expiration of the current Plan Period shall automatically extend the Exclusive Periods until the Court acts on the Motion without the necessity of the entry of a bridge order.

## BASIS FOR RELIEF

13.     Section 1121(b) of the Bankruptcy Code provides for an initial period of one hundred and twenty (120) days after commencement of a chapter 11 case during which a debtor has the exclusive right to propose and file a chapter 11 plan (the "Plan Period").  11 U.S.C. § 1121(b).  Section 1121(c)(3) provides that, if a debtor has not filed a plan that has been accepted before one hundred and eighty (180) days after commencement of a chapter 11 case by each class of claims or interests that is impaired under the plan (the "Solicitation Period" and, together with the Plan Period, the "Exclusive Periods"), any party in interest may file a competing plan.  11 U.S.C. § 1121(c)(3).

14.     The Exclusive Periods are designed to afford a debtor a full and fair opportunity to propose a consensual plan and solicit acceptances of such plan, without disrupting the administration of the Debtors' estates, which would result from the filing of competing plans by non-debtor parties.  To this end, where the Exclusive Periods prove to be unfeasible, section 1121(d) of the Bankruptcy Code allows the Court to extend the Exclusive Periods for cause. 11 U.S.C. § 1121(d).   Although the Bankruptcy Code does not define the term "cause," the legislative history indicates that Congress intended it to be a flexible standard to balance the competing interests of a debtor and its creditors.  See H.R. REP. NO. 95–595, at 231–32 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6191 (noting that Congress intended to give bankruptcy courts flexibility to protect a debtor's interests by allowing unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

15.     Congress built flexibility into section 1121 of the Bankruptcy Code to give debtors sufficient opportunity to stabilize their business' operations at the outset of their chapter 11 case and to negotiate an effective plan with their creditors.  In re Newark Airport/Hotel Ltd. P'ship, 156 B.R. 444, 451 (Bankr. D. N.J.), aff'd, 155 B.R. 93 (D.N.J. 1993) (noting that

Congress designed chapter 11 provisions to enable a debtor to remain in control for some period of time, thereby making reorganization an attractive alternative to financially troubled companies); Gaines v. Perkins (In re Perkins), 71 B.R. 294, 297–98 (W.D. Tenn. 1987) (Congress designed section 1121 to give the debtor time to reach an agreement with its creditors regarding a plan of reorganization).

16.     In making the determination whether to affirm or deny a request to extend the Exclusive Periods for "cause," courts have considered a variety of factors, including:

a.     The size and complexity of a debtor's case;

b.     Whether a debtor has had sufficient time to negotiate and prepare adequate information;

c.     The existence of good-faith progress;

d.     Whether a debtor is paying its debts as they becomes due;

e.     Whether a debtor has made progress negotiating with creditors;

f.     The length of time a case has been pending;

g.     Whether a debtor is seeking an extension to pressure creditors; and

h.     Whether or not unresolved contingencies exist.

In re Cent. Jersey Airport Servs., LLC, 282 B.R. 176, 184 (Bankr. D. N.J. 2002) (citations omitted); see also In re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (citing to most of the factors listed above in determining whether to extend the exclusive periods); In re United Press Int'l, Inc., 60 B.R. 265, 269 (Bankr. D. D.C. 1986) (holding that the debtor showed "cause" to extend its exclusive period based upon certain of above-quoted factors).

17.     The facts and circumstances of these Chapter 11 Cases justify further extending the Exclusive Periods to provide the Debtors with an unimpeded opportunity to confirm a plan of liquidation (a "Plan").  Since the Petition Date, the Debtors have (i) worked diligently to ensure their smooth entry into chapter 11 and deal with the myriad issues related to

01:16577111.6

the commencement of these Chapter 11 Cases; (ii) directed considerable efforts towards responding to the *Emergency Motion for Appointment of Chapter 11 Trustee* [Docket No. 56], and all discovery related thereto, filed by Cerberus Business Finance, LLC ("Cerberus"); (iii) prosecuted the Debtors' motion to use cash collateral on a final basis [Docket No. 86]; (iv) compiled and provided additional financial information to Cerberus and the Committee in connection with various orders of this Court; (v) negotiated that certain *Compromise and Settlement Agreement* (the "Settlement") by and among the Debtors, the Committee, Cerberus, and Natrol Global Fze LLC, which was approved by this Court on July 30, 2014 [Docket No. 315]; (vi) coordinated the Sale process and held the Auction; and (vii) finalized and closed the Sale of the Assets.  Further, since the closing of the Sale, the efforts of the Debtors' professionals have been focused on resolving certain open issues related to the Sale and negotiating a Plan and related disclosure statement.  As to the Sale-related issues, the Debtors have been awaiting delivery of the purchase price allocation (as set forth section 3.5(a) of the Purchase Agreement) and the valuation of the Assets for the purpose of determining sales tax (as set forth in section 3.5(b) of the Purchase Agreement).  In addition, the Debtors have been attempting to resolve disputes raised by the Successful Bidder, pursuant to the *Claims Administration Protocol* approved by the Court on December 2, 2014 [Docket No. 764], regarding certain liabilities.  The delay in receiving the purchase price allocation has hindered the Debtors' ability to finalize the Plan and related disclosure statement.  In addition, there was a significant delay in receiving comments to the current version of the Plan from the Debtors' equity holders while they conducted an independent analysis of certain tax consequences to equity thereunder.

01:16577111.6

18.     Further, in regard to a Plan, the Debtors recently received initial comments from their equity holders and the Committee and hope to have fruitful discussions with respect to same in the near term.

19.     Further extending the Exclusive Periods will facilitate an orderly and cost-effective plan process for the benefit of all creditors by providing the Debtors with a meaningful opportunity to build on the progress that has been made in these Chapter 11 Cases without unnecessary interference from non-debtor parties.  Termination of the Exclusive Periods, on the other hand, would give rise to the threat of competing plans, resulting in increased administrative expenses that would diminish the value of the Debtors' estates to the detriment of creditors and equity holders.  Termination of the Exclusive Periods could also meaningfully delay, if not completely undermine, the Debtors' ability to confirm any plan.  Moreover, further extending the Exclusive Periods will not harm or prejudice the Debtors' creditors or other parties in interest. On the contrary, as noted herein, the Debtors have resolved their issues with Cerberus and the Committee pursuant to the Settlement, have closed the Sale, and are working cooperatively with interested parties to effectuate a successful exit from chapter 11.

20.     The Debtors submit that an extension of the Exclusive Periods at this time would benefit the Debtors and their estates by allowing for the progress achieved in these Chapter 11 Cases thus far to culminate in the confirmation and consummation of a consensual Plan.  In light of the foregoing, the Debtors assert that ample cause exists to extend the Exclusive Periods and that the relief requested herein is in the best interests of the Debtors, their estates, and their creditors.

### NOTICE

21.     Notice of this Motion has been provided to (i) the U.S. Trustee; (ii) counsel for the Committee; (iii) counsel for Plethico Pharmaceuticals Ltd; and (iv) any party

01:16577111.6

8

requesting notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

       **WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order granting the relief requested herein and granting the Debtors such other and further relief as is just and proper.

Dated:   January 6, 2015
         Wilmington, Delaware

                               */s/ Ian J. Bambrick*
                               Michael R. Nestor (No. 3526)
                               Maris J. Kandestin (No. 5294)
                               Ian J. Bambrick (No. 5455)
                               YOUNG CONAWAY STARGATT & TAYLOR, LLP
                               Rodney Square
                               1000 North King Street
                               Wilmington, Delaware 19801
                               Telephone: (302) 571-6600
                               Facsimile: (302) 571-1253

                               *Counsel to the Debtors and*
                               *Debtors in Possession*

01:16577111.6