IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x
:
In re:                                                    :   Chapter 11
                                                          :
LEAF123, INC. (f/k/a NATROL, INC.), *et al.*,             :   Case No. 14-11446 (BLS)
                                                          :   (Jointly Administered)
Debtors.[1]                                               :
                                                          :   Proposed Hearing Date: 4/16/15 at 10:00 a.m. (ET)
                                                          :   Proposed Obj. Deadline: 4/14/15 at 4:00 p.m. (ET)
---------------------------------------------------------x

**EQUITY HOLDERS' MOTION FOR ENTRY OF AN ORDER,
PURSUANT TO SECTIONS 105(A) AND 363(B) OF THE BANKRUPTCY CODE,
APPROVING AN INITIAL DISTRIBUTION TO THE EQUITY HOLDER
FOR PAYMENT OF THEIR PROFESSIONALS**

Plethico Pharmaceuticals Ltd. of India, an Indian company ("Plethico India") is an ultimate and sole shareholder of Plethico Global Holdings B.V., a Netherlands company ("Plethico Netherlands"). Plethico Netherlands is a sole shareholder of Plethico U.S. Holdings, Kft, a Hungarian company ("Plethico Hungary" and together with Plethico India and Plethico Netherlands, "Plethico"). Plethico Hungary owns 75% ownership stocks while Plethico Netherlands owns 25% ownership stocks of the Debtors in the above-captioned chapter 11 cases.

Plethico India and Plethico Netherlands (collectively, the "Equity Holders") hereby submit this motion (the "Motion"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), for entry of an order, substantially in the form attached hereto as Exhibit E (the "Proposed Order"), authorizing the Debtors' to make an initial distribution of $1.0 million to Plethico Netherlands by directly

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Leaf123, Inc. (f/k/a Natrol, Inc.) (0780); Leaf123 Holdings, Inc. (f/k/a Natrol Holdings, Inc.) (4614); Leaf123 Products, Inc. (f/k/a Natrol Products, Inc.) (7823); Leaf123 Direct, Inc. (f/k/a Natrol Direct, Inc.) (5090); Leaf123 Acquisition Corp. (f/k/a Natrol Acquisition Corp.) (3765); Leaf123 Nutrition, Inc. (f/k/a Prolab Nutrition, Inc.) (3283); and Leaf123 Research Institute (f/k/a Medical Research Institute) (2825). The Debtors' principal offices are located at 21411 Prairie Street, Chatsworth CA 91311.

{05159652.DOCX.}

remitting payment for fees and expenses to certain professionals of Plethico (the "Plethico Professionals' Fees").[2] In support of this Motion, the Equity Holders rely upon the Fee Chart (Exhibit A), the Declaration of Mr. Vimlesh Devideen Chaurasia of RiSiKo Consulting LLP (Exhibit B), and the Declaration of Mr. Hiren Doshi of RiSiKo Consulting LLP (Exhibit C)[3]. In further support of this Motion, the Equity Holders respectfully represent as follows:

## JURISDICTION

1. This court (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Debtors consent pursuant to Rule 9013-1(f) of the Local Rules of Practice and Procedure of the United States Bankruptcy Court for the District of Delaware to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code.

---

[2] A chart providing a description of the Plethico Professionals' Fees that will be paid if the relief requested by this Motion is granted is attached hereto as Exhibit A (the "Fee Chart").

[3] RiSiKo Consulting LLP is a business and risk advisory consulting firm, based in India. In 2014, Plethico India (and later Plethico Netherlands) appointed RiSiKo to provide various risk advisory and management consulting services to Plethico with respect to the Debtors. The Debtors have appointed one of the RiSiKo personnel as an officer who is to work closely with the Debtors' Chief Financial Officer. The Debtors propose to appoint RiSiKo, in addition to an additional independent officer, as part of the Wind-Down Committee, pursuant to the terms set forth in the Plan of Liquidation filed by the Debtors with this court.

## GENERAL BACKGROUND

3. On June 11, 2014, each of the Debtors commenced a voluntary case (the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

4. On June 19, 2014, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee"). No trustee or examiner has been appointed in these cases.

5. On September 29, 2014, the Debtors filed the Motion of the Debtors for *Orders (A)(I) Approving Sale Procedures; (II) Approving Stalking Horse Protections; (III) Scheduling a Hearing to Consider Sale of Certain Assets; (IV) Approving Form and Manner of Notice of Sale Procedures and Notice of Potential Assumption, Assignment, and/or Sale of Contracts and Leases; and (V) Granting Related Relief; and (B)(I) Authorizing the Sale of Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Purchase Agreement Thereto; (III) Approving the Assumption, Assignment, and/or Sale of Certain Executory Contracts and Unexpired Leases Related Thereto; (IV) Providing for Indefeasible Payment of Sale Proceeds to Secured Lender; and (V) Granting Related Relief* [Docket No. 524] (as amended by Docket No. 586, the "Sale Motion") with the Court.

6. On October 23, 2014, the Court conducted a hearing with respect to approval of the bid procedures (the "Bid Procedures") set forth in the Sale Motion, as amended as set forth in the *Notice of Amendment of Bid Procedures and Sale Motion* [Docket No. 701], and on October 24, 2014, the Court entered the *Order (I) Approving Bid Procedures; (II) Approving Stalking Horse Protections; (III) Scheduling a Hearing to Consider a Sale of Certain Assets or a Refinancing Transaction; (IV) Approving Form and Manner of Notice of Bid Procedures and*

*Notice of Potential Assumption, Assignment, and/or Sale of Contracts and Leases; and (V) Granting Related Relief* [Docket No. 622] (the "Bid Procedures Order").[4]

7. On November 10, 2014, the Debtors held an Auction for the Sale of the Assets. At the conclusion of the Auction, Aurobindo Pharma USA Inc. ("Aurobindo") was determined to be the Successful Bidder, and SRN Acquisition Corp. was determined to be the Next Highest Bidder, as set forth in the *Notice of Filing of Successful Bidder and Next Highest Bidder* [Docket No. 681].

8. On November 11, 2014, the Debtors filed the *Notice of Filing of (I) Purchase Agreement; (II) List of Contracts and Leases of Which the Successful Bidder and, Alternatively, the Next Highest Bidder Intend to Take Assignment; and (III) the Proposed Sale Order* [Docket No. 697]. Attached as Exhibit A thereto is the asset purchase agreement executed by the Debtors and Aurobindo (the "Purchase Agreement").

9. On November 12, 2014, the Court entered an order approving the Sale of the Assets to Aurobindo, pursuant to the terms and conditions set forth in the Purchase Agreement [Docket No. 709].

10. On December 4, 2014, the Sale of the Assets to Aurobindo closed (the "Sale Transaction"). *See* Docket No. 769.

11. On February 18, 2015, the Debtors filed with the Court the *Joint Liquidating Plan of Leaf123, Inc. (f/k/a Natrol, Inc.) and Its Affiliated Debtors* [Docket No. 920] and the *Disclosure Statement for Joint Liquidating Plan of Leaf123, Inc. (f/k/a Natrol, Inc.) and Its Affiliated Debtors* [Docket No. 921]. On March 20, 2015, the Debtors filed with the Court the *First Amended Joint Liquidating Plan of Leaf123, Inc. (f/k/a Natrol, Inc.) and Its Affiliated*

---

[4] All capitalized terms used in this section but otherwise not defined herein have the meanings set forth in the Bid Procedures or Bid Procedures Order, as applicable.

*Debtors* [Docket No. 993] (as it may be further amended, modified, or supplemented from time to time, the "Plan")[5] and the *Disclosure Statement for First Amended Joint Liquidating Plan of Leaf123, Inc. (f/k/a Natrol, Inc.) and Its Affiliated Debtors* [Docket No. 994] (as it may be further amended, modified, or supplemented from time to time, the "Disclosure Statement").

12. The hearing to consider the adequacy of the Disclosure Statement is scheduled for April 2, 2015, at 10:00 a.m. (ET) and the hearing to consider the Plan is currently scheduled for May 8, 2015, at 9:30 a.m. (ET).

13. Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of the Chapter 11 Cases can be found in the *Declaration of Mesrop G. Khoudagoulian in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 31] and the *Declaration of Jeffrey C. Perea in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 32].

**BACKGROUND SPECIFIC TO THE RELIEF REQUESTED**

14. As set forth more fully in the Plan and the Disclosure Statement, the Plan is a plan of liquidation, pursuant to which the net proceeds from the Sale Transaction and the proceeds from the disposition of any Remaining Assets will be pooled and distributed to persons or entities holding Allowed Claims and Equity Interests in accordance with the priorities of the Bankruptcy Code and the summary of treatment of Claims and Equity Interests set forth below. Due to the significant amount of proceeds from the Sale Transaction, the number and amount of Allowed Claims will not affect distributions for Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, or Allowed Non-Tax Priority Claims. Actual distributions may differ from those set forth in the table below depending on, among other things, the

---

[5] Capitalized terms used but not otherwise defined in the Motion have the meaning given to them in the Plan.

liquidation of Filed litigation Claims, the amount of the recoveries on account of any pending litigation, and the Wind-Down Expenses. However, as the table indicates, the Debtors anticipate that all Holders of Allowed Claims will receive 100% recoveries and holders of General Unsecured Claims will receive 100% recoveries plus Interest. Further, the Debtors anticipate that Holders of Equity Interests will receive Distributions, which will consist of the remainder of the net proceeds from the Sale Transaction and any Remaining Assets after Holders of Allowed Claims have been paid in full in accordance with the Plan. Based on the analysis undertaken by the Debtors' and their professionals, the Debtors' anticipate that at least $4.0 million[6] will be available for distribution to Holders of Equity Interests.

| Class | Description | Treatment | Estimated Percentage Recovery |
|---|---|---|---|
| Class 1 | Non-Priority Tax Claims | Unimpaired | 100% |
| Class 2 | General Unsecured Claims | Unimpaired | 100% plus Interest |
| Class 3 | Equity Interests | Impaired | TBD[7] |

15. As a result of the significant proceeds realized from the Sale Transaction, Plethico India, the ultimate equity owner of the Debtors both prior to and subsequent to the

---

[6] This is the Debtors' initial estimate of the amount available for distribution to Holders of Equity Interests, but the Debtors anticipate that, as ongoing negotiations are concluded with various creditors, the amount required to be held in the Reserves will be significantly reduced, which will increase the total amount available to distribute to Holders of Equity Interests on a dollar for dollar basis.

[7] The approximate recovery percentage identified for Equity Interests is based on the Debtors' best estimate of the aggregate amount of the General Unsecured Claims ultimately Allowed upon conclusion of the Claims reconciliation and objection process, and after payment of Wind-Down Expenses and other expenses, including administrative expenses, accrued during the pendency of the Chapter 11 Cases. Accordingly, actual recoveries could technically be less as they are subject to a number of factors, including, but not limited to, the successful prosecution of certain objections to Claims.

commencement of the Chapter 11 Cases,[8] is the largest stakeholder in the estates' assets. Throughout the case, Plethico has been, at the request of the Debtors, providing continuous assistance and has been a source of vital information necessary for negotiation and resolution of various issues including pending unliquidated claims. As a result, Plethico India has engaged various professionals[9] to both protect Plethico entities' interests in the estates and to assist in the resolution of open issues related to the wind-down of the Debtors' estates. As a result of certain financial complications, these professionals have significant amounts due and owing for their services and certain of them have notified Plethico India and the Debtor that further services may not be provided without immediate payment.

## RELIEF REQUESTED

16. Pursuant to this Motion, the Equity Holders request that the Court enter the Proposed Order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, authorizing the Debtors to make an initial distribution of $1.0 million to Plethico Netherlands by directly remitting the Plethico Professionals' Fees in the amounts set forth on the Fee Chart to the professionals listed therein in order to ensure the continued representation of the Equity Holders and to prevent any interruption of the continuing efforts currently underway to resolve all remaining open issues, thereby expediting confirmation of the Plan, payment of the Allowed Claims and the final wind-down of the Debtors' estates.

---

[8] Plethico Netherlands and Plethico Hungary comprise the entirety of Class 3.
[9] Refer to footnote 3, Exhibit B and Exhibit C. As noted in the Declarations (Exhibits B and C) attached hereto, any payments received by RiSiKo professionals are payments for outstanding amounts due related to professional services provided to Plethico by the professionals.

## BASIS FOR RELIEF REQUESTED

### A. The Applicable Legal Standard

17. Section 363(b) of the Bankruptcy Code provides in pertinent part: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estates." 11 U.S.C. § 363(b). Courts interpreting section 363(b) have held that transactions should be approved pursuant to this provision when, as here, they are supported by management's sound business judgment, in this case. *See In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (outlining requirements for sale of assets pursuant to section 363); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (holding the elements for a sale under 363 are that it be "fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith.").

18. Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper. *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993) (Providing that "when a specific Code section addresses an issue, a court may not employ its equitable powers to achieve a result not contemplated by the Code") (internal citations omitted); *Pincus v. Graduate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002) (Holding that "the broad grant of power given to a court under Code § 105(a) does not permit it to use its equitable powers to achieve a result not contemplated by the Code.") (internal citations omitted).

19. Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. *See, e.g., Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code.") (internal citations omitted); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that the bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

B. **An Initial Distribution for the Payment of the Plethico Professionals' Fees Is Justified**

20. Pursuant to section 363(b) and 105(a) of the Bankruptcy Code, an initial distribution to Plethico for payment of the Plethico Professionals' Fees is justified as this would prevent any interruption of the continuing efforts currently underway to resolve all remaining open issues, thereby expediting confirmation of the Plan, payment of the Allowed Claims and the final wind-down of the Debtors' estates. As set forth in the Plan and Disclosure Statement, all Holders of Allowed Claims will receive 100% recoveries, Holders of General Unsecured Claims will receive 100% recoveries plus Interest, and Holders of Equity Interests will receive at least $4.0 million. Therefore, as an initial matter, an immediate distribution of $1.0 million for payment of the Plethico Professionals' Fees will not impact recoveries, it will only impact the timing of such recovery by Plethico India as the ultimate equity owner of the Debtors.

21. Further, the Plan contemplates the creation of reserves (the "Reserves") including an Alleged Class Action Claims Reserve, an Administrative Expense Claims Reserve, a Fee Claim Reserve, a General Unsecured Claims Reserve, a Tax Liability Reserve, a GUC

Representative Reserve, and a Wind-Down Expense Reserve. As set forth more fully in the *Explanation of Reserves* attached to the Disclosure Statement as Exhibit E,[10] the Debtors' professionals engaged in an in-depth analysis of the amounts required to ensure that each Reserve will be fully funded and then added a cushion to ensure that, regardless of the outcome of any litigation or outstanding issues involving the Debtors post-confirmation of the Plan, sufficient funds will be available to unequivocally satisfy any liability of the Debtors. For the General Unsecured Claims Reserve, the Debtors' professionals reviewed each of the outstanding General Unsecured Claims, which at this point in time, consists of only a handful of claims, and added a 15% cushion to ensure that the General Unsecured Claims Reserve was more than fully funded. In light of this, the Equity Holders believe that not only are the Reserves more than fully funded, but also that the Reserves will likely be significantly reduced in light of ongoing negotiations with various creditors, which will ultimately increase the total amount available to distribute to Plethico. For these reasons, an initial distribution of $1.0 million to Plethico Netherlands will have no impact upon, and will not prejudice, the ultimate recovery to any other party.

22. Finally, the initial distribution will not be used for anything other than paying Plethico's professionals as set forth on the Fee Chart, and the Debtors will directly remit these payments to Plethico's professionals. In light of this, the Committee and the Debtors have reviewed this Motion, the *Explanation of Reserves*, and the Fee Chart and, based on the analysis, each fully supports the relief requested herein. For this and all of the other reasons given, making an initial distribution of $1.0 million for payment of the Plethico Professionals' Fees should be approved.

---

[10] For the convenience of the Court and parties in interest, attached hereto as <u>Exhibit D</u> is a copy of the *Explanation of Reserves*.

## NOTICE

23.    Notice of this Motion has been provided to (i) the U.S. Trustee; (ii) counsel for the Debtors; (iii) counsel for the Committee; (iv) Plethico Global Holdings B.V.; (v) Plethico US Holdings, Kft; and (vi) any party requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Equity Holders submit that no other or further notice is necessary.

**WHEREFORE**, the Equity Holders respectfully request that the Court enter the Proposed Order granting the relief requested herein and granting the Equity Holders such other and further relief as is just and proper.

Dated: April 1, 2015            CONNOLLY GALLAGHER LLP

/s/ Karen C. Bifferato
Karen C. Bifferato (#3279)
Kelly M. Conlan (#4786)
The Brandywine Building
1000 N. West Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 757-7300
Email: kbifferato@connollygallagher.com
Email: kconlan@connollygallagher.com

-and-

Eric D. Carlson, Esq. (P60277)
Ronald A. Spinner, Esq. (P73198)
Miller, Canfield, Paddock and Stone, PLC
99 Monroe Ave NW, Suite 1200
Grand Rapids, MI 49503
Telephone: (616) 776-6355
Email: carlson@millercanfield.com
Email: spinner@millercanfield.com

*Counsel for Plethico Pharmaceuticals Limited*