**THIS PLAN HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT FOR DISSEMINATION.  UNTIL APPROVED, IT SHOULD NOT BE RELIED UPON BY ANY PERSON OR ENTITY.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LEAF123, INC. (f/k/a NATROL, INC.), *et al.*, | : | Case No. 14-11446 (BLS) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

-------------------------------------------------------------x

---

### FIRST AMENDED JOINT LIQUIDATING PLAN OF LEAF123, INC. (F/K/A NATROL, INC.), AND ITS AFFILIATED DEBTORS

---

Dated: April 2, 2015
   Wilmington, Delaware

---

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Michael R. Nestor (No. 3526)
Maris J. Kandestin (No. 5294)
Ian J. Bambrick (No. 5455)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600

*Counsel for the Debtors and the Debtors in Possession*

---

[1]    The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows:  Leaf123, Inc. (f/k/a Natrol, Inc.) (0780); Leaf123 Holdings, Inc. (f/k/a Natrol Holdings, Inc.) (4614); Leaf123 Products, Inc. (f/k/a Natrol Products, Inc.) (7823); Leaf123 Direct, Inc. (f/k/a Natrol Direct, Inc.) (5090); Leaf123 Acquisition Corp. (f/k/a Natrol Acquisition Corp.) (3765); Leaf123 Nutrition, Inc. (f/k/a Prolab Nutrition, Inc.) (3283); and Leaf123 Research Institute (f/k/a Medical Research Institute) (2825). The Debtors' principal offices are located at 21411 Prairie Street, Chatsworth CA 91311.

## Table of Contents

**Page**

ARTICLE I. DEFINITIONS AND CONSTRUCTION OF TERMS ........................................ 1

1.1.    Administrative Expense Claim .................................................................. 1

1.2.    Administrative Expense Claim Bar Date ................................................... 1

1.3.    Administrative Expense Claims Reserve ................................................... 1

1.4.    Alleged Class Action Claims .................................................................... 1

1.5.    Alleged Class Action Claimants ............................................................... 1

1.6.    Alleged Class Action Reserve ................................................................... 2

1.7.    Allowed Cerberus Claim .......................................................................... 2

1.8.    Allowed Claim .......................................................................................... 2

1.9.    Allowed Equity Interest ............................................................................ 2

1.10.   Allowed Plethico US and Plethico Equity Interests ................................. 2

1.11.   Assets ........................................................................................................ 2

1.12.   Assumed Liabilities .................................................................................. 2

1.13.   Avoidance Actions .................................................................................... 2

1.14.   Bankruptcy Code ...................................................................................... 3

1.15.   Bankruptcy Court ...................................................................................... 3

1.16.   Bankruptcy Rules ...................................................................................... 3

1.17.   Bar Date Order .......................................................................................... 3

1.18.   Bar Dates ................................................................................................... 3

1.19.   Business Day ............................................................................................. 3

1.20.   Buyer ......................................................................................................... 3

1.21.   Cash ........................................................................................................... 3

1.22.   Causes of Action ....................................................................................... 3

1.23.   Cerberus .................................................................................................... 3

1.24.   Cerberus Release ....................................................................................... 4

1.25.   Chapter 11 Cases ...................................................................................... 4

1.26.   Claim ......................................................................................................... 4

1.27.   Claims Administration Protocol ............................................................... 4

1.28.   Claims Agent ............................................................................................ 4

1.29.   Claims Bar Date ........................................................................................ 4

1.30.   Claim/Equity Interest ............................................................................... 4

1.31.    Claims Objection Deadline ........................................................................ 4

1.32.    Class ........................................................................................................... 4

1.33.    Closing Date .............................................................................................. 4

1.34.    Committee Administration Guidelines ...................................................... 4

1.35.    Confirmation Date ..................................................................................... 4

1.36.    Confirmation Hearing ................................................................................ 4

1.37.    Confirmation Order .................................................................................... 5

1.38.    Contract ...................................................................................................... 5

1.39.    Creditor ...................................................................................................... 5

1.40.    Creditors' Committee ................................................................................. 5

1.41.    Debtors ....................................................................................................... 5

1.42.    Director's Fees ........................................................................................... 5

1.43.    Disallowed .................................................................................................. 5

1.44.    Disclosure Statement ................................................................................. 5

1.45.    Disclosure Statement Order ....................................................................... 5

1.46.    Disputed ..................................................................................................... 5

1.47.    Disputed Liabilities .................................................................................... 5

1.48.    Disputed Liabilities Reserve ...................................................................... 5

1.49.    Distribution ................................................................................................ 6

1.50.    Effective Date ............................................................................................ 6

1.51.    Equity Interests .......................................................................................... 6

1.52.    Estate .......................................................................................................... 6

1.53.    Fabtech ....................................................................................................... 6

1.54.    Fabtech Transaction ................................................................................... 6

1.55.    Fee Claim ................................................................................................... 6

1.56.    Fee Claim Bar Date .................................................................................... 6

1.57.    Fee Claim Reserve ..................................................................................... 6

1.58.    File, Filed, or Filing ................................................................................... 6

1.59.    Final Decree ............................................................................................... 6

1.60.    Final Order ................................................................................................. 6

1.61.    General Bar Date ........................................................................................ 7

1.62.    General Unsecured Claim .......................................................................... 7

1.63.    General Unsecured Claims Reserve ........................................................... 7

1.64.    Governmental Bar Date .............................................................................. 7

1.65.    GUC Representative ................................................................................. 7

1.66.    GUC Representative Reserve .................................................................. 7

1.67.    Holdback Amount .................................................................................... 7

1.68.    Holder ........................................................................................................ 7

1.69.    Impaired .................................................................................................... 7

1.70.    Impaired Class .......................................................................................... 7

1.71.    Independent Director ............................................................................... 7

1.72.    Independent Member ............................................................................... 8

1.73.    Intercompany Claim ................................................................................ 8

1.74.    Interest ...................................................................................................... 8

1.75.    Interest Rate ............................................................................................. 8

1.76.    Initial GUC Distribution ......................................................................... 8

1.77.    Initial GUC Distribution Date ............................................................... 8

1.78.    Initial Equity Distribution ...................................................................... 8

1.79.    Initial Equity Distribution Date ............................................................ 8

1.80.    Khoudagoulian Incentive Payment ...................................................... 8

1.81.    Leaf123 ...................................................................................................... 8

1.82.    Leaf123 Acquisition Corp. ..................................................................... 8

1.83.    Leaf123 Direct .......................................................................................... 8

1.84.    Leaf123 Holdings ..................................................................................... 8

1.85.    Leaf123 Medical Research Institute ...................................................... 8

1.86.    Leaf123 Nutrition .................................................................................... 9

1.87.    Leaf123 Products ..................................................................................... 9

1.88.    Leases ........................................................................................................ 9

1.89.    Local Rules ............................................................................................... 9

1.90.    Natrol Global ........................................................................................... 9

1.91.    Natrol UK ................................................................................................. 9

1.92.    Non-Tax Priority Claims ........................................................................ 9

1.93.    Notice of Satisfaction .............................................................................. 9

1.94.    Order ......................................................................................................... 9

1.95.    Person ........................................................................................................ 9

1.96.    Petition Date ............................................................................................ 9

1.97.    Plan ............................................................................................................ 9

1.98.    Plan Documents ....................................................................................... 9

1.99.   Plan Supplement ................................................................................. 9

1.100.  Plethico ............................................................................................. 10

1.101.  Plethico India ..................................................................................... 10

1.102.  Plethico Professionals ........................................................................ 10

1.103.  Plethico Professionals' Fees ............................................................... 10

1.104.  Plethico US ........................................................................................ 10

1.105.  Prepetition Credit Agreement ............................................................ 10

1.106.  Priority Claim ..................................................................................... 10

1.107.  Priority Tax Claim .............................................................................. 10

1.108.  Professional ....................................................................................... 10

1.109.  Professional Fees ............................................................................... 10

1.110.  Purchase Agreement ........................................................................... 11

1.111.  Record Date ....................................................................................... 11

1.112.  Rejection Damages Bar Date .............................................................. 11

1.113.  Released Parties ................................................................................. 11

1.114.  Releasing Party .................................................................................. 11

1.115.  Remaining Assets ............................................................................... 11

1.116.  Reorganized Debtors .......................................................................... 12

1.117.  Reserves ............................................................................................ 12

1.118.  Sale Order .......................................................................................... 12

1.119.  Sale Transaction ................................................................................. 12

1.120.  Scheduled Claim ................................................................................ 12

1.121.  Schedules .......................................................................................... 12

1.122.  Secured Claim .................................................................................... 12

1.123.  Settlement Agreement ........................................................................ 12

1.124.  Settlement Parties .............................................................................. 12

1.125.  Side Letter ......................................................................................... 12

1.126.  Tax Liability Reserve ......................................................................... 13

1.127.  Unclassified Claims ........................................................................... 13

1.128.  Unimpaired ........................................................................................ 13

1.129.  United States Trustee ......................................................................... 13

1.130.  U.S. Trustee Fees ............................................................................... 13

1.131.  Wind-Down Committee ...................................................................... 13

1.132.  Wind-Down Expenses ........................................................................ 13

1.133.    Wind-Down Expense Reserve.................................................................. 13

ARTICLE II. TREATMENT OF ADMINISTRATIVE CLAIMS, FEE CLAIMS, CLAIMS FOR DIRECTOR'S FEES, PLETHICO PROFESSIONAL FEES AND PRIORITY CLAIMS .................................................................................................................. 15

2.1.    Administrative Expense Claims. ........................................................... 15

2.2.    Time for Filing Administrative Expense Claims. ................................. 15

2.3.    Fee Claims.......................................................................................... 15

2.4.    Treatment of Fee Claims. .................................................................... 16

2.5.    Claims for Director's Fees. .................................................................. 16

2.6.    Plethico Professionals' Fees. ............................................................... 16

2.7.    Priority Tax Claims. ............................................................................ 16

ARTICLE III. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ........................ 17

ARTICLE IV. TREATMENT OF CLAIMS AND EQUITY INTERESTS ................................ 17

4.1.    Class 1—Non-Tax Priority Claims. ..................................................... 17

4.2.    Class 2—General Unsecured Claims. .................................................. 18

4.3.    Class 3—Equity Interests. ................................................................... 18

ARTICLE V. IMPLEMENTATION OF THE PLAN................................................................ 19

5.1.    Deemed Substantive Consolidation of the Debtors.............................. 19

5.2.    Retention of Causes of Actions/Reservation of Rights. ....................... 20

5.3.    Approval of Plan Documents. .............................................................. 20

5.4.    Plan Supplement/Exhibits/Schedules. .................................................. 20

5.5.    No Interference..................................................................................... 20

5.6.    Plan Governs. ....................................................................................... 20

ARTICLE VI. CORPORATE GOVERNANCE AND MANAGEMENT OF REORGANIZED DEBTORS ................................................................................................ 21

6.1.    Post-Effective Date Corporate Existence. ............................................ 21

6.2.    Corporate Action and Post-Effective Date Governance........................ 21

6.3.    The GUC Representative....................................................................... 23

6.4.    Officers and Boards of Directors.......................................................... 25

6.5.    Payment of Wind-Down Expenses........................................................ 25

6.6.    Cancellation of Existing Securities and Agreements. ........................... 25

ARTICLE VII. PROVISIONS REGARDING  DISTRIBUTIONS UNDER THE PLAN.......... 25

7.1.    Distributions Generally. ....................................................................... 25

7.2.    Initial Distribution to General Unsecured Creditors. ............................ 26

7.3.    Initial Distribution to Equity. ............................................................... 26

7.4.    Timing of Distributions. ................................................................ 27

7.5.    Distribution to Address of Record.................................................. 27

7.6.    Unclaimed Distributions................................................................ 28

7.7.    Set-offs. ........................................................................................ 28

7.8.    Allocation of Plan Distributions Between Principal and Interest........... 28

7.9.    Estimation of Claims; Certain Reserves; Liquidation of Claims Reserves.............. 28

7.10.   Non-Recourse. .............................................................................. 31

7.11.   Satisfaction of Claims. ................................................................. 31

7.12.   Withholding and Reporting Requirements..................................... 31

ARTICLE VIII. PROCEDURES RELATED TO DISPUTED CLAIMS ................................... 32

8.1.    Objections to Administrative Expense Claims and Claims................... 32

8.2.    Amendments to Claims. ................................................................ 32

8.3.    No Distributions Pending Allowance............................................. 32

8.4.    Resolution of Disputed Claims...................................................... 33

ARTICLE IX. EFFECT OF CONFIRMATION & INDEMNIFICATION, RELEASE, INJUNCTIVE, AND RELATED PROVISIONS .............................................. 33

9.1.    Binding Effect. ............................................................................. 33

9.2.    Vesting of Assets........................................................................... 33

9.3.    Term of Pre-Confirmation Injunctions or Stays. ........................... 33

9.4.    Injunction Against Interference with Plan...................................... 33

9.5.    Injunction..................................................................................... 34

9.6.    Releases. ....................................................................................... 35

9.7.    Exculpation and Limitation of Liability. ....................................... 36

9.8.    Injunction Related to Releases and Exculpation. ........................... 37

9.9.    Releases of Liens and Encumbrances. ........................................... 37

9.10.   Satisfaction of Subordination Rights............................................. 38

ARTICLE X. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ............................. 38

10.1.   Conditions to Confirmation........................................................... 38

10.2.   Effectiveness. ............................................................................... 38

10.3.   Waiver of Conditions. ................................................................... 38

10.4.   Withdrawal of Plan....................................................................... 39

10.5.   Waiver of Rule 3020(e) Stay......................................................... 39

ARTICLE XI. RETENTION OF JURISDICTION........................................................ 39

11.1.   Scope of Bankruptcy Court Jurisdiction. ...................................... 39

ARTICLE XII. MISCELLANEOUS PROVISIONS ...................................................... 41

| | | |
|---|---|---|
| 12.1. | Effectuating Documents and Further Transactions. | 41 |
| 12.2. | Termination of Professionals. | 41 |
| 12.3. | Access. | 41 |
| 12.4. | Payment of Statutory Fees. | 42 |
| 12.5. | Post-Effective Date Fees and Expenses. | 42 |
| 12.6. | Amendment or Modification of this Plan. | 42 |
| 12.7. | Confirmation Order. | 43 |
| 12.8. | Severability. | 43 |
| 12.9. | Expedited Tax Determination. | 43 |
| 12.10. | Governing Law. | 43 |
| 12.11. | Binding Effect. | 43 |
| 12.12. | Exhibits/Schedules. | 43 |
| 12.13. | Contracts and Leases. | 44 |
| 12.14. | Insurance. | 44 |
| 12.15. | Dissolution of Creditors' Committee. | 44 |
| 12.16. | Notices. | 45 |

## INTRODUCTION

Leaf123, Inc., f/k/a Natrol, Inc. and the other Debtors[2] and debtors in possession in the above-captioned cases, propose the following joint plan of liquidation for the resolution of the outstanding Claims against, and Equity Interests in, the Debtors.  Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and former operations, projections, risk factors, a summary and analysis of this Plan, and certain related matters including, among other things, certain tax matters, and other consideration to be issued and/or distributed under this Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and this Plan, the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation.

The Holders of Equity Interests in the Debtors are "insiders" under section 101 of the Bankruptcy Code, and therefore, pursuant to section 1129(a) of the Bankruptcy Code, votes of the Holders of Equity Interests will not be counted.  As there are no Classes of Claims eligible to vote on the Plan, the solicitation of votes for acceptance or rejection of the Plan is not required, as set forth in section 1126(f) of the Bankruptcy Code.

## ARTICLE I.

## DEFINITIONS AND CONSTRUCTION OF TERMS

A.      **Definitions.**  Unless the context otherwise requires or a term is defined within the Plan itself, the following terms shall have the respective meanings set forth below, except as expressly provided otherwise.

1.1.      **Administrative Expense Claim**:  Any cost or expense of administration of the Chapter 11 Cases allowed by the Bankruptcy Court pursuant to section 503(b) of the Bankruptcy Code, excluding Fee Claims.

1.2.      **Administrative Expense Claim Bar Date**:  The date that is thirty (30) days after service of the notice of the occurrence of the Effective Date.

1.3.      **Administrative Expense Claims Reserve**:  Shall have the meaning set forth in Section 7.12(b)(4) of the Plan.

1.4.      **Alleged Class Action Claims**:   Claims Filed by those Persons purporting to represent a class of plaintiffs; namely: (a) Claim No. 112, Filed by Troy Eisner based on prepetition litigation he initiated in the United States District Court for the Eastern District of New York, captioned *Eisner v. Natrol*, E.D. N.Y. Case No. 13-cv-05831-JS, and (b) Claim No. 204, Filed by Jessica Augustine based on prepetition litigation she initiated in the United States District Court for the Southern District of California, captioned *Augustine v. Natrol*, S.D. Cal. Case No. 13-vc 3129-H.

1.5.      **Alleged Class Action Claimants**:  Troy Eisner and Jessica Augustine.

---

[2]        All capitalized terms used but not otherwise defined shall have the meanings set forth in Article I herein.

**1.6.    Alleged Class Action Reserve**:  Shall have the meaning set forth in Section 7.12(b)(1) of the Plan.

**1.7.    Allowed Cerberus Claim**:    That certain Claim arising under the Prepetition Financing Agreement, as defined in the Settlement Agreement, which was paid in full on the Closing Date.

**1.8.    Allowed Claim**:  With reference to any Claim against the Debtors: (i) any Claim that has been listed by the Debtors in their respective Schedules, as such Schedules have been or may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been Filed; provided, however, that any such Claim listed in the Schedules that has been paid by the Debtors after the Petition Date pursuant to an Order of the Bankruptcy Court shall not be considered an Allowed Claim; provided further, that any Claim assumed by the Buyer as an Assumed Liability shall not be considered an Allowed Claim, and that any Claim with respect to a Contract or Lease assumed by the Buyer shall not be considered an Allowed Claim; (ii) any Claim filed on or before the applicable Bar Date and for which no objection has been made, subject to the rights to extend the Claims Objection Deadline set forth herein; (iii) any Claim allowed pursuant to the Plan; (iv) any Claim or Administrative Expense Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Debtors pursuant to a Final Order or under the Plan; or (v) any Claim that has been Allowed by Final Order.  With the exception of the Internal Revenue Service, unless otherwise specified herein or by Order of the Bankruptcy Court, "Allowed Administrative Expense Claim" shall not, for any purpose under the Plan, include interest on such Administrative Expense Claim from and after the Petition Date.  Any Distribution to the Holder of an Allowed Claim under this Plan shall be net of any setoff amount of any Cause of Action that may be asserted by any Debtor against the Holder of such Claim.

**1.9.    Allowed Equity Interest**:  Any Equity Interest that has been allowed by Final Order of the Bankruptcy Court or under the Plan.

**1.10.    Allowed Plethico US and Plethico Equity Interests**:  Means any and all equity or ownership interests of Plethico and Plethico US in any of the Debtors.

**1.11.    Assets**:  Any and all right, title, and interest of any of the Debtors in and to property of whatever type or nature as of the Effective Date.

**1.12.    Assumed Liabilities**:  Those certain liabilities of the Debtors assumed in the Sale Transaction by the Buyer.

**1.13.    Avoidance Actions**:  Any and all Causes of Action of each Debtor and its Estate to avoid or recover a transfer of property of any of the Estates or an interest of any of the Debtors in property as of the Effective Date, including, without limitation, actions arising under (i) sections 105, 502(d), 510, 542 through 551, and 553 of the Bankruptcy Code or (ii) any other applicable similar state or federal law concerning the avoidance of fraudulent transfers, fraudulent conveyances, preferential transfers, or prohibited distributions, in each case, whether or not litigation has been commenced with respect to such Causes of Action as of

the Effective Date.  For the avoidance of doubt, the Avoidance Actions exclude Causes of Action previously waived or assigned by the Debtors pursuant to any Final Order, the Cerberus Release, or purchased by the Buyer through the Sale Transaction.

**1.14.    Bankruptcy Code**:  Title 11 of the United States Code (11 U.S.C. §§ 101-1532), as in effect on the Petition Date and as thereafter amended, if such amendments are made applicable to the Chapter 11 Cases.

**1.15.    Bankruptcy Court**:  The United States Bankruptcy Court for the District of Delaware, or in the event such court ceases to exercise jurisdiction over any Chapter 11 Case, such court or adjunct thereof that exercises jurisdiction over such Chapter 11 Case in lieu of the United States Bankruptcy Court for the District of Delaware.

**1.16.    Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure pursuant to Title 28 of the United States Code, 28 U.S.C. §§ 2075, as they have been or may hereafter be amended.

**1.17.    Bar Date Order**:  That certain *Order Pursuant to Bankruptcy Rule 3003(c)(3) and Local Rule 2002-1(e) Establishing Bar Dates for Filing Proofs of Claim and Approving the  Form and Manner of Notice Thereof*, entered by the Bankruptcy Court on August 22, 2014 [Docket No. 396].

**1.18.    Bar Dates**:  The deadlines for filing proofs of Claim and Administrative Expense Claims against the Debtors, as established by the Bar Date Order or Section 1.2 herein.

**1.19.    Business Day**:  Any day except a Saturday, Sunday, or any day on which commercial banks in the States of Delaware, State of New York, or California are authorized or required by applicable law to close.

**1.20.    Buyer**:  Aurobindo Pharma USA Inc.

**1.21.    Cash**:  Legal tender of the United States of America and equivalents thereof.

**1.22.    Causes of Action**:  Without limitation, any and all choses in action, actions, Avoidance Actions, controversies, liabilities, obligations, rights, suits, damages, judgments, claims, and demands whatsoever owned by any of the Debtors on the Effective Date, whether known or unknown, in law or equity, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, whether assertable directly, indirectly, derivatively, or in any representative or other capacity, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act, failure to act, error, omission, transaction, occurrence, or other event arising or occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

**1.23.    Cerberus**:  Means Cerberus Business Finance, the administrative agent and collateral agent under the Prepetition Credit Agreement.

**1.24.    Cerberus Release**:  That certain release made pursuant to the Settlement Agreement as of November 25, 2014, by and among Cerberus, the Debtors, Natrol Global, and the Creditors' Committee.

**1.25.    Chapter 11 Cases**:  With respect to each Debtor, the Chapter 11 case initiated by such Debtor's Filing on the Petition Date of a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

**1.26.    Claim**:  A claim, as defined in section 101(5) of the Bankruptcy Code, against one of the Debtors (or all or some of them) whether or not asserted or Allowed.

**1.27.    Claims Administration Protocol**:  That certain protocol entered into by and between the Debtors and the Buyer for purposes of efficiently and cooperatively resolving issues with respects to claims related to Assumed Liabilities under the Purchase Agreement, which was approved by Order of the Bankruptcy Court on December 12, 2014 [Docket No. 764].

**1.28.    Claims Agent**:  Epiq Bankruptcy Solutions, LLC.

**1.29.    Claims Bar Date**:  The date by which Holders of prepetition Claims against the Debtors, including Claims arising under section 503(b)(9) of the Bankruptcy Code, were required to File proofs of claim.  The Bankruptcy Court established October 27, 2014, as the Claims Bar Date pursuant to the Bar Date Order.

**1.30.    Claim/Equity Interest**:  The specific Class into which Allowed Claims or Equity Interests are classified pursuant to the Plan.

**1.31.    Claims Objection Deadline**:  Means the first Business Day that is ninety (90) days after the Confirmation Date, or such other later date that the Bankruptcy Court may establish upon a motion by the Reorganized Debtors, which motion may be Filed before or on such deadline and may be approved without a hearing and without notice to any Person.

**1.32.    Class**:  A category of Claims or Equity Interests designated pursuant to the Plan.

**1.33.    Closing Date**:  The date on which the Debtors and the Buyer closed the Sale Transaction—December 4, 2014.

**1.34.    Committee Administration Guidelines**:  Shall mean those guidelines set forth on Exhibit 3 to the Disclosure Statement and which are incorporated herein in full.

**1.35.    Confirmation Date**:  The date upon which the Confirmation Order is entered by the Bankruptcy Court.

**1.36.    Confirmation Hearing**:  Collectively, the hearing or hearings held by the Bankruptcy Court on confirmation of the Plan, as such hearing or hearings may be continued from time to time.

**1.37.    Confirmation Order**:  The Order of the Bankruptcy Court confirming the Plan.

**1.38.    Contract**:  Means any executory contract to which a Debtor is or was a party, but does not include employment agreements for the Debtors' Professionals, which shall be governed by their respective terms unless otherwise governed by a provision of this Plan.

**1.39.    Creditor**:  Holder of a Claim.

**1.40.    Creditors' Committee**:  The official committee of unsecured creditors of the Debtors appointed by the United States Trustee in the Chapter 11 Cases on June 19, 2014, pursuant to section 1102 of the Bankruptcy Code as its composition may be changed from time to time by addition, resignation, or removal of its members [Docket No. 61].

**1.41.    Debtors**:  Each of Leaf123, Inc. (f/k/a Natrol, Inc.); Leaf123 Holdings, Inc. (f/k/a Natrol Holdings, Inc.); Leaf123 Products, Inc. (f/k/a Natrol Products, Inc.); Leaf123 Direct, Inc. (f/k/a Natrol Direct, Inc.); Leaf123 Acquisition Corp. (f/k/a Natrol Acquisition Corp.); Leaf123 Nutrition, Inc. (f/k/a Prolab Nutrition, Inc.); and Leaf123 Research Institute (f/k/a Medical Research Institute).

**1.42.    Director's Fees**:  Means those fees and expenses due and owing to Bradley E. Scher as an independent director of the board of the Debtors as of the Effective Date of the Plan.

**1.43.    Disallowed**:  Means, with reference to any Claim, a finding of the Bankruptcy Court in a Final Order, including the Bar Date Order, or a provision in the Plan, providing that a Claim shall not be Allowed.

**1.44.    Disclosure Statement**:  Means the disclosure statement related to this Plan, as such disclosure statement may be amended, modified, or supplemented (including all exhibits and schedules annexed thereto or referenced therein).

**1.45.    Disclosure Statement Order**:  Means that certain proposed *Order (I) Approving the Disclosure Statement and Notice Thereof; (II) Fixing the Record Date; (III) Scheduling the Plan Confirmation Hearing; (IV) Approving the Form and Manner of Related Notices; and (V) Setting Objection Procedures* which the Debtors will seek entry of on March 30, 2015.

**1.46.    Disputed**:  Means, with reference to any Claim, any Claim that is neither Allowed or Disallowed as of the relevant date.

**1.47.    Disputed Liabilities**:  Means those liabilities in dispute under the Purchase Agreement, a schedule of which was Filed on December 23, 2014 [Docket No. 828].

**1.48.    Disputed Liabilities Reserve**:  Shall have the meaning set forth in Section 7.12(b)(2) of the Plan.

**1.49.   Distribution**:  A distribution of Cash or other property pursuant to the Plan.  Distributions shall be made in accordance with this Plan and after the recipient of a Distribution(s) provides the Debtors, the Reorganized Debtors, or the Wind-Down Committee, as applicable, with a completed form W-4, as applicable.

**1.50.   Effective Date**:  Shall be the date that the (i) Confirmation Order shall become final and non-appealable, and (ii) the Plan Documents shall have been executed and become effective.

**1.51.   Equity Interests**:  Either (i) the legal, equitable, contractual, or other rights of any Person with respect to the preferred or common stock, or any other direct or indirect equity interest in any of the Debtors, including any other interest in or right to convert into such equity interest or (ii) the legal, equitable, contractual, or other right of any Person to acquire or receive any of the foregoing.

**1.52.   Estate**:  Means each estate created in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

**1.53.   Fabtech**:  Means Fabtech Technologies International, Ltd.

**1.54.   Fabtech Transaction**:  That certain transaction entered into between the Debtors and Fabtech, which involved entry into a manufacturing agreement entered into on or about March 5, 2013, between the Debtors and Fabtech.

**1.55.   Fee Claim**:  A Claim of a Professional for compensation or reimbursement of costs and expenses relating to services rendered during the period from the Petition Date and through the entry of one or more Final Orders with respect to all outstanding Fee Claims.

**1.56.   Fee Claim Bar Date**:  The date that is thirty (30) days after the Effective Date.

**1.57.   Fee Claim Reserve**:  Means, with respect to Professional Fees, a reserve established on the Effective Date for the benefit of the Professionals, and to be held in escrow in a segregated account for the Professionals (the "Fee Escrow Reserve Account"), for the payment of all fees that are or become Allowed Fee Claims, including the Holdback Amount.

**1.58.   File, Filed, or Filing**:  File, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

**1.59.   Final Decree**:  The Order entered pursuant to section 350 of the Bankruptcy Code, Bankruptcy Rule 3022, and Local Rule 5009-1 closing the Chapter 11 Cases.

**1.60.   Final Order**:  The Order or judgment of the Bankruptcy Court, as entered on the docket in any Chapter 11 Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified, or amended and as to which the time to appeal or seek certiorari or move for a new trial, reargument, or rehearing has expired, and

no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely Filed has been withdrawn or resolved by the highest court to which the Order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing has been denied or resulted in no modification of such Order; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such Order, shall not cause such Order not to be a Final Order.

      **1.61.    General Bar Date**:  October 27, 2014, at 4:00 p.m. (prevailing Eastern Time), as set by Bar Date Order.

      **1.62.    General Unsecured Claim**:  An unsecured non-priority Claim against a Debtor that is not a Secured Claim, an Administrative Expense Claim, a Priority Tax Claim, a Non-Tax Priority Claim, a Fee Claim, or an Equity Interest.

      **1.63.    General Unsecured Claims Reserve**:  Shall have the meaning set forth in Section 7.12(b)(3) of the Plan.

      **1.64.    Governmental Bar Date**:  December 8, 2014, at 4:00 p.m. (prevailing Eastern Time), as set by the Bar Date Order.

      **1.65.    GUC Representative**:  Shall have the meaning set forth in Section 6.3 of the Plan.

      **1.66.    GUC Representative Reserve**:  Shall have the meaning set forth in Section 7.10(b)(6) of the Plan.

      **1.67.    Holdback Amount**:  Means, with respect to Professional Fees, amounts held back pursuant to an Order or Orders of the Bankruptcy Court in the Chapter 11 Cases, including the *Order, Pursuant to Sections 331 and 105(a) of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local Rule 2016-2, Establishing Procedures for Interim Compensation and Reimbursement of Professionals* [Docket No. 280].

      **1.68.    Holder**:  The Person that is the owner of record of a Claim or an Equity Interest, as applicable.

      **1.69.    Impaired**:  With respect to any Class of Claims or Equity Interests, the Claims or Equity Interests in such Class that are impaired.

      **1.70.    Impaired Class**:  Holders of Equity Interests in one or more of the Debtors, and specifically, Plethico and Plethico US.

      **1.71.    Independent Director**:  Means Bradley E. Scher.

**1.72.    Independent Member**:  Means Jeffrey C. Perea, who shall be the independent member of the Wind-Down Committee upon the Effective Date of the Plan and any replacement selected in accordance with the Committee Administration Guidelines.

**1.73.    Intercompany Claim**:  Any Claim by a Debtor against another Debtor.

**1.74.    Interest**:  As it applies to Class 2 Claims, shall mean "simple interest" (i.e., the daily rate multiplied by the principal amount of the Allowed Claim multiplied by the number of calendar days from the Petition Date through and including the date of Distribution, on a basis of 12 equal months of thirty (30) days each) on Allowed Class 2 General Unsecured Claims from the Petition Date through the date such Allowed General Unsecured Claim is paid, at the applicable Interest Rate.

**1.75.    Interest Rate**:  With respect to General Unsecured Claims, the Federal Judgment Rate as of the Petition Date, subject to the right of the Wind-Down Committee to object to such interest or otherwise enter into an agreement between the Wind-Down Committee and the Holder of the Claim that establishes the applicable rate of interest.

**1.76.    Initial GUC Distribution**:  Shall have the meaning set forth in Section 7.4 of the Plan.

**1.77.    Initial GUC Distribution Date**:  Shall have the meaning set forth in Section 7.4 of the Plan.

**1.78.    Initial Equity Distribution**:  Shall have the meaning set forth in Section 7.5 of the Plan.

**1.79.    Initial Equity Distribution Date**:  Shall have the meaning set forth in Section 7.5 of the Plan.

**1.80.    Khoudagoulian Incentive Payment**:  Means that certain payment due to Mesrop Khoudagoulian from Plethico India under that certain *Incentive Agreement* dated as of November 11, 2014, which was Filed on November 11, 2014 [Docket No. 695], which payment is be made directly by the Estates on the Initial Equity Distribution Date, to be paid in accordance with Sections 4.3(c) and 7.5 of the Plan.

**1.81.    Leaf123**:  Leaf123, Inc. (f/k/a Natrol, Inc.).

**1.82.    Leaf123 Acquisition Corp.**:  Leaf123 Acquisition Corp. (f/k/a Natrol Acquisition Corp.).

**1.83.    Leaf123 Direct**:  Leaf123 Direct, Inc. (f/k/a Natrol Direct, Inc.).

**1.84.    Leaf123 Holdings**:  Leaf123 Holdings, Inc. (f/k/a Natrol Holdings, Inc.).

**1.85.    Leaf123 Medical Research Institute**:  Leaf123 Medical Research Institute (f/k/a Medical Research Institute).

**1.86.    Leaf123 Nutrition**:    Leaf123 Nutrition, Inc. (f/k/a Prolab Nutrition, Inc.).

**1.87.    Leaf123 Products**:  Leaf123 Products, Inc. (f/k/a Natrol Products, Inc.).

**1.88.    Leases**:  Means any unexpired lease to which a Debtor is or was a party.

**1.89.    Local Rules**:  The Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, as amended from time to time.

**1.90.    Natrol Global**:  Natrol Global Fze LLC.

**1.91.    Natrol UK**:  Natrol UK, Ltd., a UK entity.

**1.92.    Non-Tax Priority Claims**: Means any Claim, other than an Administrative Expense Claim, a Fee Claim, or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

**1.93.    Notice of Satisfaction**:  Upon satisfaction of all Allowed Claims in full with Interest, the Reorganized Debtors shall periodically file a notice of such satisfaction with the Bankruptcy Court, which shall provide the Holder of the satisfied Allowed Claim twenty-one (21) days to object to the stated satisfaction of its Allowed Claim.  If the Holder of an Allowed Claim fails to timely object to such notice of satisfaction, such Holder shall be forever barred from asserting an argument that the Claim has not been satisfied.  Upon satisfaction of all Allowed General Unsecured Claims, the Reorganized Debtors shall file a final Notice of Satisfaction with respect to such Claims.

**1.94.    Order**:  An order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any of the Chapter 11 Cases or the docket of any other court of competent jurisdiction.

**1.95.    Person**:    An individual, limited liability company, corporation, partnership, association, trust or unincorporated organization, joint venture, or other person or a government or any agency or political subdivision thereof.

**1.96.    Petition Date**:  June 11, 2014.

**1.97.    Plan**:  The *First Amended Joint Liquidating Plan of Leaf123, Inc. (f/k/a Natrol, Inc.) and its Affiliated Debtors*, as the same may hereafter be amended or modified.

**1.98.    Plan Documents**:  Means the Committee Administration Guidelines and such other documents that are filed prior to confirmation of the Plan, including documents filed as part of one or more Plan Supplements.

**1.99.    Plan Supplement**:  Means the supplemental appendix to this Plan, to be Filed as soon as the filing of the Plan, but in no event later April 17, 2015, which will contain,

among other things, substantially final draft forms (subject to further changes) or signed copies, as the case may be, of the Plan Documents.

**1.100. Plethico**:  Plethico Global Holdings B.V. is a Netherlands company and the 25% owner of Leaf123 Holdings, Inc. (f/k/a Natrol Holdings, Inc.) and a wholly-owned subsidiary of Plethico, India.

**1.101. Plethico India**:   Plethico Pharmaceuticals Ltd of India, an Indian company, and the 100% owner of Plethico.

**1.102. Plethico Professionals**: Means any professional that Plethico, Plethico US, and/or Plethico India has engaged to assist with the bankruptcy and liquidation of Leaf123, Inc., including, without limitation, Miller, Canfield, Paddock and Stone P.L.C, Connelly Gallagher, LLP, Risiko Consulting Inc., Szecskay Attorneys at Law, and the Stibbe Law Firm as well as any other professional identified by Plethico India in writing to the Debtor, the Reorganized Debtors, or the Wind-Down Committee.

**1.103. Plethico Professionals' Fees**:  Means the unpaid fees due and owing to the Plethico Professionals for work done pursuant to their engagement by Plethico, Plethico US, and/or Plethico India as of the Effective Date, which fees are not obligations of, or Claims against, the Estates.

**1.104. Plethico US**:   Plethico US Holdings, Kft, a Hungarian company, is a 75% owner of Leaf123 Holdings (f/k/a Natrol Holdings, Inc.), and a wholly-owned subsidiary of Plethico.

**1.105. Prepetition Credit Agreement**:  That certain *Financing Agreement* (as amended) dated as of March 5, 2013, entered into between the Debtors and Cerberus, under which Cerberus (through a syndicate of affiliates and other parties) advanced $65 million under a term loan and made available an additional $10 million revolving credit facility.

**1.106. Priority Claim**:  A Claim that is entitled to priority under section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim and a Priority Tax Claim.

**1.107. Priority Tax Claim**:  A Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

**1.108. Professional**:   Any professional employed in the Chapter 11 Cases pursuant to sections 327, 328, 330, or 1103 of the Bankruptcy Code or any professional or other Person seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.109. Professional Fees**:  Means, at any given moment, all accrued and/or unpaid fees and expenses (including, without limitation, fees or expenses allowed or awarded by the Bankruptcy Court or any other court of competent jurisdiction) for legal, financial advisory, accounting, and other services and reimbursement of expenses related thereto that are awardable and allowable under sections 328, 330(a), 331, 503(b), or 1103(a) of the Bankruptcy

Code or otherwise and that are incurred (a) prior to the Effective Date or (b) thereafter in connection with (i) applications Filed pursuant to section 330, 331, 503(b) or 1103(a) of the Bankruptcy Code, and (ii) motions seeking the enforcement of the provisions of the Plan or Confirmation Order or appeals relating thereto, by all Professionals retained in the Chapter 11 Cases, except to the extent that (x) the Bankruptcy Court has disallowed or denied authority to pay or reimburse such fees and expenses by a Final Order or (y) any such fees and expenses have previously been paid, regardless of whether a fee application has been Filed for any such amount. To the extent that any such fees are denied by a Final Order any amount of a Professional's fees or expenses, then those amounts shall no longer constitute Professional Fees.

**1.110. Purchase Agreement**:   The asset purchase agreement dated as of November 10, 2014, by and among the Buyer, on the one hand, and the Debtors, on the other hand.

**1.111. Record Date**: April 2, 2015 at 4:00 p.m. (prevailing Eastern Time).

**1.112. Rejection Damages Bar Date**:  Means the Claims Bar Date or the date that is or was thirty (30) days after entry of an Order approving the rejection of a Contract or Lease, including the Confirmation Order.

**1.113. Released Parties**:  Means each of and solely in its capacity as such, (i) the Debtors, and all of the Debtors' respective direct and indirect shareholders and owners, as well as their respective officers, directors, members, employees, partners, managers, advisors, attorneys, financial advisors, investment bankers, accountants, and other professionals and representatives, and each of their direct and indirect shareholders' and owners' respective officers, directors, members, employees, partners, managers, advisors, attorneys, financial advisors, investment bankers, accountants, and other professionals and representatives, and (ii) the Creditors' Committee, as well as its respective members, advisors, attorneys, financial advisors, accountants, and other professionals and representatives, and each of their direct and indirect shareholders' and owners' respective officers, directors, members, employees, partners, managers, advisors, attorneys, financial advisors, accountants, and other professionals and representatives.

**1.114. Releasing Party**:  Means each of, and solely in its capacity as such, (a) the Creditors' Committee and its members (solely in their capacity as members of the Creditors' Committee, but not in their capacity as individual Creditors), (b) the Holders of Impaired Equity Interests, (c) the Holders of Unimpaired Claims, and (d), with respect to the foregoing entities in clauses (a) through (c), such entities' current affiliates, successors, assigns, subsidiaries, officers, directors, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, equity holders, partners, and other professionals.

**1.115. Remaining Assets**:  Those certain assets that, following the closing of the Sale Transaction, remained with the Estates, including, but not limited to, tax refunds and credits, all shares of capital stock or other Equity Interests in Natrol UK (intercompany receivables from Natrol UK were purchased by the Buyer), all Avoidance Actions not

otherwise purchased by the Buyer under the Purchase Agreement or previously released, the proceeds from prepetition litigation, the proceeds from the Sale Transaction, and certain other assets.

**1.116. Reorganized Debtors**:  Means the Debtors, or any successor thereto by merger, consolidation, or otherwise, on or after the occurrence of the Effective Date.

**1.117. Reserves**:    Means the Alleged Class Action Claims Reserve, the Administrative Expense Claims Reserve, the Fee Claim Reserve, the General Unsecured Claims Reserve, the Tax Liability Reserve, the GUC Representative Reserve, and the Wind-Down Expense Reserve.  Each of the Reserves includes a cushion, and in the case of the General Unsecured Claims Reserve, the amount contained therein contains a 15% cushion.

**1.118. Sale Order**:  Order of the Bankruptcy Court entered in the Chapter 11 Cases approving and authorizing the Sale Transaction, dated as of November 12, 2014 [Docket No. 709].

**1.119. Sale Transaction**:  Means the sale of substantially all of the Debtors' assets under section 363 of the Bankruptcy Code and the assumption and assignment of the executory contracts and unexpired leases under section 365 of the Bankruptcy Code to the Buyer pursuant to the Purchase Agreement.

**1.120. Scheduled Claim**:  Any Claim set forth on the Schedules.

**1.121. Schedules**:  With respect to any Debtor, the Schedules of Assets and Liabilities Filed by such Debtor, as such Schedules may be amended from time to in accordance with Bankruptcy Rule 1009.

**1.122. Secured Claim**:  A Claim that is secured by a lien on property in which the Debtors have an interest, which lien is valid, perfected, and enforceable under applicable law or pursuant to a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, all as determined pursuant to section 506(a) of the Bankruptcy Code.

**1.123. Settlement Agreement**:  Means that certain *Compromise and Settlement Agreement* entered into by and between the Debtors, Cerberus, the Creditors' Committee, and Natrol Global, which was approved by the Bankruptcy Court on July 30, 2014 [Docket No. 315].

**1.124. Settlement Parties**:    Means the Debtors, Cerberus, the Creditors' Committee, and Natrol Global.

**1.125. Side Letter**:  Means that certain letter agreement, which constituted an ancillary agreement pursuant to the Sale Order and which was incorporated in full into the Purchase Agreement, entered into by and between the Debtors and the Buyer on December 1, 2014, and Filed on December 3, 2014 [Docket No. 767].

**1.126. Tax Liability Reserve**:  Shall have the meaning set forth in Section 7.12(b)(6) of the Plan.

**1.127. Unclassified Claims**:  Claims which, pursuant to section 1123(a)(1) of the Bankruptcy Code, shall not be placed into a Class.  Unclassified Claims include Administrative Expense Claims, Fee Claims, and Priority Tax Claims.

**1.128. Unimpaired**:  With respect to a Class of Claims or Equity Interests, any Class that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

**1.129. United States Trustee**:  The Office of the United States Trustee for the District of Delaware.

**1.130. U.S. Trustee Fees**:  Means fees arising under 28 U.S.C. § 1930(a)(6) or accrued interest thereon arising under 31 U.S.C. § 3717.

**1.131. Wind-Down Committee**:  Shall have the meaning set forth in Article VI of this Plan.

**1.132. Wind-Down Expenses**:  Means any reasonable costs and expenses necessary to wind down the Estates and/or the Debtors after the Effective Date, including, without limitation, any reasonable compensation and reimbursement of expenses paid to the Wind-Down Committee Members, professionals and consultants retained by the Wind-Down Committee, the payment of statutory fees and taxes required to be paid in connection with dissolving each of the former Debtors, and any post-Effective Date fees due and owing to the Independent Director.

**1.133. Wind-Down Expense Reserve**:  Shall have the meaning set forth in Section 7.10(b)(7) of the Plan.  For the avoidance of doubt, amounts payable to the GUC Representative or its professionals under this Plan shall not be included in the Wind-Down Expense Reserve, and shall be reserved solely in connection with the GUC Representative Reserve.

**B.    Interpretation; Application of Definitions and Rules of Construction.**  Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter.  Unless otherwise specified, all section, article, schedule, or exhibit references in the Plan are to the respective Section in, Article of, Schedule to, or Exhibit to, the Plan.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.  A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.  To the extent there is any inconsistency between any of the provisions of this Plan and any of the provisions contained in the Plan Documents to be entered into as of the Effective Date, the Plan shall control.

**C.**     **Appendices and Plan Documents.**  All Plan Documents and appendices to the Plan and the Plan Supplement(s) are incorporated into this Plan by reference and are a part of this Plan as if set forth in full herein.  The documents contained in the exhibits and the Plan Supplement(s) shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.  Holders of Claims and Equity Interests may inspect a copy of the Plan Documents, once Filed, in the Office of the Clerk of the Bankruptcy Court during normal business hours, or at http://dm.epiq11.com/NTL/Project, or obtain a copy of the Plan Documents by sending a written request to the following address:

Epiq Bankruptcy Solutions, LLC
Attn:  Leaf123, Inc. (f/k/a Natrol, Inc.) Plan Administration
757 Third Avenue, 3rd Floor
New York, New York 10017

## ARTICLE II.

### TREATMENT OF ADMINISTRATIVE CLAIMS, FEE CLAIMS, CLAIMS FOR DIRECTOR'S FEES, PLETHICO PROFESSIONAL FEES AND PRIORITY CLAIMS

### 2.1.    Administrative Expense Claims.

Except to the extent that any entity entitled to payment of any Allowed Administrative Expense Claim agrees to a less favorable treatment, each Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on, or as soon thereafter as is reasonably practicable, the later of five (5) Business Days following (a) the Effective Date, or (b) the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim.

### 2.2.    Time for Filing Administrative Expense Claims.

**THE HOLDER OF AN ADMINISTRATIVE EXPENSE CLAIM ACCRUING ON OR AFTER THE PETITION DATE, OTHER THAN: (A) A FEE CLAIM; (B) AN ADMINISTRATIVE EXPENSE CLAIM THAT HAS BEEN ALLOWED ON OR BEFORE THE EFFECTIVE DATE; (C) A CLAIM FOR U.S. TRUSTEE FEES, AND (D) A CLAIM ARISING UNDER SECTION 503(b)(1)(D) OF THE BANKRUPTCY CODE, MUST SUBMIT TO THE CLAIMS AGENT AND SERVE ON THE REORGANIZED DEBTORS, THEIR COUNSEL, AND THE WIND-DOWN COMMITTEE, A REQUEST FOR SUCH ADMINISTRATIVE EXPENSE CLAIM SO AS TO BE RECEIVED BY 5:00 P.M. (PREVAILING EASTERN TIME) ON THE DATE THAT IS THIRTY (30) DAYS AFTER SERVICE OF NOTICE OF OCCURRENCE OF THE EFFECTIVE DATE AND THE ADMINISTRATIVE EXPENSE CLAIM BAR DATE.  SUCH REQUEST MUST INCLUDE AT A MINIMUM: (I) THE NAME OF THE HOLDER OF THE ADMINISTRATIVE EXPENSE CLAIM; (II) THE AMOUNT OF THE ADMINISTRATIVE EXPENSE CLAIM; (III) THE BASIS OF THE ADMINISTRATIVE EXPENSE CLAIM; AND (IV) SUPPORTING DOCUMENTATION FOR THE ADMINISTRATIVE EXPENSE CLAIM. FAILURE TO FILE AND SERVE SUCH REQUEST TIMELY AND PROPERLY SHALL RESULT IN SUCH ADMINISTRATIVE EXPENSE CLAIM BEING FOREVER BARRED; <u>PROVIDED, HOWEVER</u>, THAT THE INTERNAL REVENUE SERVICE SHALL NOT BE REQUIRED TO FILE A PROOF OF CLAIM OR APPLICATION FOR ALLOWANCE OF ANY CLAIMS COVERED BY SECTIONS 503(b)(1)(B), (C) OR (D) OF THE BANKRUPTCY CODE.**

### 2.3.    Fee Claims.

**All Fee Claims must be Filed and served on the Reorganized Debtors, their counsel, the Wind-Down Committee, the United States Trustee, and former counsel to the Creditors' Committee no later than thirty (30) days after the Effective Date.**  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Orders of the Bankruptcy Court in the Chapter 11 Cases, the allowed amounts of such Fee

Claims shall be determined by the Bankruptcy Court. **FAILURE TO FILE AND SERVE FINAL FEE APPLICATIONS TIMELY AND PROPERLY SHALL RESULT IN THE UNDERLYING FEE CLAIMS BEING FOREVER BARRED UNLESS OTHERWISE ORDERED BY THE BANKRUPTCY COURT.**

Objections to Fee Claims, if any, must be Filed and served pursuant to the procedures set forth in the Confirmation Order no later than sixty (60) days after the Effective Date or such other date as may be established by the Bankruptcy Court.

### 2.4.    Treatment of Fee Claims.

A Fee Claim in respect of which a final fee application has been timely Filed and served pursuant to Section 2.3 of this Plan shall be payable to the extent approved by a Final Order of the Bankruptcy Court. Subject to the Holdback Amount, on the Effective Date, or as soon thereafter as reasonably practicable, to the extent not otherwise paid, all allowed Professional Fees shall be paid in full in Cash.

On the Effective Date, the Reorganized Debtor(s) shall fund the Fee Claim Reserve for payment of all fees that are or become Allowed Fee Claims to the extent not otherwise paid, including the Holdback Amount. Upon final allowance by the Bankruptcy Court of a Professional Fee, or entry of an earlier Order of the Bankruptcy Court granting a release of the Holdback Amount, any outstanding fees and the Holdback Amount shall be paid promptly and directly to the Professionals.

### 2.5.    Claims for Director's Fees.

To the extent not paid prior to the Effective Date, Director's Fees incurred during the Chapter 11 Cases shall be paid as soon as practicable after the Effective Date without the need for the Debtor's Independent Director to File an Administrative Claim.

### 2.6.    Plethico Professionals' Fees.

Following the Effective Date, the Plethico Professionals shall periodically deliver invoices, together with a certification of amount, if any, of the invoices that remain unpaid ("Unpaid Amount"), to the Wind-Down Committee that set forth the Plethico Professionals Fees. Within the later of (i) ten (10) days of receipt of such invoice(s) and certifications, and (ii) the date that the Initial Equity Distribution may be made in accordance with the terms of the Plan, the Unpaid Amount(s) shall be paid directly to the Plethico Professionals out of, prior to, and as part of, the Initial Equity Distribution. For the avoidance of doubt, following the Effective Date, the Wind-Down Committee shall be authorized to pay the Plethico Professional Fees, consistent with this Section 2.6 of the Plan, without any order of the Bankruptcy Court.

### 2.7.    Priority Tax Claims.

To the extent that a Priority Tax Claim was not assumed by the Buyer through the Sale Transaction, and except to the extent that a Holder of an Allowed Priority Tax Claim has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, each Holder of an Allowed Priority Tax Claim shall receive on, or as soon thereafter as is reasonably

practicable, the later of five (5) Business Days following the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Priority Tax Claim becomes an Allowed Claim, Cash in an amount equal to such Allowed Priority Tax Claim; provided, however, that federal or state taxing authorities shall have until 180 days from the Effective Date to file a Priority Tax Claim, if any, relating to the Debtors' 2014 income, in excess of the Debtors' payment of approximately $19 million in estimated taxes on or around March 16, 2015 (an "Income Tax Claim").  Except with respect to any Income Tax Claim, any Claim or demand for fines or penalties related to a Priority Tax Claim, excluding penalties provided for in 507(a)(8)(G), shall be Disallowed and the Holder of an Allowed Priority Tax Claim shall not assess or attempt to collect any such fine or penalty from the Reorganized Debtors.  The Debtors estimate that after accounting for Priority Tax Claims already paid and subject to potential disallowance or reduction pursuant to objections sustained by the Bankruptcy Court, the potential amount of the Allowed Priority Tax Claims will be approximately $100,000, which amount is fully reserved in the Disputed Liabilities Reserve.

## ARTICLE III.

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

Claims, other than Administrative Expense Claims, Fee Claims, Claims for Directors' Fees, and Priority Tax Claims, are classified for all purposes, including voting, confirmation and Distribution pursuant to the Plan, as follows:

| Class | Description | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| Class 1 | Non-Priority Tax Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 2 | General Unsecured Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 3 | Equity Interests | Impaired | No (conclusively presumed to accept) |

## ARTICLE IV.

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 4.1.    Class 1—Non-Tax Priority Claims.

(a)    Impairment and Voting.  Class 1 is Unimpaired by the Plan.  Each Holder of an Allowed Non-Tax Priority Claim is not entitled to vote to accept or reject the Plan because it is Unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(b)    Treatment.  Except to the extent that a Holder of an Allowed Non-Tax Priority Claim has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, each Holder of an Allowed Non-Tax Priority Claim shall receive Cash in an amount equal to such Allowed Non-Tax Priority Claim on the later of five (5) Business Days

following (a) the Effective Date or (b) the date such Allowed Non-Tax Priority Claim becomes an Allowed Non-Tax Priority Claim, or as soon thereafter as is practicable.

### 4.2.    Class 2—General Unsecured Claims.

(a)    Impairment and Voting.  Class 2 is Unimpaired by the Plan.  Each Holder of a General Unsecured Claim is not entitled to vote to accept or reject the Plan because it is Unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(b)    Treatment.  Except to the extent that a Holder of a General Unsecured Claim has been paid in full by the Debtors prior to the Effective Date or agrees to a different treatment, each Holder of an Allowed General Unsecured Claim shall receive Cash in an amount equal to such Allowed General Unsecured Claims plus Interest on the later of five (5) Business Days following (a) the Effective Date, (b) the date such General Unsecured Claim becomes an Allowed General Unsecured Claim, or (c) the Initial GUC Distribution Date, or as soon thereafter as is practicable.

### 4.3.    Class 3—Equity Interests.

(a)    Impairment and Voting.  Class 3 is Impaired by the Plan.  Each Holder of an Equity Interest is not entitled to vote to accept or reject the Plan and conclusively is deemed to have accepted the Plan.

(b)    Allowed Equity Interests: The Equity Interests of Plethico and Plethico US in Leaf123 Products, Leaf123 Direct, Leaf123 Acquisition Corp., Leaf123 Nutrition, Leaf123 Research Institute, and Leaf 123 as the sole owner are Allowed Equity Interests under this Plan.

(c)    Distributions.  On the Effective Date, all Equity Interests in Leaf123, Leaf123 Products, Leaf123 Direct, Leaf123 Acquisition Corp.,  Leaf123 Nutrition, Leaf123 Research Institute, and Natrol UK shall be deemed cancelled, and Holders of Equity Interests in these Debtors shall not receive any Distribution on account of such interests. Allowed Equity Interest Holders shall receive an Initial Equity Distribution on the Initial Equity Distribution Date in accordance with the terms of the Plan; provided, however, that no such Initial Equity Distribution shall be made until satisfaction in full of Allowed Administrative Expense Claims, Allowed Fee Claims, Claims for Director's Fees, Allowed Priority Tax Claims, all administrative expenses due and owing as of the Initial Equity Distribution Date, Allowed Class 1 Claims, and with respect to Class 2 Claims, any and all Class 2 Claims that are Allowed as of the Initial GUC Distribution Date; provided, further, that all Wind-Down Expenses due and owing as of the Initial Equity Distribution Date, the Unpaid Amounts related to the Plethico Professional Fees and the Khoudagoulian Incentive Payment shall be paid out of, and as part of, the Initial Equity Distribution on the Initial Equity Distribution Date.  For the avoidance of doubt, no further Distributions on account of  Equity Interests shall be made unless and until all Claims of a higher priority under the Bankruptcy Code, including, but not limited to, Allowed Claims, are satisfied in full and one or more Notices of Satisfaction covering each applicable category of Claims is filed with the Bankruptcy Court and all objections with respect thereto

have been resolved and any Claims that are or become Allowed Claims are satisfied in full with Interest and there are no unresolved Claims of any Creditors.

## ARTICLE V.

## IMPLEMENTATION OF THE PLAN

### 5.1.    Deemed Substantive Consolidation of the Debtors.

Entry of the Confirmation Order shall constitute the approval, pursuant to sections 105(a), 541, 1123, and 1129 of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Debtors for all purposes, including confirmation, and Distribution.  On and after the Effective Date, (i) all Assets and liabilities of the Debtors shall be treated as though they were pooled, (ii) no Distributions shall be made under the Plan on account of any Claim held by a Debtor against any other Debtor (to the extent any remain following the Closing Date), (iii) no Distributions shall be made under the Plan on account of any Equity Interest held by a Debtor in any other Debtor, and (iv) all guarantees of any Debtors of the obligations of any other Debtor shall be eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor, and any joint or several liability of any of the Debtors, shall be one obligation of the substantively consolidated Debtors.

The substantive consolidation shall not affect, without limitation, (i) defenses to any Cause of Action or requirements for any third party to establish mutuality in order to assert a right of setoff or (ii) Distributions out of any insurance policies or proceeds of such policies.

Notwithstanding the substantive consolidation provided for herein, quarterly fees U.S. Trustee Fees payable pursuant to 28 U.S.C. § 1930 shall continue to accrue for each and every Debtor until a particular Debtor's case is closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.

The Disclosure Statement and the Plan shall be deemed to be a motion requesting that the Bankruptcy Court approve the substantive consolidation provided for in the Plan.  Unless an objection to the proposed substantive consolidation is made in writing by any Creditor purportedly affected by such substantive consolidation on or before the deadline to object to confirmation of the Plan, or such other date as may be fixed by the Bankruptcy Court, the substantive consolidation proposed by the Plan may be approved by the Bankruptcy Court at the Confirmation Hearing.  In the event any such objections are timely Filed, a hearing with respect thereto shall be scheduled by the Bankruptcy Court, which hearing may, but need not, be the Confirmation Hearing.

In the event the Bankruptcy Court determines that substantive consolidation of the Debtors is not appropriate, the Debtors may request that the Bankruptcy Court otherwise confirm the Plan and the treatment of and Distribution to the different Classes under the Plan on a Debtor-by-Debtor basis.  Furthermore, the Debtors reserve their right to seek confirmation of the Plan without implementing substantive consolidation, and request that the Bankruptcy Court approve the treatment of and Distribution to the different Classes under the Plan on a Debtor-by-Debtor basis.

### 5.2.    Retention of Causes of Actions/Reservation of Rights.

Nothing contained herein or in the Confirmation Order shall be deemed a waiver or relinquishment of Causes of Action, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law.  The Debtors, the Reorganized Debtors, and, from and after the Effective Date, the Wind-Down Committee shall have, retain, reserve, and be entitled to assert all such Causes of Action, or other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and/or equitable rights respecting any Claim left Unimpaired may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases had not been commenced.  Nothing contained herein is intended to be inconsistent with the Settlement Agreement, the Cerberus Release, the Purchase Agreement, the Sale Order, or the Side Letter.

### 5.3.    Approval of Plan Documents.

Entry of the Confirmation Order shall constitute approval of the Plan Documents and such transactions.  On the Confirmation Date, the Reorganized Debtors shall be authorized to enter into, file, execute, and/or deliver each of the Plan Documents and any other agreement or instrument issued in connection with any Plan Document without the necessity of any further corporate, board, or shareholder action.

### 5.4.    Plan Supplement/Exhibits/Schedules.

The Plan Supplement(s), and all exhibits and schedules to the Plan, are incorporated hereto in full and constitute a part of the Plan as if set forth herein.

### 5.5.    No Interference.

The Plan is intended not to be in any respect inconsistent with, or to modify, threaten, hinder, or prevent the implementation of, any terms of the Settlement Agreement, the Cerberus Release, the Purchase Agreement, the Sale Order, or the Side Letter.  All of the provisions of this Plan shall be interpreted to fulfill this general intent.

### 5.6.    Plan Governs.

The terms of this Plan and any Plan Supplement(s) shall govern in the event of any inconsistency between the Plan, Disclosure Statement, or the Committee Administration Guidelines.

## ARTICLE VI.

## CORPORATE GOVERNANCE AND
## MANAGEMENT OF REORGANIZED DEBTORS

### 6.1.     Post-Effective Date Corporate Existence.

Each Reorganized Debtor is authorized and empowered to merge into or with each other Reorganized Debtor, and each of the Wind-Down Committee and any successor thereto (including, without limitation, any other designated officer or trustee or representative of each such Reorganized Debtor) is authorized and empowered to effect each such merger and to take and cause to be taken such actions in order to carry out such mergers, in each case, on such terms and conditions it may deem necessary or desirable.  The Wind-Down Committee and any successor thereto (including, without limitation, any other designated officer or trustee or representative of each such Reorganized Debtor) is authorized and empowered to effect the dissolution of any remaining Reorganized Debtors as soon as practicable after the Effective Date.  On the Effective Date, the Equity Interests in Leaf 123, Leaf123 Products, Leaf123 Direct, Leaf123 Acquisition Corp., Leaf123 Nutrition, Leaf123 Research Institute, and Natrol UK shall be cancelled.  The Equity Interests in Leaf123 Holdings shall remain.  The foregoing actions are authorized pursuant to Section 303 of Delaware General Corporation Law, Section 1400 of the California Corporations Code, or other applicable law of the states and countries in which the Debtors and the Reorganized Debtors are organized, without any requirement of further action by the stockholders, directors, members, managers, or partners of the Debtors or Reorganized Debtors.

### 6.2.     Corporate Action and Post-Effective Date Governance.

All matters provided for under the Plan that would otherwise require approval of the stockholders, directors, members, managers, or partners of one or more of the Debtors or Reorganized Debtor, including (i) the effectiveness of the certificates of incorporation and by-laws of the Reorganized Debtor, (ii) the election or appointment, as the case may be, of directors and officers of the Reorganized Debtor, and (iii) qualification of the Reorganized Debtor(s) as a foreign corporation wherever the conduct of business by the Reorganized Debtor(s) requires such qualification, will be deemed to have occurred and will be in effect from and after the Effective Date pursuant to Section 303 of the Delaware General Corporation Law and Section 1400 of the California Corporations Code, without any requirement of further action by the stockholders, directors, members, managers, or partners of the Debtors or Reorganized Debtor.   On the Effective Date, or as soon thereafter as is practicable, the Reorganized Debtors shall, if required, file their amended certificates of incorporation with the Secretary of State of the state in which each such entity is (or will be) incorporated, in accordance with the applicable general corporation law of each such state.

The Wind-Down Committee shall consist of Jeffrey C. Perea, Vimlesh Chaurasia, and Hiren Doshi.  The Wind-Down Committee shall not be formed and shall not have authority to act until the occurrence of the Effective Date.  The Chairman of the Wind-Down Committee shall be Vimlesh Chaurasia or such other Wind-Down Committee member as selected by a majority of the Wind-Down Committee members.  The Wind-Down Committee shall operate in

accordance with the Committee Administration Guidelines set forth in *Exhibit 3* to the Disclosure Statement. The Committee Administration Guidelines shall also govern the selection, removal, and replacement of any member of the Wind-Down Committee. The Chairman of the Wind-Down Committee shall be authorized to act on behalf of the Reorganized Debtors; provided, however, that Jeffrey C. Perea as the Independent Member (or such other Independent Member approved by the Bankruptcy Court in accordance with the terms of this Plan and the Committee Administration Guidelines) shall be the sole signatory on the Debtors' and Reorganized Debtors' bank accounts, including, but not limited to, the Fee Escrow Reserve Account, until all Distributions are made under this Plan and all fees and expenses of the GUC Representative, subject to the cap set forth Section 7.10(b)(7) of the Plan, have been satisfied in full, in accordance with the terms of the Plan. For the avoidance of doubt, the GUC Representative shall not have consent or consultation rights with respect to any Distributions.

The Wind-Down Committee shall be deemed the representative of the Estates under section 1123(b)(3)(B) of the Bankruptcy Code and shall have all rights associated therewith. The Wind-Down Committee shall have all duties, powers, and standing authority necessary to implement the Plan and to administer and liquidate the Assets of the Reorganized Debtors for the benefit of the Holders of Allowed Claims. These powers shall include, without limitation, the following, as provided in this Plan and the Committee Administration Guidelines:

a.  Administering the Distributions and maintaining the Administrative Expense Claims Reserve, Fee Claims Reserve, Tax Liability Reserve, Class Action Claims Reserve, Disputed Liabilities Reserve, and General Unsecured Claims Reserve;

b.  Investing any Cash of the Reorganized Debtors that is not set aside for the reserves in (a) above;

c.  Filing with the Bankruptcy Court reports and other documents required by the Plan or otherwise required to close these Chapter 11 Cases;

d.  Preparing and filing tax and informational returns for the Debtors;

e.  Retaining such professionals as the Wind-Down Committee may in its discretion deem necessary for the operation and management of the Reorganized Debtors;

f.  Litigating or settling any Claims or Causes of Action asserted against the Debtors and using all commercially reasonable efforts to cooperate with other parties in such litigation;

g.  Prosecuting objections to Claims;

h.  Evaluating, filing, litigating, prosecuting, settling, or abandoning the Claims and/or Causes of Action of the Debtors;

i.  Setting off amounts owed to the Debtors against any amounts otherwise due to be distributed to the Holder of an Allowed Claim;

j.      Abandoning any property of the Reorganized Debtors that cannot be sold or otherwise disposed of for value and whose Distribution to Holders of Allowed Claims would not be feasible or cost-effective in the reasonable judgment of the Wind-Down Committee;

k.      Making interim and final Distributions of the Assets;

l.      Winding up the affairs of the Debtors and dissolving them under applicable law as appropriate;

m.     Providing for storage and disposal of records; and

n.      Taking any other actions that the Chairman of the Wind-Down Committee, in his reasonable discretion, determines to be in the best interest of the Estates.

The Wind-Down Committee shall be responsible for winding up the affairs of the Estates and liquidating the assets held by, or transferred to, the Reorganized Debtors on or after the Effective Date including, but not limited to, preparing and filing final tax returns, filing dissolution documents pursuant to applicable law, paying any franchise taxes and other fees that are due in connection with such dissolution, and taking any other actions that are necessary to wind-down the affairs of the Debtors.

The compensation of the members of the Wind-Down Committee shall be as specified in the Committee Administration Guidelines and shall be paid by the Reorganized Debtors, subject to and consistent with the Wind-Down Budget, which shall be filed as part of the Plan Supplement.  The members of the Wind-Down Committee shall also be entitled to reimbursement of reasonable expenses, which expenses shall include, but not be limited to, the reasonable fees and expenses of attorneys and/or accountants and other professionals retained by the Wind-Down Committee (not the professionals retained by the individual members of the Wind-Down Committee).

As soon as practicable after final Distributions under the Plan, the Wind-Down Committee shall wind-up the affairs of the Estates and the Reorganized Debtors, file final tax returns, arrange for storage of its records, and dissolve the Reorganized Debtors pursuant to applicable law.  As soon as practicable thereafter, the Wind-Down Committee shall File a final report of Distributions and perform such other duties as are specified in the Plan, whereupon the Wind-Down Committee shall have no further duties under the Plan and shall be deemed to be dissolved.

### 6.3.    The GUC Representative.

The GUC Representative shall be a Person selected by the Creditors' Committee as disclosed in the Plan Supplement, subject to the approval of the Debtors, which approval shall not be unreasonably withheld.  The GUC Representative shall be compensated for services as set forth in the Plan Supplement, and the reimbursement of reasonable fees and expenses of its professionals, all of the foregoing subject in an amount not to exceed the GUC Representative Reserve amount.  Except as noted elsewhere in the Plan or the Confirmation Order, the role of

the GUC Representative shall be, among other things, to receive bi-weekly reports from the Wind-Down Committee with respect to (i) the timing and amount of all Distributions as provided in this Plan, as applicable, and (ii) the reduction of any amounts contained in the Reserves. During the tenure of the GUC Representative, as set forth herein, the GUC Representative shall (i) have consultation rights with respect to any anticipated or planned movement of Estate funds from the Debtors' existing bank accounts, and (ii) have standing to be heard on any matters relating to the wind-down of the Estates and the implementation of the Plan. For the avoidance of doubt, the GUC Representative shall not have consent or consultation rights with respect to any Distributions made pursuant to this Plan.

The GUC Representative may retain legal counsel, financial advisors, and other professionals in connection with the performance of its duties. The GUC Representative's fees and expenses and the GUC Representative's professional fees and expenses shall be capped by the amount set forth in the GUC Representative Reserve and shall be paid by the Reorganized Debtors or the Wind-Down Committee within ten (10) days after submission of a detailed invoice therefor to the members of the Wind-Down Committee. If the Wind-Down Committee disputes the reasonableness of any such invoice, the Wind-Down Committee, the GUC Representative, or the affected professional(s) may submit such dispute to the Bankruptcy Court for a determination for the reasonableness of any such invoice and the disputed portion of such invoiced fees and expenses shall not be paid until the dispute is resolved. The undisputed portion of such invoiced fees and expenses shall be paid as provided in this Section 6.4 of the Plan.

The GUC Representative shall be released and discharged of and from further authority, duties, responsibilities and obligations relating to, arising from, and in connection with, the Chapter 11 Cases, on the later of: (i) the date all Allowed Class 2 Claims are paid in full, with Interest, as applicable, and subject to the terms of this Plan; (ii) the first Business Day after the objection deadline related to the final Notice of Satisfaction with respect Class 2 Claims filed by the Reorganized Debtors or the Wind-Down Committee, or the first Business Day following the resolution or determination of all objections to all Notices of Satisfaction with respect to Class 2 Claims; and (iii) the date that all reasonable fees and expenses of the GUC Representative and its professionals shall have been paid, subject to the cap amount set forth in the GUC Representative Reserve or, if the subject of a timely dispute, resolved consensually or pursuant to a Final Order.

Notwithstanding any other provision of the Plan, the GUC Representative shall not be liable to any entity for anything other than the GUC Representative's own fraud, gross negligence or willful misconduct. The GUC Representative may, in connection with the performance of its duties, and in its sole discretion, consult with its counsel, accountants, financial advisors, or other professionals, and shall not be liable for anything done or omitted or suffered to be done in accordance with the advice or opinions obtained from such Persons. Except with respect to the GUC Representative's fraud, gross negligence or willful misconduct, if the GUC Representative determines not to consult with its counsel, accountants, financial advisors, or other professionals, the failure to so consult shall not itself impose any liability on the GUC Representative or any of its designees. Notwithstanding anything contained herein, the GUC Representative shall not be entitled to reimbursement of legal fees or expenses or to indemnification or contribution from the Estates, the Reorganized Debtors or the Wind-Down

Committee with respect to the GUC Representative's own fraud, gross negligence or willful misconduct.

In the event that the GUC Representative dies or resigns, a replacement GUC Representative shall be selected by the initial GUC Representative's counsel, subject to the express written consent of the Independent Member, provided that such consent is not unreasonably withheld.  Any replacement GUC Representative remains subject to the cap set forth in the GUC Representative Reserve.

### 6.4.    Officers and Boards of Directors.

Effective as of the Effective Date, the board of directors of each Reorganized Debtor shall be comprised solely of the Wind-Down Committee.  Effective as of the Effective Date, members of the board of directors of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to any of the Reorganized Debtors on or after the Effective Date.   Effective as of the Effective Date, the sole officer of each Reorganized Debtor shall be the Independent Member.  The Wind-Down Committee shall be authorized, without an Order of the Bankruptcy Court, to retain any professionals the Wind-Down Committee deems necessary to assist it in the performance of its duties.

### 6.5.    Payment of Wind-Down Expenses.

Following the Effective Date, as they come due, Wind-Down Expenses shall be paid by the Wind-Down Committee from the assets of the Estates.

### 6.6.    Cancellation of Existing Securities and Agreements.

On the Effective Date, any document, agreement, or instrument evidencing any Claim or Equity Interests in Leaf123 Products, Leaf123 Direct, Leaf123 Acquisition Corp., Leaf123 Nutrition, Leaf123 Research Institute, and Natrol UK shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the Debtors under such documents, agreements, or instruments evidencing such Claims and Equity Interests, as the case may be, shall be rendered legally ineffective.

## ARTICLE VII.

## PROVISIONS REGARDING
## DISTRIBUTIONS UNDER THE PLAN

### 7.1.    Distributions Generally.

Pursuant to the terms and provisions of the Plan, the Wind-Down Committee shall consult with respect to required Distributions specified under the Plan; provided, however, that the Chairman of the Wind-Down Committee, with the consent of Independent Member, shall have the sole authority to authorize any such Distributions.  Any payment of Cash made by the Wind-Down Committees pursuant to the Plan shall, at the Wind-Down Committee's option and subject to the foregoing, be made by check drawn on a domestic bank or wire transfer.

**7.2.**    **Initial Distribution to General Unsecured Creditors.**

The Reorganized Debtors or the Wind-Down Committee shall make an Initial GUC Distribution to Holders of Allowed General Unsecured Claims, inclusive of Interest, within thirty (30) days of the Effective Date of the Plan.  The Initial GUC Distribution shall be in an amount equal to 100% of the Allowed General Unsecured Claims, plus Interest.  The Reorganized Debtors or the Wind-Down Committee shall File and serve upon the affected Holders of General Unsecured Claims, the GUC Representative and its counsel, counsel to the Creditors' Committee to the extent it is still in existence at the time, and the U.S. Trustee (collectively, the "Distribution Notice Parties"), a notice of the Initial GUC Distribution twenty (20) days prior to the issuance of such Distribution.  If no objections are received to the proposed Initial GUC Distribution within fifteen (15) days prior to the scheduled Initial GUC Distribution, the Reorganized Debtors may proceed with the issuance of the Initial GUC Distribution to Holders of Allowed General Unsecured Claims as set forth in the notice of the Initial GUC Distribution.  Immediately upon payment of the Initial GUC Distribution, the affected Claimant's Claim shall be reduced in the amount of the applicable Initial GUC Distribution.

General Unsecured Claims shall be paid as they become Allowed, plus Interest, within thirty (30) of the allowance of such Claim.

**7.3.**    **Initial Distribution to Equity.**

Subject to Section 2.6 of this Plan, the Reorganized Debtors or the Wind-Down Committee shall make an Initial Equity Distribution to Holders of Equity Interests in Leaf123 Holdings within sixty (60) days after the Effective Date; provided, however, that no such Initial Equity Distribution shall be made until satisfaction in full of all Allowed Administrative Expense Claims, all Allowed Fee Claims, all Claims for Director's Fees, all Priority Tax Claims, all administrative expenses due and owing as of the Initial Equity Distribution Date, all Allowed Class 1 Claims, and with respect to Class 2 Claims, any and all Class 2 Claims that are Allowed as of the Initial GUC Distribution Date; provided, further, that all Wind-Down Expenses due and owing as of the Initial Equity Distribution Date, the Unpaid Amounts related to the Plethico Professional Fees and the Khoudagoulian Incentive Payment shall be paid out of, and as part of, the Initial Equity Distribution on the Initial Equity Distribution Date.  For the avoidance of doubt, no further Distributions on account of  Equity Interests shall be made unless and until all Claims of a higher priority under the Bankruptcy Code, including, but not limited to, Allowed Claims, are satisfied in full and one or more Notices of Satisfaction covering each applicable category of Claims is filed with the Bankruptcy Court and all objections with respect thereto have been resolved and any Claims that are or become Allowed Claims are satisfied in full with Interest and there are no unresolved Claims of any Creditors.

The Initial Equity Distribution shall be in the amount of $4 million of the Equity Interests in Leaf123 Holdings; provided, however, that to the extent Claims in the Reserves are resolved, paid, satisfied or reduced by a Final Order of the Bankruptcy Court on or before the Initial Equity Distribution Date, the amount of the Initial Equity Distribution shall be increased dollar-for-dollar in an amount not to exceed $10 million in the aggregate; provided, that unless and until all General Unsecured Claims are paid in full, disallowed or estimated at $0, the Initial Equity Distribution shall not be increased unless there is a $2 million equity holdback.  For the

avoidance of doubt, once all General Unsecured Claims are paid in full, disallowed or estimated at $0, the $2 million equity holdback shall be available for Distribution to Holders of Equity Interests.  The Reorganized Debtors or the Wind-Down Committee shall File and serve upon the Distribution Notice Parties, a notice of Initial Equity Distribution twenty (20) days prior to the issuance of such Distribution.  If no objections are received to the proposed Initial Equity Distribution within fifteen (15) days prior to the scheduled Initial Equity Distribution, the Reorganized Debtors or the Wind-Down Committee may proceed with the issuance of the Initial Equity Distribution to the Holders of Equity Interests in Leaf123 Holdings as set forth in the notice of the Initial Equity Distribution.  For the avoidance of doubt, no further Distributions on account of Equity Interests shall be made unless and until all claims of a higher priority under the Bankruptcy Code and the then incurred Wind-Down Expenses and reasonable fees and expenses of the GUC Representative, subject to the cap amount set forth in the GUC Representative Reserve, have been paid in full, including, but not limited to, all Allowed General Unsecured Claims, (i) are satisfied in full and all relevant Notices of Satisfaction are filed with the Bankruptcy Court, and (ii) the objection deadlines with respect to each such Notice of Satisfaction have passed without objection, or (iii) all Allowed Claims have been resolved by a Final Order of the Bankruptcy Court.  For the avoidance of doubt, no additional distributions to Equity shall be made until the Tax Liability is dissolved in accordance with the terms of Section 7.10(b)(6) of this Plan.

### 7.4.    Timing of Distributions.

In the event that any payment, Distribution, including the Initial GUC Distribution, any subsequent Distributions, or the Initial Equity Distribution, or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or Distribution or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  Any requirement under the Plan that the Reorganized Debtors or the Chairman of the Wind-Down Committee make a payment or Distribution on a date shall mean that such party is required to commence the process of making a payment or Distribution on such date or as soon as reasonably practicable thereafter.

### 7.5.    Distribution to Address of Record.

Subject to Bankruptcy Rule 9010, all Distributions under the Plan to Holders of Allowed Claims shall be made to the Holder of each Allowed Claim at the address of such Holder as listed on the Schedules, unless the Debtors or, on and after the Effective Date, the Reorganized Debtors and the Wind-Down Committee, have been notified in writing of a change of address, including, without limitation, by the timely filing of a proof of claim by such Holder that provides an address for such Holder different from the address reflected on the Schedules. In the event that any Distribution to any such Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Debtors or, on and after the Effective Date, the Reorganized Debtors and the Wind-Down Committee, has been notified of the then current address of such Holder, at which time or as soon as reasonably practicable thereafter, such Distribution shall be made to such Holder without interest; provided, however, that, at the later of the expiration of one (1) year from the Effective Date and the date a Claim becomes an Allowed Claim, such Distributions shall be deemed unclaimed property and shall revest in the

Reorganized Debtors and be distributed to Holders of Equity Interests, in accordance with the Plan or otherwise Ordered by the Bankruptcy Court.

### 7.6.   Unclaimed Distributions.

All Distributions to Holders of Allowed Claims under the Plan that are unclaimed for a period of one (1) year after Distribution thereof shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code, and any entitlement of any Holder of any Claim to such Distributions shall be extinguished and forever barred.  All such unclaimed property shall revest in the Reorganized Debtors and be distributed to other Holders of Allowed Claims or Equity Interests.

### 7.7.   Set-offs.

The Reorganized Debtors may, but shall not be required to, set-off against any Claim (for purposes of determining the Allowed amount of such Claim on which Distribution shall be made), any Causes of Action of any nature whatsoever that the Debtors may have against the Holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, the Reorganized Debtors, or the Wind-Down Committee of any such Causes of Action that the Debtors or the Reorganized Debtors may have against the Holder of such Claim.

### 7.8.   Allocation of Plan Distributions Between Principal and Interest.

To the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid Interest thereon, such Distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid Interest.

### 7.9.   Estimation of Claims; Certain Reserves; Liquidation of Claims Reserves.

#### (a)   Estimation of General Unsecured Claims.

For purposes of calculating and making Distributions under the Plan with respect to General Unsecured Claims, including Alleged Class Action Claims, pursuant to section 502(c) of the Bankruptcy Code, the Reorganized Debtors shall be entitled to seek an order of the Bankruptcy Court estimating, in good faith and with due regard to litigation risks associated with Disputed Claims, the maximum dollar amount of Allowed and Disputed Claims, inclusive of contingent and/or unliquidated Claims in a particular class.  The Reorganized Debtors shall be entitled to seek one or more estimation Orders from the Bankruptcy Court for such purposes, which requests may be joined with objections to the Claims that are subject to any such request. Appropriate Disputed Claims reserves shall be established for each category of Claims as to which estimates are utilized or sought.

(b)  **_Establishment of Reserves._**

(1)  *Establishment of Reserve for Disputed, Alleged Class Action Claims.*

On the Effective Date, the Reorganized Debtors shall establish a Class Action Claims Reserve, which shall be in the aggregate amount of the face amount of the Claims, plus Interest for a period of time not to exceed one year from the Petition Date, Filed by the Alleged Class Action Claimants on or before Bar Date.  The aggregate amount of the Class Action Claims Reserve shall be $5,100,000, which includes Interest.  **Pursuant to the Bar Date Order, and unless otherwise ordered by the Bankruptcy Court, any Alleged Class Action Claimant that was listed in the Debtors' Schedules as contingent, disputed, and unliquidated who did not File a Claim by the General Bar Date shall not be treated as a Creditor with respect to such alleged Claim for purposes of distribution under the Plan.  Pursuant to the Bar Date Order, such Claims shall be forever barred and expunged.**  Nothing contained herein or elsewhere in the Plan shall be construed as an admission or allowance that any Alleged Class Action Claim is certified as a class, absent an order of the Bankruptcy Court or another court of competent jurisdiction, as recognized by the Bankruptcy Court.

(2)  *Establishment of Reserve for Disputed Liabilities.*

On the Effective Date, the Reorganized Debtors shall establish a Disputed Liabilities Reserve in the amount of $1.702 million, which includes Interest for a maximum of one year at the applicable Interest Rate.

(3)  *Establishment of Reserve for General Unsecured Claims Other Than Alleged Class Action Claims and Disputed Liabilities.*

On the Effective Date, the Reorganized Debtors shall establish a General Unsecured Claims Reserve in the aggregate amount of $2.589 million, which amount includes Interest and represents the face amount of all General Unsecured Claims asserted against the Estate that were not assumed by the Buyer through the Sale Transaction, the amount of Allowed General Unsecured Claims as reduced by a Final Order of the Bankruptcy Court, the amount of General Unsecured Claims compromised pursuant to a pending motion or pursuant to an Order of the Bankruptcy Court, or the amount of General Unsecured Claims after taking into account the Debtors' right to setoff, and which includes Interest for a period of one year from the Petition Date, which General Unsecured Claims Reserve shall not include Alleged Class Action Claims or Disputed Liabilities.

(4)  *Establishment of Administrative Expense Claims Reserve.*

On the Effective Date, the Reorganized Debtors shall establish an Administrative Expense Claims Reserve in the aggregate amount of $280,000, which Administrative Claims shall not include Fee Claims.

(5)     *Establishment of Fee Claim Reserve.*

On the Effective Date, the Reorganized Debtors shall establish a Fee Claim Reserve in the aggregate amount of $3.7 million, which amount shall include the reasonable estimate of fees and expenses for periods that will not have been billed as of the Effective Date.[3] The Fee Claim Reserve shall not constitute a cap on Professional Fees and may be amended in the discretion of the Independent Member, as necessary.

(6)     *Establishment of Tax Liability Reserve.*

On the Effective Date, the Reorganized Debtors shall establish a Tax Liability Reserve in the amount of $17.3 million.  The Tax Liability Reserve will be used solely to pay any additional federal or state tax liabilities, if any, relating to the Debtors' 2014 income, in excess of the Debtors' payment of approximately $19 million in estimated taxes on or around March 16, 2015.  The Tax Liability Reserve shall be held until there is a final, non-appealable adjudication/agreement with respect to the Debtors' 2014 tax liabilities.  For the avoidance of doubt, the Tax Liability Reserve does not include Allowed Priority Tax Claims, which are subsumed in the Disputed Liabilities Reserve.

(7)     *Establishment of GUC Representative Reserve.*

On the Effective Date, the Reorganized Debtors shall establish a GUC Representative Reserve in an aggregate amount of $125,000 to cover the reasonable fees and expenses of the GUC Representative, including, but not limited to, the reasonable fees and expenses of the GUC Representative's legal counsel, financial advisor or other professionals. The amount of the GUC Representative Reserve is capped and is not subject to upward adjustment under any circumstances.   Upon the release and discharge of the GUC Representative, as contemplated by Section 6.3 of the Plan, amounts remaining in the GUC Representative Reserve, if any, shall immediately revert to the Reorganized Debtors.

(8)     Establishment of Wind-Down Expense Reserve.

On the Effective Date, the Reorganized Debtors shall establish a Wind-Down Expense Reserve in the aggregate amount of $1.76 million, which amount shall include the reasonable estimate of fees and expense for periods that will not have been billed as of the Effective Date.

(c)     <u>*Liquidation of Reserves.*</u>

Immediately following the liquidation, satisfaction, disallowance, or other disposition, as appropriate, of one or more of the Claims in any of the Reserves, the funds relating to such Claims shall revert to the Reorganized Debtors and become available for the

---

[3]     With respect to Plethico's dispute regarding GLC's final fee application [Docket Nos. 883 & 942] (the "<u>Disputed Fees</u>"), a good faith estimate of $250,000 to cover any reasonable and documented fees or expenses incurred by counsel to GLC ("<u>GLC Counsel Fees</u>") pursuant to GLC's engagement letter shall be included in the Fee Claim Reserve; <u>provided</u>; that any portion of the reserved GLC Counsel Fees that are not approved by Final Order of the Bankruptcy Court shall be treated in accordance with Section 7.9(c) of this Plan.

payment of Wind-Down Expenses, for Distributions to other Creditors and Holders of Equity Interests in accordance with the terms of the Plan without further approval of the Bankruptcy Court.

### 7.10.   Non-Recourse.

Notwithstanding that the allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other Holders of Allowed Claims in the respective Class, no Claim Holder shall have recourse against the Debtors or the Reorganized Debtors, or any of their respective professionals, consultants, officers, directors, employees, or members or their successors or assigns, or any of their respective property. However, nothing in the Plan shall modify any right of a Holder of a Claim under section 502(j) of the Bankruptcy Code, nor shall it modify or limit the ability of claimants (if any) to seek disgorgement to remedy any unequal distribution from parties other than those released under Article IX of this Plan.   THE ESTIMATION OF CLAIMS AND THE ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

### 7.11.   Satisfaction of Claims.

Unless otherwise provided for in the Plan or the Confirmation Order, any Distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete settlement, and satisfaction such Allowed Claims.

### 7.12.   Withholding and Reporting Requirements.

In connection with the Plan and all Distributions thereunder, the Reorganized Debtors and the Wind-Down Committee shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under the Plan shall be subject to any such withholding and reporting requirements. The Reorganized Debtors and the Wind-Down Committee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including, without limitation, liquidating a portion of any Distribution to generate sufficient funds to pay applicable withholding taxes or establishing any other mechanisms the Reorganized Debtors or the Wind-Down Committee believe are reasonable and appropriate, including requiring a Holder of a Claim to submit appropriate tax and withholding certifications. Notwithstanding any other provision of the Plan, (a) each Holder of an Allowed Claim or Equity Interest that is to receive a Distribution under the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations on account of such Distribution, and (b) no Distributions shall be required to be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Reorganized Debtors and the Wind-Down Committee for the payment and satisfaction of such

tax obligations or has, to the Reorganized Debtors' and the Wind-Down Committee' satisfaction, established an exemption therefrom.

## ARTICLE VIII.

## PROCEDURES RELATED TO DISPUTED CLAIMS

### 8.1.    Objections to Administrative Expense Claims and Claims.

For the avoidance of doubt, this Section 8.1 of the Plan does not apply to Fee Claims, Wind-Down Expenses or expenses of the GUC Representative.  Any objections to Administrative Expense Claims and Claims shall be Filed and served on or before the later of (i) ninety (90) days after the Confirmation Date and (ii) such later date as may be fixed by the Bankruptcy Court, which later date may be fixed before or after the date specified in clause (i) above.  The Debtors and the Reorganized Debtors shall be entitled to File motions to extend the initial deadline to object to Administrative Expense Claims and Claims on notice to the GUC Representative, and the Bankruptcy Court may enter an Order approving such motion without further notice or a hearing.

No objection shall be required with respect to a proof of Claim or proof of Administrative Expense Claim Filed after the applicable Bar Date, and any and all such Claims and Administrative Expense Claims shall be deemed Disallowed unless otherwise ordered by the Bankruptcy Court after notice and a hearing.  The Plan is intended not to be in any respect inconsistent with, or to modify, threaten, hinder, or prevent the implementation of, any terms of the Claims Administration Protocol.

### 8.2.    Amendments to Claims.

After the Confirmation Date, a proof of Claim or Administrative Expense Claim may not be amended to increase the amount of the Claim or elevate the priority of the Claim without the authorization of the Bankruptcy Court.  Any amendment to a proof of Claim or Administrative Expense Claim submitted after the Confirmation Date shall be deemed Disallowed in full and expunged, unless the Holder of the Claim or Administrative Expense Claim has obtained prior Bankruptcy Court authorization to File the amendment.  After the Effective Date, upon the satisfaction of Allowed Claims, the Reorganized Debtors or the Wind-Down Committee shall periodically file (and serve on the affected parties) a Notice of Satisfaction.  The Debtors shall not file further amendments their schedules of assets and liabilities after the Confirmation Date.

### 8.3.    No Distributions Pending Allowance.

Notwithstanding any other provision of the Plan, if any portion of a Claim or Administrative Expense Claim is Disputed, no payment or Distribution provided under the Plan shall be required to be made on account of such Claim or Administrative Expense Claim unless and until such Disputed Claim or Disputed Administrative Expense Claim becomes allowed in its entirety.

### 8.4.    Resolution of Disputed Claims.

On and after the Effective Date, the Reorganized Debtors, through the Wind-Down Committee, shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Disputed Claims without approval of the Bankruptcy Court.

## ARTICLE IX.

## EFFECT OF CONFIRMATION & INDEMNIFICATION, RELEASE, INJUNCTIVE, AND RELATED PROVISIONS

### 9.1.    Binding Effect.

From and after the Confirmation Date, but subject to the occurrence of the Effective Date, this Plan shall be binding and inure to the benefit of the Debtors, all present and former Holders of Claims and Equity Interests, and their respective assigns, including the Reorganized Debtors.

### 9.2.    Vesting of Assets.

Upon the Effective Date, the Assets of the Debtors and Estates shall vest in the Reorganized Debtors, in each case free and clear of all Claims, liens, encumbrances, charges, and other interests, except as otherwise provided herein or in the Confirmation Order.  Pursuant to section 1123(b)(3) of the Bankruptcy Code and the terms of this Plan, the Reorganized Debtors and the Wind-Down Committee shall retain and shall have the exclusive right, in their discretion to enforce against any Person any and all Causes of Action that constitute Assets of the Reorganized Debtors.

### 9.3.    Term of Pre-Confirmation Injunctions or Stays.

Unless otherwise provided in this Plan, the Confirmation Order, or a separate Order from the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, (i) shall remain in full force and effect until the later of the Effective Date and the date indicated in such applicable Order, and (ii) with respect to all proceeds of the Sale Transactions and Excluded Assets (as defined in the Purchase Agreement), shall remain in effect until, and for purposes of enjoining any action interfering with, the final Distribution of such proceeds pursuant to the terms of this Plan.

### 9.4.    Injunction Against Interference with Plan.

Upon the entry of the Confirmation Order, all Holders of Claims and Equity Interests and other parties in interest, along with their respective present or former affiliates, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan.

### 9.5.    <u>Injunction.</u>

Except as otherwise expressly provided in the Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold liens, Claims, liabilities or encumbrances against or Equity Interests in, any or all of the Debtors or the Estates, along with their respective present or former employees, agents, officers, directors, or principals are permanently enjoined, with respect to any such liens, Claims, liabilities or encumbrances or Equity Interests, as of the Confirmation Date but subject to the occurrence of the Effective Date, from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Reorganized Debtors, the Estates or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtors, the Reorganized Debtors, or the Estates or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Reorganized Debtors, or the Estates or any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons, or any property of such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; (v) asserting any right of setoff (except to the extent timely asserted prior to the Confirmation Date), or subrogation of any kind against any obligation due from the Debtors, the Reorganized Debtors, the Estates or any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons, or any property of such transferee or successor; (vi) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, <u>further</u>, that the Releasing Parties are, with respect to Claims or Equity Interests held by such parties, permanently enjoined after the Confirmation Date from taking any actions referred to in clauses (i) through (vi) above against the Released Parties or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the Released Parties or any property of any such transferee or successor; <u>provided</u>, <u>however</u>, that nothing contained herein shall preclude any Person from exercising its rights, or obtaining benefits, directly and expressly provided to such entity pursuant to and consistent with the terms of the Plan, the Plan Supplement and the contracts, instruments, releases, agreements and documents delivered in connection with the Plan or the Sale Transaction; <u>provided</u> <u>further</u>, that nothing contained herein shall be construed as enjoining VRS Chatsworth, LLC, or any of its successors or assigns, solely with respect to any and all claims arising out of or related to guaranty obligations (the "<u>Guaranty Obligations</u>") that may exist between VRS Chatsworth, LLC, or any of its successors or assigns on the one hand, and Plethico Pharmaceuticals Limited, or any of its respective successors or assigns on the other hand, with respect to those certain leases of real property located in Chatsworth, California (the "<u>Prairie Street Lease</u>", as amended, and the "<u>Owensmouth Avenue Lease</u>", as amended, respectively, and

together, the "Chatsworth Leases," which were assumed by Purchaser through the Sale Transaction).

All Persons releasing claims pursuant to Article IX of this Plan shall be permanently enjoined, from and after the Confirmation Date, from taking any actions referred to in clauses (i) through (vi) of the immediately preceding paragraph against any party with respect to any claim released pursuant to Article IX of this Plan.

### 9.6.    Releases.

(a)    *Releases by the Debtors.  Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, the Debtors and Reorganized Debtors, in their individual capacities and as debtors in possession, shall be deemed to forever release and waive all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, which are based in whole or in part on any act, omission, transaction, event or other occurrence taking place through and including the Effective Date in any way relating to the Debtors, the Reorganized Debtors, the Chapter 11 Cases, the Plan or this Disclosure Statement, and that could have been asserted by or on behalf of the Debtors, or the Reorganized Debtors, whether directly, indirectly, derivatively or in any representative or any other capacity against the Released Parties in their respective capacities as such, provided, however, that in no event shall anything in Article IX of this Plan be construed as a release of any Person's fraud, willful misconduct or gross negligence, or a release or waiver of the Debtors' or Reorganized Debtors' right or ability to assert or raise certain claims against any Released Party as defense to a claim or suit brought against them or their assets by any Released Party.*

(b)    *Releases by Holders of Claims and Equity Interests.  Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, to the fullest extent permissible under applicable law as determined by the Bankruptcy Court, as such law may be extended or interpreted subsequent to the Effective Date, all Holders of Claims and Equity Interests and the Committee, in consideration for the obligations of the Debtors and the Reorganized Debtors under the Plan, and other contracts, instruments, releases, agreements or documents executed and delivered in connection with the Plan, and each entity (other than the Debtors) that has held, holds or may hold a Claim, as applicable, will be deemed to have consented to the Plan for all purposes and the restructuring embodied in the Plan and will be deemed to forever release, and waive all claims, demands, debts, rights, causes of action or liabilities (other than the right to enforce the obligations of any party under the Plan and the contracts, instruments, releases, agreements and documents delivered under or in connection with the Plan) or the Sale Transaction, including, without limitation, any Claims for any such loss such holder may suffer, have suffered or be alleged to suffer as a result of the Debtors commencing the Chapter 11 Cases or as a result of the Plan being consummated, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence from the beginning of time through and including the Effective Date in any way relating to the*

*Debtors, the Chapter 11 Cases, the Plan or the Disclosure Statement against the Released Parties in their respective capacities as such. Notwithstanding the foregoing, in no event shall anything in Article IX of this Plan be construed as (i) a release of any Person's (other than a Debtor's) fraud, willful misconduct or gross negligence, or (ii) modifying the scope of and recipients under any releases provided by Cerberus in connection with the Chapter 11 Cases, and any releases by Cerberus shall be to the extent, and only the extent, set forth in the Cerberus Release and shall not be expanded or altered by anything contained in this Plan; provided further that nothing in this section 9.6(b) shall be deemed to release Plethico Pharmaceuticals Limited, or any of its respective successors or assigns, with respect to any Guaranty Obligations under the Chatsworth Leases.*

*(c)     Notwithstanding anything otherwise to the contrary, no provision of the Plan or of the Confirmation Order, including any release or exculpation provision, shall modify, release or otherwise limit the liability of any Person not specifically released hereunder, including any Person that is a co-obligor or joint tortfeasor of a Released Party, that otherwise is liable under theories of vicarious or other derivative liability.*

*Notwithstanding anything to the contrary in the Plan, all parties in interest, including, without limitation, Plethico, Plethico US, Plethico India, and any Holders of Equity Interests that are deemed cancelled pursuant to this Plan, retain and reserve the right to object to any Fee Claims.*

*Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in Article IX of this Plan pursuant to Bankruptcy Rule 9019 and its finding that they are: (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action thereby released; (b) in the best interests of the Debtors and all Holders of Claims; (c) fair, equitable and reasonable; (d) approved after due notice and opportunity for hearing; and (e) a bar to any of the Debtors or Releasing Parties asserting any Claim or Cause of Action thereby released.*

## 9.7.     Exculpation and Limitation of Liability.

None of the Debtors, the Reorganized Debtors, the Creditors' Committee, or any of their respective current or former members, partners, officers, directors, employees, advisors, professionals, affiliates, or agents and advisors of any of the foregoing (including any attorneys, financial advisors, investment bankers and other professionals retained by such Persons, but solely in their capacities as such) shall have or incur any liability to any Holder of any Claim or Equity Interest for any act or omission in connection with, related to, or arising out of the Chapter 11 Cases, the negotiation and execution of the Purchase Agreement, the sale of substantially all of the Debtors' assets, the negotiation and execution of the Plan, the Disclosure Statement, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan, and the property to be distributed under the Plan, including all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all prepetition activities leading to the promulgation and confirmation of the Plan except fraud, willful misconduct or gross negligence as determined by a Final Order. Nothing in Article IX of this Plan shall: (i) be construed as a release of any entity's

01:16865077.3

36

fraud, gross negligence or willful misconduct with respect to matters set forth in Article IX of this Plan; (ii) limit the liability of attorneys for the Debtors, the Reorganized Debtors, or the Creditors' Committee, to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility; or (iii) be construed as a release or waiver of the Debtors' or Reorganized Debtors' right or ability to assert or raise certain claims against any party as a defense to a claim or suit brought against them by such party.

### 9.8.    Injunction Related to Releases and Exculpation.

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released pursuant to the Plan, including the Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released in Article IX of this Plan.

### 9.9.    Releases of Liens and Encumbrances.

(a)    To the Debtors' knowledge, no liens or encumbrances remain on the Debtors' assets as of the Closing Date. However, to the extent any liens or encumbrance remain on the Debtors' assets after the Closing Date: (w) any Claim that is purportedly secured or (y) any judgment, personal property, or ad valorem tax, or other tax of any kind or character, mechanic's, or similar lien Claim, in each case regardless of whether such Claim is an Allowed Claim, shall, regardless of whether such Claim has been scheduled or proof of such Claim has been Filed:

> (i) shall automatically, and without further action by the Debtors or the Reorganized Debtors, be deemed released immediately upon the occurrence of the Effective Date, and without further action by the Debtors or Reorganized Debtors, be deemed released;

> (ii) the holder of any such lien or encumbrance shall execute such documents and instruments as the Reorganized Debtors or the Liquidation Trustee, as the case may be, require to evidence such Claim Holder's release of such property or lien or encumbrance, and if such Holder refuses to execute appropriate documents or instruments, the Debtors, the Reorganized Debtors or the Wind-Down Committee may, in their discretion, file a copy of the Confirmation Order in the appropriate recording office, which shall serve to release any Claim Holder's rights in such property;

> (iii) on the Effective Date, except as expressly provided in the Plan, all right, title, and interest in Estate property subject to a lien or an encumbrance immediately prior to the Effective Date shall revert to the Estates.

**9.10.    Satisfaction of Subordination Rights.**

All Claims against the Debtors and all rights and Claims between or among Holders of Claims relating in any manner whatsoever to Claims against the Debtors, based upon any claimed subordination rights (if any), shall be deemed satisfied by the Distributions under the Plan, and such subordination rights shall be deemed waived, released, and terminated as of the Effective Date.

# ARTICLE X.

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**10.1.    Conditions to Confirmation.**

The following are conditions precedent to confirmation of this Plan that may be satisfied or waived in accordance with this Plan:

(a)    the Bankruptcy Court shall have approved the Disclosure Statement with respect to the Plan in an Order in form and substance reasonably acceptable to the Debtors;

(b)    the Confirmation Order and Plan Documents shall be in form and substance reasonably acceptable to the Debtors;

(c)    in each case subject to the occurrence of the Effective Date, to the extent necessary or appropriate, the Plan Documents to be entered into by the Reorganized Debtors shall have been entered and delivered, all actions, documents, and agreements necessary to implement the Plan shall have been effected or executed and the Debtors shall have received all material authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents that are reasonably necessary to implement the Plan and that are required by law, regulation, or order.

**10.2.    Effectiveness.**

The Plan shall not become effective unless and until: (i) the Confirmation Order shall have become final and non-appealable and (ii) the Plan Documents shall have been executed and become effective.

**10.3.    Waiver of Conditions.**

The Debtors, after consultation with the Creditors' Committee and Holders of Equity Interests, and to the extent not prohibited by applicable law, may jointly waive one or more of the conditions precedent: (i) to effectiveness of the Plan set forth in Article X hereof in whole or part, upon five (5) Business Days' notice to the Bankruptcy Court without a hearing or (ii) to confirmation of the Plan set forth in Article X hereof prior to the Confirmation Date without any hearing.  The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such conditions to be satisfied (including any action or inaction by the Debtors in their sole discretion).  The failure of the Debtors to exercise any of the foregoing rights shall not

be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

### 10.4.    Withdrawal of Plan.

(a)    **Right to Revoke or Withdraw**.  The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Effective Date, upon reasonable notice to the Creditors' Committee.

(b)    **Effect of Withdrawal, Revocation, or Non-Consummation**.  If the Debtors revoke or withdraw the Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, the Plan; any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Equity Interest or Class of Claims or Equity Interests); the assumption or rejection of executory contracts, unexpired leases, any release, exculpation, or indemnification provided for in the Plan; and any document or agreement executed pursuant to the Plan shall be null and void.  In such event, nothing contained herein, and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims by or against any Equity Interest in the Debtors or any other Person, to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or to constitute an admission of any sort by the Debtors or any other Person.

### 10.5.    Waiver of Rule 3020(e) Stay.

Pursuant to Bankruptcy Rule 3020(e), the Confirmation Order shall be immediately effective upon its entry and shall not be subject to the stay provided in Bankruptcy Rule 3020(e).

## ARTICLE XI.

## RETENTION OF JURISDICTION

### 11.1.    Scope of Bankruptcy Court Jurisdiction.

The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)    To hear and determine pending applications for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases and the allowance of cure amounts and Claims resulting therefrom or from the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases pursuant to this Plan;

(b)    To hear and determine any and all adversary proceedings, applications, and contested matters and to order appropriate relief in connection therewith (including issuance and/or enforcement of releases);

(c)     To hear and determine any objection to Administrative Expense Claims and/or Claims;

(d)     To enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(e)     To issue such Orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(f)     To consider any amendments to, or modifications of, the Plan and the Plan Supplement, and any dispute or controversy relating to execution, delivery, or compliance with any document included in the Plan Supplement, and to cure any defect or omission, or reconcile any inconsistency in any Order of the Bankruptcy Court, including the Confirmation Order;

(g)     To hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Bankruptcy Code;

(h)     To hear and determine all matters related to the Fee Dispute;

(i)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan;

(j)     To hear and determine disputes with respect to Wind-Down Expenses and expenses incurred by the GUC Representative;

(k)     To hear and determine disputes with respect to Contracts and Leases;

(l)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Sale Order, the Purchase Agreement, or the Side Letter, including, but not limited to, the Disputed Liabilities;

(m)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Cerberus Release or the Settlement Agreement.

(n)     To issue injunctions, enter and implement other Orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, any transaction to be consummated in accordance herewith, the Confirmation Order, or any other Order of the Bankruptcy Court;

(o)     To recover all assets of the Debtors and property of the Debtors and the Reorganized Debtors wherever located;

(p)    To hear and determine matters concerning state, local, and federal taxes, including as provided by sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of tax under section 505(b) of the Bankruptcy Code);

(q)    To resolve any Disputed Claims;

(r)    To hear and resolve disputes and issues presented by the Wind-Down Committee members, as provided for in the Committee Administration Guidelines.

(s)    To hear any other matter not inconsistent with the Bankruptcy Code;

(t)    To interpret and/or enforce any prior Orders entered by the Bankruptcy Court, including any and all agreements and documents related thereto; and

(u)    To enter a Final Decree; provided, however, that with respect to a governmental unit's exercise of its police or regulatory powers, other than the enforcement of a money judgment, the jurisdiction of any other tribunal shall not be reduced or impaired from that as set forth in any applicable, valid statutory grant of jurisdiction.

## ARTICLE XII.

## MISCELLANEOUS PROVISIONS

### 12.1.    Effectuating Documents and Further Transactions.

Each of the Debtors and Reorganized Debtors is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any securities issued pursuant to this Plan.

### 12.2.    Termination of Professionals.

On the Effective Date, except as provided in Section 12.16 of this Plan, the engagement of each Professional retained by the Debtors and the Creditors' Committee shall be terminated without further Order of the Bankruptcy Court or act of the parties.

### 12.3.    Access.

From and after the Effective Date, the Reorganized Debtors and the Wind-Down Committee shall cooperate with any Person that served as a director or officer of a Debtor at any time prior to the Effective Date and make available to any such party such documents, books, records, or information relating to the Debtors' activities prior to the Effective Date that such party may reasonably require relating to any action taken in connection with such party's role as a director or officer of a Debtor at the cost of the requesting party; any action taken in connection with the negotiation, execution, and implementation of this Plan; and the Chapter 11 Cases.

### 12.4.   Payment of Statutory Fees.

On the Effective Date, and thereafter as may be required, the Debtors and/or Reorganized Debtors, as applicable, shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code through the entry of a Final Decree.

### 12.5.   Post-Effective Date Fees and Expenses.

From and after the Effective Date, the Reorganized Debtors or the Wind-Down Committee shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional Persons thereafter incurred by the Reorganized Debtors and the Wind-Down Committee, including those fees and expenses incurred in connection with the implementation and consummation of this Plan, which fees and expenses shall constitute Wind-Down Expenses.  In addition, the Reorganized Debtors or the Wind-Down Committee shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the documented, reasonable fees and expenses of the Creditors' Committee's professionals exclusively to the extent that such reasonable fees and expenses relate to defense or prosecution of fees and expenses earned prior to the Confirmation Date in an amount not to exceed $25,000 in the aggregate.  For the avoidance of doubt, post-effective date fees and expenses of the GUC Representative and its professionals shall be paid by the Reorganized Debtors or the Wind-Down Committee in accordance with terms of this Plan and shall be subject to the cap set forth in the GUC Representative Reserve.

### 12.6.   Amendment or Modification of this Plan.

Alterations, amendments, or modifications of or to the Plan (including to provide for treatment different than that set forth herein with respect to any Class of Claim or Equity Interest, including establishment of subclasses of Classes of Claims or Equity Interests to the extent required if so elected by the Debtors or if the deemed consolidation contemplated by Article V of this Plan is not approved, the unimpairment of Classes that are Impaired hereunder, and the impairment of Classes that are Unimpaired hereunder) may be proposed in writing by the Debtors, after consultation with the Committee and Holders of Equity Interests, at any time prior to the Confirmation Date, provided that the Plan, as altered, amended, or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code and the Debtors shall have complied with section 1125 of the Bankruptcy Code.  This Plan may be altered, amended, or modified at any time after the Confirmation Date and before substantial consummation, provided that this Plan, as altered, amended, or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended, or modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments, or modifications.  A Holder of a Claim or Equity Interest that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim or Equity Interest of such Holder.

### 12.7. <u>Confirmation Order.</u>

The Confirmation Order shall, and is hereby deemed to, ratify all transactions effected by the Debtors during the period commencing on the Petition Date and ending on the Confirmation Date except for any acts constituting willful misconduct, gross negligence, recklessness, or fraud.

### 12.8. <u>Severability.</u>

If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 12.9. <u>Expedited Tax Determination.</u>

The Reorganized Debtors or the Wind-Down Committee may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Debtors or Reorganized Debtors for all taxable periods beginning on or before the Effective Date.

### 12.10. <u>Governing Law.</u>

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit or schedule hereto or in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to any contrary result otherwise required under applicable choice or conflict of law rules.

### 12.11. <u>Binding Effect.</u>

The Plan shall be binding upon and inure to the benefit of the Debtors, the Holders of Claims and Equity Interests, and their respective successors and assigns, including the Reorganized Debtors.

### 12.12. <u>Exhibits/Schedules.</u>

All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein.

01:16865077.3

43

### 12.13.  <u>Contracts and Leases.</u>

As of the date of the filing of this Plan, the Debtors do not believe that they are parties to any Contracts or Leases.  In the event that the Debtors are parties to any Contracts or Leases, all such Contracts and Leases shall be deemed to be rejected as of the Confirmation Date, and counterparties to any Contract or Lease that was not assigned to the Buyer that believe they have a Claim out of the rejection of a Contract or Lease under this Plan must File a Claim for damages arising from the rejection of the Contract or Lease within thirty (30) days of the Confirmation Date.  All such Claims not Filed within such timeframe will be forever barred from assertion against the Debtors and their Estates, and the Reorganized Debtors.

### 12.14.  <u>Insurance.</u>

With the exception of the Debtors' policy or policies relating to directors' and officers' liability (the "<u>D & O Policies</u>"), all of the Debtors' insurance policies were assigned to the Buyer through the Sale Transaction.  The Debtors shall maintain the D & O Policies until the earlier of the two years following the Effective Date or the date when a Final Decree is entered with respect to all of the Chapter 11 Cases.

### 12.15.  <u>Dissolution of Creditors' Committee.</u>

The functions of the Creditors' Committee shall terminate on the later of:  (i) the Effective Date; (ii) the conclusion of any appeals with respect to the Confirmation Order (but such functions shall relate solely to services performed related to such appeal and work with respect to final fee applications); and (iii) entry of Final Order(s) on all Fee Claims, and the Creditors' Committee shall be deemed dissolved as of such date.  Following the Effective Date, the attorneys to the Creditors' Committee shall be entitled to assert any claims for compensation for services rendered or reimbursement for expenses with respect to (i) through (iii) herein, subject to the cap set forth in Section 12.5 of this Plan.

*[Remainder of page intentionally left blank.]*

12.16.  **Notices.**

All notices, requests, and demands to or upon the Debtors or the Reorganized Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided for herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| *The Debtors and Their Counsel* | |
|---|---|
| **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br>Michael R. Nestor<br>Maris J. Kandestin<br>Rodney Square<br>1000  North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br><br>*Counsel for the Debtors* | **Leaf123, Inc. (f/k/a Natrol, Inc.),** *et al.*<br>Attn:  Jeffrey C. Perea<br>c/o Conway MacKenzie, Inc.<br>333 South Hope Street, Suite 3625<br>Los Angeles, California 90071<br>Telephone: (213) 416-6200<br><br>*Chief Financial Officer of the Debtors* |

Dated:  April 2, 2015
        Wilmington, Delaware

Respectfully submitted,
**Leaf 123, Inc. (f/k/a Natrol, Inc.),** *et al.*

By: ___*Jeffrey Perea*_____
Name:  Jeffrey C. Perea
Title:  Chief Financial Officer

01:16865077.3                     45