## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------x
:
In re:                                                   :    Chapter 11
:
LEAF123, INC. (f/k/a NATROL, INC.), *et al.*,            :    Case No. 14-11446 (BLS)
:
Debtors.[1]                                              :    (Jointly Administered)
:
:    **Re: Docket Nos. 1031, 1097, 1112, 1113, 1138, 1139, 1140,**
-----------------------------------------------------------x    **1141, 1152, 1193 & 1168**

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
## CONFIRMING SECOND AMENDED JOINT LIQUIDATING PLAN OF LEAF123,
## INC. (F/K/A NATROL, INC.) AND ITS AFFILIATED DEBTORS

Leaf123, Inc. (f/k/a Natrol, Inc.) and its affiliated debtors and debtors in

possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), having

proposed and filed with the United States Bankruptcy Court for the District of Delaware (the

"Bankruptcy Court") (i) that certain *First Amended Joint Liquidating Plan of Leaf123, Inc. (f/k/a*

*Natrol, Inc.) and Its Affiliated Debtors*, dated April 2, 2015 [Docket No. 1031]; (ii) that certain

*Disclosure Statement for First Amended Joint Liquidating Plan of Leaf123, Inc. (f/k/a Natrol,*

*Inc.), and Its Affiliated Debtors*, dated April 2, 2015 [Docket No. 1032] (the "Disclosure

Statement"), which the Bankruptcy Court approved as having adequate information pursuant to

section 1125 of 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") on April 2, 2015 [Docket No.

1034]; (iii) that certain *Second Amended Joint Liquidating Plan of Leaf123, Inc. (f/k/a Natrol,*

*Inc.) and Its Affiliated Debtors*, dated May 22, 2015, which is attached hereto as Exhibit A  (as

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Leaf123, Inc. (f/k/a Natrol, Inc.) (0780); Leaf123 Holdings, Inc. (f/k/a Natrol Holdings, Inc.) (4614); Leaf123 Products, Inc. (f/k/a Natrol Products, Inc.) (7823); Leaf123 Direct, Inc. (f/k/a Natrol Direct, Inc.) (5090); Leaf123 Acquisition Corp. (f/k/a Natrol Acquisition Corp.) (3765); Leaf123 Nutrition, Inc. (f/k/a Prolab Nutrition, Inc.) (3283); and Leaf123 Research Institute (f/k/a Medical Research Institute) (2825).  The Debtors' principal offices are located at 333 South Hope Street, Suite 3625, Los Angeles, CA 90071.

may be modified, the "Plan");[2] and (iv) the Plan Supplement, dated April 21, 2015 [Docket No. 1097] as amended on April 28, 2015 [Docket No. 1112] and May 5, 2015 [Docket No. 1138] (collectively, the "Plan Supplements"); and the *Notice of (I) Approval of the Disclosure Statement and Notice Thereof; (II) Fixing the Record Date; (III) Scheduling the Plan Confirmation Hearing; (IV) Approving the Form and Manner of Related Notices; and (IV) Setting Objection Procedures* dated April 2, 2015 [Docket No. 1036], (the "Confirmation Hearing Notice") and the *Notice of (I) Approval of the Disclosure Statement and Notice Thereof; (II) Fixing the Record Date; (III) Scheduling the Plan Confirmation Hearing; (IV) Approving the Form and Manner of Related Notices; and (IV) Setting Objection Procedures*, dated April 2, 2015 (the "Notice of Non-Voting Status") being transmitted and the *Notice of (I) Approval of the Disclosure Statement and Notice Thereof; (II) Fixing the Record Dates; (III) Scheduling the Plan Confirmation Hearing; (IV) Approving the Form and Manner of Related Notices; and (V) Setting the Objection Deadline* (the "Publication Notice") being published as required by the Disclosure Statement Order as set forth in the *Affidavit of Service* [Docket No. 1046] (the "Service Affidavit") and the *Verification of Publication* [Docket No. 1051] (the "Publication Verification"); and the Bankruptcy Court having held that solicitation was not required, as set forth in section 1126(f) of the Bankruptcy Code; and that certain *Declaration of Bradley E. Scher in Support of Confirmation of the Second Amended Joint Liquidating Plan of Leaf123, Inc. (f/k/a Natrol, Inc.) and Its Affiliated Debtors* dated May 5, 2015 [Docket No. 1140], that certain *Declaration of Bradley E. Scher in Support of Settlement Agreement Between the Debtors, Aurobindo Pharma USA Inc., and Natrol LLC* dated May 6, 2015 [Docket No. 1141], and that certain *Declaration of Jeffrey C. Perea in Support of Confirmation of the Second Amended Joint*

---

[2]    Capitalized terms used, but not otherwise defined herein, have the meanings given to them in the Plan.

01:17062257.11

2

*Liquidating Plan of Leaf123, Inc. (f/k/a Natrol, Inc.) and Its Affiliated Debtors* dated May 5, 2015 [Docket No. 1139] (collectively, the "Declarations"), having been filed in support of confirmation of the Plan and having been moved into evidence at the initial Confirmation Hearing held on May 8, 2015 (the "Initial Confirmation Hearing"); and the *Debtors' Memorandum of Law in Support of Second Amended Joint Liquidating Plan of Leaf123, Inc. (f/k/a Natrol, Inc.) and Its Affiliated Debtors* in support of confirmation of the Plan having been filed on May 7, 2015 [Docket No. 1152] (the "Confirmation Brief"); and the *Declaration of Al Sanifar in Support of Sufficiency of Tax Liability Reserve and in Support of Confirmation of the Second Amended Joint Liquidating Plan of Leaf123, Inc. (f/k/a Natrol, Inc.) and its Affiliated Debtors* [Docket No. 1193] (the "Sanifar Declaration") filed on May 15, 2015; and responses or objections to confirmation of Plan having been filed by: (i) the Internal Revenue Service [Docket Nos. 1120 and 1200], the United States Trustee [Docket No. 1122], Jessica Augustine [Docket No. 1123], Citibank, N.A., London Branch [Docket No. 1128], and Nature's Products, Inc. [Docket No. 1144] (together with any objections raised at the Confirmation Hearing, collectively, the "Objections"); and the Bankruptcy Court having held the Initial Confirmation Hearing on May 8, 2015 and the continued Confirmation Hearing on May 22, 2015; and the Objections having been resolved (including to the extent such resolution is set forth in any modification to the Plan or as set forth herein), overruled, or withdrawn prior to or during the Confirmation Hearing; and the Debtors having filed the *Debtors' Motion for Entry of an Order, Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, Approving the Settlement Between the Debtors, Aurobindo Pharma USA Inc., and Natrol, LLC* (the "Settlement Motion") on May 11, 2015; and no objections having been filed to the Settlement

Motion; and after due deliberation and sufficient cause appearing therefor; the Bankruptcy Court hereby finds and determines that:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Bankruptcy Rules.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a))</u>.  The Bankruptcy Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  Approval of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Bankruptcy Court has jurisdiction to enter a final order with respect thereto.  Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtors are eligible debtors under section 109 of the Bankruptcy Code.  The Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.

C.    <u>Findings Regarding the Debtors</u>.    The Debtors have been duly incorporated or formed under the laws of jurisdictions in which they are organized.  Each is in good standing in the jurisdiction in which it has been incorporated and is registered and/or authorized to do business in the jurisdictions in which such authorization is necessary for the implementation, effectuation, and consummation of the Plan.  As debtors-in-possession, the management of the Debtors, including but not limited to its board of directors and officers, are and were duly authorized and empowered to take any and all such actions contemplated by and

01:17062257.11

giving rise to the Plan. Further, due to the actual or potential conflicts caused by the Plethico Parties entering into the Natrol/Plethico Settlement Agreement, the Debtors' board of directors took immediate action to establish the Special Committee. The sole member of the Special Committee is the Debtors' Independent Director. The Special Committee has the sole authority to prosecute the Plan. Each action, agreement, and transaction contemplated by the Plan and this Confirmation Order, including, but not limited to, the New Natrol Settlement Agreement, and all related actions, agreements, and transactions necessary to implement, effectuate, and confirm the Plan are authorized and lawful. The Debtors, acting by and through its directors, officers, or managers, is duly authorized and empowered to take any and all such actions as any of these may determine are necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order, including, but not limited to, the New Natrol Settlement Agreement. The Debtors, pursuant to the Special Committee, have been duly authorized, or are empowered to duly authorize, each of the acts, documents, agreements, and transactions contemplated in the Plan and this Confirmation Order to implement, effect, and consummate the Plan, including, but not limited to, the New Natrol Settlement Agreement.

D.     Judicial Notice. The Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of these Chapter 11 Cases.

E.     Burden of Proof. The Debtors have the burden of proving the elements of sections 1125 and 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

The Debtors have met their burden with respect to each Debtor and each element of sections 1125 and 1129 of the Bankruptcy Code.

F.  Chapter 11 Petitions.  On the Petition Date, each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. In accordance with the Bankruptcy Court's order, dated June 19, 2014 [Docket No. 66], the Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

G.  Statutory Committee of Unsecured Creditors.  On June 19, 2014, the United States Trustee appointed a statutory committee of unsecured creditors in the Chapter 11 Cases (the "Creditors' Committee").  No trustee or examiner has been appointed in these Chapter 11 Cases.

H.  Adequacy of Disclosure Statement.  Pursuant to the Disclosure Statement Order, the Bankruptcy Court approved the Disclosure Statement and found, among other things, that the Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code.

I.  Transmittal of Plan Materials.  In satisfaction of sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rule 2002(b), on or about April 3, 2014, the Debtors, through Epiq, mailed the Confirmation Hearing Notice and Notice of Non-Voting Status to all known Holders (as of the Record Date) of Claims in the Unimpaired Classes—Class 1 (Non-Priority Tax Claims) and Class 2 (General Unsecured Claims)—and to Holders of Equity Interests. Further, on April 7, 2014, the Debtors published the Publication Notice in the national edition of *USA Today*. The Confirmation Hearing Notice, Notice of Non-Voting Status, and the

Publication Notice notified parties and Holders of Claims and Equity Interests of the deadline and procedures for filing objections to the Plan and that May 8, 2015, at 9:30 a.m. was the date and time of the Confirmation Hearing. The Confirmation Hearing Notice, Notice of Non-Voting Status, and the Publication Notice put parties in interest on notice of the following: (a) that all Holders (as of the Record Date) of Claims in the Unimpaired Classes—Class 1 (Non-Priority Tax Claims) and Class 2 (General Unsecured Claims)—are Unimpaired under the Plan, and, pursuant to section 1126(f) of the Bankruptcy Code, are therefore presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and that all Holders of Equity Interests are held to be "insiders" under section 101 of the Bankruptcy Code and, therefore, pursuant to section 1129(a) of the Bankruptcy Code, ineligible to vote on the Plan; (b) the proposed classification of their Claims or Equity Interests and the estimated recovery for each Class; and (c) that the Plan contained certain injunction, exculpation, and release provisions.

J.    No Solicitation Required; No Requirement for Resolicitation. Because no Classes of Claims or Equity Interests were eligible to vote on the Plan, the solicitation of votes for acceptance or rejection of the Plan was not required, as set forth in section 1126(f) of the Bankruptcy Code. The Debtors' service of the Confirmation Hearing Notice and the Notice of Non-Voting Status on all parties in interest, and the publication of the Publication Notice, therefore satisfied sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws and regulations. Accordingly, the Bankruptcy Court finds there was no need to solicit any votes.

K.    Adequacy of Notice. Notice of the Confirmation Hearing was given in compliance with the Bankruptcy Rules and the materials served in conjunction therewith and the publication of the Publication Notice were good and sufficient notice in accordance with

01:17062257.11

Bankruptcy Rules 2002(b) and 3020(b)(2). *See* Service Affidavit and Publication Verification. All parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Disclosure Statement Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law. No other or further notice or re-solicitation is required. Under the circumstances, the Plan Supplements, and all amendments, modifications, and supplements thereto, were transmitted and served in compliance with the Bankruptcy Rules. All parties in interest had the opportunity to appear and be heard at the Confirmation Hearing and no other or further notice is required.

L.      Bar Date. On August 21, 2014, the Bankruptcy Court entered the Bar Date Order that established October 27, 2014, as the Claims Bar Date and December 8, 2014, as the Government Claims Bar Date.

M.      Impaired Classes Voting to Accept the Plan. As provided in Article III of the Plan, only Class 3(Equity Interests) is Impaired under the Plan. Class 3 (Equity Interests) comprises "insiders" under section 101 of the Bankruptcy Code and therefore, Holders of Equity Interests are (i) ineligible to vote on the Plan pursuant to section 1126(f) of the Bankruptcy Code and (ii) deemed to accept the Plan.

N.      Classes Deemed To Accept the Plan. Class 1 (Non-Priority Tax Claims) and Class 2 (General Unsecured Claims) are unimpaired and are deemed to accept the Plan, pursuant to section 1126(f) of the Bankruptcy Code. Holders of Equity Interest in Class 3 (Equity Interests) are held to be "insiders" under section 101 of the Bankruptcy Code and therefore, ineligible to vote on the Plan pursuant to section 1129(a) of the Bankruptcy Code and deemed to accept the Plan.

01:17062257.11

O.    Classes Deemed to Reject the Plan. All Classes are receiving or retaining distributions or property under the Plan and, accordingly, there are no Classes deemed to have rejected the Plan.

P.    Plan Supplements. On April 21st, April 28th, May 5th of 2015, the Debtors filed the Plan Supplements [Docket Nos. 1097, 1112, and 1138], which supplements include the following documents: (i) the Committee Administration Guidelines, (ii) an explanation of the Officers and Directors of the Reorganized Debtor/composition of Wind-Down Committee, (iii) updated explanations of the Reserves, (iv) identification and explanation of the compensation of the GUC Representative, (v) the Wind-Down Budget, and (vi) the New Natrol Settlement Agreement. All documents contained in the Plan Supplements comply with the terms of the Plan, and the filing, notice, and service of such documents were proper under the circumstances and in accordance with the Disclosure Statement Order, and no other or further notice is or shall be required.

Q.    Preservation of Causes of Action. Pursuant to the Plan, the Debtors have provided due and sufficient notice that the Plan preserves all Causes of Action, except the NPI Litigation and the Disputed Liabilities (subject to the terms of the New Natrol Settlement Agreement) as set forth in the Plan, the Plan Supplements, and any settlement agreements approved by the Bankruptcy Court or this Confirmation Order. Notwithstanding the foregoing, nothing contained herein is intended to be inconsistent with the Settlement Agreement, the Cerberus Release, the Purchase Agreement, the Sale Order, the Side Letter, or the New Natrol Settlement Agreement, and the releases contained in those documents shall not be modified, altered, or amended by the Plan.

01:17062257.11

R.    Rule 9019 Settlement. As set forth in the Settlement Motion, and except as otherwise provided in the Plan and this Confirmation Order, pursuant to Bankruptcy Rule 9019, and in consideration for the classification, Distribution, and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including the Complaint, the TRO Motion, the Natrol Administrative Claim, and all claims arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, by or against any Released Party, or holders of Claims, arising out of, relating to, or in connection with the business or affairs of or transactions with the Debtors, as well as the compromises and arrangements set forth in the New Natrol Settlement Agreement. The entry of this Order constitutes the Bankruptcy Court's approval of each of the foregoing compromises and settlements, and all other compromises and settlements provided for in the Plan, and this Bankruptcy Court's findings constitute its determination that such compromises and settlements are in the best interests of the Debtors, their Estates, their Creditors, and other parties in interest, and are fair, equitable, and within the range of reasonableness. The provisions of the Plan, including its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable. Such settlements (i) will save the Debtors and their Estates the costs and expenses of prosecuting various disputes, the outcome of which is likely to consume substantial resources of the Debtors' Estates and require substantial time to adjudicate, and (ii) has facilitated the creation and implementation of the Plan and benefits the Debtors' Estates, Creditors, Equity Holders, and other parties in interest. Accordingly, such settlements are fair and reasonable. The Declarations, including the Sanifar Declaration, the Confirmation Brief, and the record of the Confirmation Hearing and the Chapter 11 Cases are sufficient to support the

01:17062257.11

settlements and compromises set forth in the Plan; provided further that for the avoidance of doubt nothing contained herein shall modify any rights that the Aurobindo Parties have against or in connection with the NPI Litigation and the Disputed Liabilities.

      S.    Exculpation and Injunctions.  Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the settlements, compromises, exculpations, and injunctions set forth in Article IX of the Plan and herein, and implemented by this Confirmation Order, are fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, the Creditors, and the Equity Holders.  Such compromises and settlements are made in exchange for adequate consideration and are in the best interests of the Holders of Claims, Holders of Equity Interests, and other parties in interest; are fair, necessary, equitable, and reasonable; and are integral elements of the resolution of the Chapter 11 Cases in accordance with the Plan.  The exculpation (i) is within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (ii) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) is an integral element of the Plan; (iv) confers material benefit on, and is in the best interests of, the Debtors, their estates, and their Creditors and Equity Holders; (v) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Cases with respect to the Debtors; (vi) is within the reasonable range of litigation outcomes; and (vii) is consistent with sections 105, 1123, 1129, and other applicable provisions of the Bankruptcy Code and with applicable law.  The Declarations, including the Sanifar Declaration, the Confirmation Brief, and the record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the releases, exculpations, and injunctions provided for in Article IX of the Plan and herein.

T.      Plan's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).  The Plan complies with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1122 and 1123, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

i.      *Proper Classification (11 U.S.C. §§ 1122 & 1123(a)(1))*.  In addition to Administrative Expense Claims, Fee Claims, Claims for Directors' Fees, and Priority Tax Claims, which are not and do not need to be classified, the Plan designates separate Classes of Claims and Equity Interests for and against the Debtor.  The Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Equity Interests or the holders of such Claims and Equity Interests have consented to such classification.    Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

ii.     *Specify Unimpaired Classes (11 U.S.C. § 1123(a)(2))*.  Article III of the Plan specifies that Class 1 (Non-Priority Tax Claims) and Class 2 (General Unsecured Claims) are unimpaired in that the legal, equitable, or contractual rights of Holders of Claims in these Classes are not altered under the Plan, which satisfies section 1123(a)(2) of the Bankruptcy Code.

iii.    *Specify Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))*.  Article III of the plan provides that Holders of Equity Interest in Class 3 (Equity Interests) are impaired under the Plan and clearly specifies that the treatment of the Equity Interests in Class 3, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

iv.     *No Discrimination (11 U.S.C. § 1123(a)(4))*.  Article IV of the Plan provides for the same treatment by the Debtors for each Claim or Equity Interest in each respective Class unless the Holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest, which satisfies section 1123(a)(4) of the Bankruptcy Code.

v.      *Implementation of the Plan (11 U.S.C. § 1123(a)(5))*.  Article V of the Plan contains numerous provisions to adequately facilitate implementation of the Plan, including, without limitation:  the deemed    substantive    consolidation    of    the    Debtors,    the

01:17062257.11

12

implementation of the New Natrol Settlement Agreement, the preservation of Causes of Action belonging to the Estates, and the approval of Plan Documents and Plan Supplements. *See* Plan, Article V. Further, Article VI provides provisions dealing with corporate governance and management of the Reorganized Debtors as well as the authority to amend the Debtors certificates of incorporation as necessary while Article VII deals with distributions under the Plan. *See* Plan, Article VI and VII. All of these means are sufficient to implement the Debtors' Plan, and the Plan provides adequate and proper means for its implementation, which satisfies section 1123(a)(5) of the Bankruptcy Code.

vi.    *Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))*. Section 1123(a)(6) of the Bankruptcy Code does not apply to the Plan because the Debtors do not propose to issue any non-voting equity securities under the Plan.

vii.   *Selection of Officers, Directors, and the Trustee (11 U.S.C. § 1123(a)(7))*. Pursuant to Section 6.4 of the Plan, the Committee Administration Guidelines, and the explanation of the Officers and Directors of the Reorganized Debtor/composition of the Wind-Down Committee, Bradley E. Scher and Jeffrey C. Perea will be appointed the Independent Director and Independent Member, respectively. As required by section 1123(a)(7) of the Bankruptcy Code, the Debtors have selected Mr. Scher and Mr. Perea in a manner consistent with the interests of creditors and equity security holders and with public policy.

viii.  *Impairment/Unimpairment of Classes of Claims and Equity Interests (11 U.S.C. § 1123(b)(1))*. As permitted by section 1123(b)(1) of the Bankruptcy Code, pursuant to Article IV of the Plan, Claims in Class 1 (Non-Tax Priority Claims) and Class 2 (General Unsecured Claims) are unimpaired while Equity Interests in Class 3 (Equity Interests) are impaired.

ix.    *Assumption and Rejection (11 U.S.C. § 1123(b)(2))*. As permitted by section 1123(b)(2) of the Bankruptcy Code, Section 12.13 of the Plan provides that, to the extent the Debtors are parties to any Contracts or Leases, all such Contracts and Leases shall be deemed to be rejected as of the Confirmation Date (other than the New Natrol Settlement Agreement, which is not a prepetition contract, and for the avoidance of doubt, not rejected and is instead incorporated into and made part of the Plan).

x.     *Settlement/Retention of Claim or Interests (11 U.S.C. § 1123(b)(3))*. As permitted by section 1123(b)(3) of the Bankruptcy Code, Section 5.3 of the Plan provides that, except

with respect to the NPI Litigation and the Disputed Liabilities, which (subject to the terms of the New Natrol Settlement Agreement) shall be transferred to Natrol under the New Natrol Settlement Agreement, nothing contained in the Plan or herein shall be deemed a waiver or relinquishment of Causes of Action, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date, in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law. The Debtors, the Reorganized Debtors, and, from and after the Effective Date, the Wind-Down Committee shall have, retain, reserve, and be entitled to assert all such Causes of Action, or other legal or equitable defenses, as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and/or equitable rights respecting any Claim left Unimpaired may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases had not been commenced. Notwithstanding the foregoing, nothing contained in the Plan is intended to be inconsistent with the Settlement Agreement, the Cerberus Release, the Purchase Agreement, the Sale Order, the Side Letter, or the New Natrol Settlement Agreement, and the releases contained in those documents shall not be modified, altered, or amended by the Plan

xi. _Additional Plan Provisions (11 U.S.C. § 1123(b)(6))._ The injunctions, releases, and stays issued pursuant to Article IX of the Plan preserve and enforce the releases granted by the Plan and are narrowly tailored to achieve that purpose. Such provisions, and all other provisions of the Plan, are consistent with section 1123(b)(6) of the Bankruptcy Code, and not inconsistent with the applicable provisions of the Bankruptcy Code.

U. Compliance with Bankruptcy Rule 3016. The Plan is dated and identifies the entity submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the Bankruptcy Court satisfies Bankruptcy Rule 3016(b). The Plan describes in specific and conspicuous language all acts to be enjoined under the Plan and identifies all entities that are subject to the injunctions set forth in the Plan in accordance with Bankruptcy Rule 3016(c).

V. Compliance with Bankruptcy Rule 3018. As set forth more fully in Paragraphs I, J, and K above, no solicitation of votes to accept or reject the Plan was required as no parties were entitled to vote on the Plan. The Confirmation Hearing Notice was transmitted

to all creditors and known parties in interest (*see* Service Affidavit), the Notice of Non-Voting Status was transmitted to all Holders of Claims and Equity Interests (*see* Service Affidavit), and the Publication Notice was published in the national edition of *USA Today* (*see* Publication Verification), sufficient time was prescribed for the parties in interest to object to the adequacy of the confirmation of the Plan, and the materials related to the Plan otherwise comply with section 1126 of the Bankruptcy Code, thereby satisfying the requirements of Bankruptcy Rule 3018.

W.    Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order in transmitting the Confirmation Hearing Notice and the Notice of Non-Voting Status and publishing the Publication Notice, and have otherwise complied with the provisions of Title 11, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.

X.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Plan is designed to allow the Debtors to liquidate their remaining assets in a manner that will maximize recoveries to Creditors and Equity Holders.  Moreover, the Plan itself, the process leading to its formation, and the support for the Plan received from various parties in interest provides independent evidence of the Debtors' good faith.  The Debtors, their predecessors, successors, and assigns (whether by operation of law or otherwise) and its current and former equity holders, officers, directors, employees, managers, shareholders, financial advisors, attorneys, accountants, investment bankers, consultants, agents, professionals, and other representatives have acted in "good faith"

within the meaning of section 1125(e) of the Bankruptcy Code, thus satisfying the "good faith" requirement of section 1129(a)(3). Further, the Plan is the product of extensive, arm's length negotiations among the Debtors, the Creditors' Committee, the Holders of Equity Interests, the Aurobindo Parties, and each of their respective representatives, and reflects, where applicable, the results of these arm's length negotiations and embodies the best interests of all of the constituencies of the Debtors' Estates. In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the formulation of the Plan.

        Y.    <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. Any payment made or to be made by the Debtors or by any person acquiring property under the Plan, for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been disclosed to the Bankruptcy Court. Any such payment made on a final basis before confirmation of the Plan is reasonable and any such payment to be fixed or approved on a final basis after confirmation of the Plan is subject to Court approval, as reasonable. The Plan therefore satisfies section 1129(a)(4) of the Bankruptcy Code.

        Z.    <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors disclosed the identity of the proposed Independent Director and Independent Member in one or more Plan Supplements. The appointment of the Independent Director and the Independent Member is consistent with the interests of the Holders of Claims and Equity Interests and with public policy. The provisions are consistent with the requirements of section 1129(a)(5) and are in the best interests of

Creditors and Equity Holders and, therefore, the Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

AA.    No Rate Changes (11 U.S.C. § 1129(a)(6)).    The Plan does not provide for the change of any rates subject to the oversight of a governmental regulatory commission.    Thus, section 1129(a)(6) of the Bankruptcy Code is inapplicable.

BB.    Best Interests Test (11 U.S.C. § 1129(a)(7)).    The liquidation analysis provided in the Disclosure Statement and other evidence proffered or adduced at the Confirmation Hearing, as well as the arguments and evidence set forth in the Declarations, including the Sanifar Declaration, and the Confirmation Brief, (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Equity Holders, who are impaired under the Plan, will receive under the Plan on account of such interest property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date. The liquidation analysis provided in the Disclosure Statement, as well as the updated Explanation of Reserves, including the methodologies used and estimations and assumptions made therein, and the evidence related thereto that was proffered at the Confirmation Hearing, (a) is persuasive and credible as of the dates such evidence was prepared, presented, or proffered; (b) either has not been controverted by other persuasive evidence or has not been challenged; (c) is based upon reasonable and sound assumptions; and (d) provides a reasonable estimate of the liquidation value of the Debtors' estates upon a conversion to a chapter 7 proceeding. Recoveries pursuant to the Plan are equal to or in excess of those that would be available if the Debtors were liquidated pursuant to chapter 7 and, therefore, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

01:17062257.11

CC.    Acceptance or Rejection by Certain Classes (11 U.S.C. § 1129(a)(8)).  As provided in Article III of the Plan, no Classes of Claims are Impaired under the Plan.  Class 3 (Equity Interests), the only impaired class, comprises "insiders" under section 101 of the Bankruptcy Code and, therefore, Holders of Equity Interests are (i) ineligible to vote on the Plan pursuant to section 1129(a) of the Bankruptcy Code and (ii) deemed to accept the Plan.  Therefore, section 1129(a)(8) of the Bankruptcy Code is satisfied and a cram down under section 1129(b) is not required.

DD.    Treatment of Administrative, Priority, and Tax Claims (11 U.S.C. § 1129(a)(9)).  The Plan provides for treatment of Allowed Claims entitled to priority pursuant to section 507(a)(2)-(8) of the Bankruptcy Code in the manner required by section 1129(a)(9) of the Bankruptcy Code.

EE.    Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).  Section 1129(a)(10) of the Bankruptcy Code is inapplicable because the Impaired Class consists of insiders and, therefore, is not entitled to vote.

FF.    Feasibility (11 U.S.C. § 1129(a)(11)).  The Plan is feasible as the Debtors have demonstrated, through the financial information provided in their monthly operating reports and evidence proffered or adduced at the Disclosure Statement Hearing and Confirmation Hearing as well as through the Declarations, including the Sanifar Declaration, and the Confirmation Brief, that there is a high probability the Debtors possess sufficient funds to meet their expectations under the Plan—to satisfy in full Administrative Expense Claims, Fee Claims, Claims for Directors' Fees, Priority Tax Claims, Non-Priority Tax Claims, and General Unsecured Claims and to make Distributions to Equity Holders in accordance with the New

Natrol Settlement Agreement. The Plan therefore complies with section 1129(a)(11) of the Bankruptcy Code.

GG.    Payment of Fees (11 U.S.C. § 1129(a)(12)). Section 12.4 of the Plan provides that all fees payable pursuant to Section 1930 of Title 28 of the United States Code, shall be paid by the Debtors and/or the Reorganized Debtors. Therefore, the Plan meets the requirements of section 1129(a)(12) of the Bankruptcy Code.

HH.    Retiree Benefits (11 U.S.C. § 1129(a)(13)). The Debtors have no obligation to pay for retiree benefits and, therefore, section 1129(a)(13) is not applicable to the Plan.

II.    Payment of Domestic Support Obligations (11 U.S.C. § 1129(a)(14)). The Debtors are not required by any judicial or administrative order, or by statute, to pay any domestic support obligation and section 1129(a)(14) is, therefore, inapplicable to the Plan.

JJ.    Certain Payments by Individual Debtors (11 U.S.C. § 1129(a)(15)). The Debtors are not an individual and, therefore, section 1129(a)(15) is inapplicable to the Plan.

KK.    Transfers of Property of a Debtor that Is Not a Moneyed Interest (11 U.S.C. § 1129(a)(16)). The Debtors are a for-profit corporation and section 1129(a)(16), by its terms, applies only to corporations and trusts that are not "moneyed, business, or commercial." Section 1129(a)(16) is therefore inapplicable to the Plan.

LL.    No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)). Because all Classes of Claims and Equity Interests are deemed to have accepted the Plan, "cramdown" of the Plan as set forth in section 1129(b)(1) of the Bankruptcy Code is not required.

01:17062257.11

MM.    Only One Plan (11 U.S.C. § 1129(c)).  The Plan is the only plan filed in each of the Chapter 11 Cases.  Accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

NN.    Principal Purpose (11 U.S.C. § 1129(d)).  The avoidance of Section 5 of the Securities Act of 1933 is not the principal purpose of the Plan, nor is the avoidance of taxes or any provision of applicable tax law a principal purpose of the plan.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

OO.    Good Faith Solicitation (11 U.S.C. § 1125(e)).  Based on the record in the Chapter 11 Cases, the Debtors and their directors, officers, employees, advisors, and attorneys have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and Bankruptcy Rules in compliance with all of their respective activities related to the Disclosure Statement and the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code and, accordingly, such parties are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 9.7 of the Plan.  Based upon the Bankruptcy Court's review of the amendments and modifications embodied in the Plan, no solicitation is necessary.

PP.    Modifications of the Plan (11 U.S.C. § 1127).  Modifications made to the Plan since it was initially filed have complied in all respects with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

QQ.    Satisfaction of Confirmation Requirements.  The Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

RR.    Implementation.  All documents necessary to implement the Plan, including each of the Plan Documents contained in the Plan Supplements, including, but not

limited to, the New Natrol Settlement Agreement, and all other relevant and necessary documents, have been negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be in conflict with any federal or state law.

SS.    Retention of Jurisdiction.    Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court, except as otherwise provided in the Plan or herein, shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law.

## ORDER

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1.    Confirmation of the Plan.    The Plan (as deemed amended by this Confirmation Order) is approved and confirmed under section 1129 of the Bankruptcy Code. The terms of each of the Plan Documents, including those set forth in the Plan Supplements, and any other exhibits or annexations thereto, including the New Natrol Settlement Agreement (all subject to further modifications by the Debtors, which modifications shall not be inconsistent with the Plan, this Confirmation Order, or the New Natrol Settlement Agreement), and any documents necessary in the judgment of the Wind-Down Committee to implement, effectuate, and finalize the Plan (which documents shall be consistent with the Plan), whether or not specifically contemplated in the Plan and the Plan Documents, are approved, are an integral part of the Plan, and are incorporated by reference into the Plan and this Confirmation Order; provided, however, that, for the avoidance of doubt, nothing contained in this Confirmation Order or in the Plan shall constitute approval, or a request by the Debtors for approval, of the Plethico/Natrol Settlement Agreement.

01:17062257.11

21

2.    <u>Compromise of Controversies</u>.  For the reasons stated herein, the Plan constitutes a good faith, arm's length compromise and settlement of (i) all Claims or controversies relating to the rights that a Holder of a Claim or Equity Interest, or any assignees thereof, may have with respect to any Allowed Claim or Equity Interest or any Distribution to be made or obligation to be incurred pursuant to the Plan and (ii) the Complaint, the TRO Motion, the Natrol Administrative Claim, and the entry of this Order constitutes approval of all such compromises and settlements.  For the avoidance of doubt, the Debtors are required to make all required withholding payments and apply with all applicable tax laws with respect to Distributions.

3.    <u>Objections Withdrawn or Overruled</u>.  The Objections, and all other objections and responses to the Plan, if any, not heretofore withdrawn or resolved, or otherwise resolved at the Confirmation Hearing as announced on the record, are overruled in their entirety or deemed withdrawn with prejudice.

4.    <u>Substantive Consolidation for Plan Purposes Only</u>.  Pursuant to Section 5.1 of the Plan, entry of this Order shall constitute the approval, pursuant to sections 105(a), 541, 1123, and 1129 of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Debtors for all purposes, including confirmation, and Distribution.  On and after the Effective Date, (i) all Assets and liabilities of the Debtors shall be treated as though they were pooled, (ii) no Distributions shall be made under the Plan on account of any Claim held by a Debtor against any other Debtor (to the extent any remain following the Closing Date), (iii) no Distributions shall be made under the Plan on account of any Equity Interest held by a Debtor in any other Debtor, and (iv) all guarantees of any Debtors of the obligations of any other Debtor shall be eliminated so that any Claim against any Debtor and any guarantee thereof executed by

any other Debtor, and any joint or several liability of any of the Debtors, shall be one obligation of the substantively consolidated Debtors. The substantive consolidation shall not affect, without limitation, (i) defenses to any Cause of Action or requirements for any third party to establish mutuality in order to assert a right of set-off or (ii) Distributions out of any insurance policies or proceeds of such policies. Notwithstanding the substantive consolidation provided for herein, quarterly fees U.S. Trustee Fees payable pursuant to 28 U.S.C. § 1930 shall continue to accrue for each and every Debtor until a particular Debtors' case is closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

      5.    <u>Lifting of the TRO Orders</u>: Upon the Effective Date of the Plan, pursuant to the terms of the New Natrol Settlement Agreement, the TRO Orders shall be lifted and the Debtors shall be permitted to, among other things, make payments on account of Allowed Claims.

      6.    <u>Claims of the Internal Revenue Service</u>. Nothing set forth herein or in the Plan or this Confirmation Order shall (i) be construed as a determination of the Debtors' federal tax liability for the tax year 2014, (ii) prejudice the rights of the Internal Revenue Service with respect to the Debtors' 2014 tax return, or (iii) be a determination as to whether all or a part of any Claim the Internal Revenue Service may have against the Debtors' Estates with respect to the Debtors' 2014 tax liability constitutes an Administrative Expense Claim. Further, with respect to the Natrol Letter of Credit provided for under the New Natrol Settlement Agreement, the Natrol Letter of Credit shall be in a form reasonably satisfactory to the Independent Director, the Internal Revenue Service, and the Aurobindo Parties or as approved by Order of the Bankruptcy Court.

7.    <u>Rule 9019 Settlement</u>.    Pursuant to Bankruptcy Rule 9019, the Plan incorporates a proposed compromise and settlement of all issues, causes of action, the Natrol Administrative Claim, the Complaint, TRO Motion, and any and all alleged claims between and against the Aurobindo Parties and the Debtors (including the Natrol Administrative Claim), and terms contained in the New Natrol Settlement Agreement, including the releases set forth therein.    As part of the settlement and as of the Effective Date, the Aurobindo Parties shall subordinate the Natrol Administrative Claim to the recovery of Allowed Claims as further described in the New Natrol Settlement Agreement.    As part of the consideration under the New Natrol Settlement Agreement, the Aurobindo Parties supported, and did not contest or object in any manner, to approval of the Plan.    Pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, the New Natrol Settlement Agreement is approved as are the releases set forth therein.    The Debtors are hereby authorized to execute and deliver such other instruments or documents, and take such other action as may be necessary or appropriate, to implement and effectuate the relief granted by this Confirmation Order, including, but not limited to, with respect to the New Natrol Settlement Agreement and the other settlements and compromises with the Debtors set forth in the Plan.    Further, upon the Effective Date, the Plan shall constitute a good faith compromise and settlement of all claims and disputes dealt with therein, including, but not limited to, the New Natrol Settlement Agreement.    For the avoidance of doubt, the payments and transfers being made pursuant to the Plan under the New Natrol Settlement Agreement are in settlement of the Claims of Natrol against the Debtors that arose pursuant to the Purchase Agreement.    For the further avoidance of doubt, under the New Natrol Settlement Agreement, the Debtors or Reorganized Debtors are not transferring any refund (the "<u>Tax Refund</u>") received by or on behalf of the Debtors or Reorganized Debtors on account of the

Debtors' Tax Payment (as defined in the New Natrol Settlement Agreement), but are transferring the proceeds from any such Tax Refund.

8.    <u>Plan Classification Controlling</u>.  The classifications of Claims and Equity Interests for purposes of distributions under the Plan shall be governed solely by the terms of the Plan.

9.    <u>Record Closed</u>.  The record of the Confirmation Hearing is hereby closed.

10.    <u>Notice</u>.    The Debtors provided good and sufficient notice of the Confirmation Hearing and the deadline for filing and serving objections to the Plan, as established by the Service Affidavit and the Publication Verification, and as set forth in Paragraphs I and K above, as well as good and sufficient notice of the New Natrol Settlement Agreement, which notice is hereby approved.

11.    <u>Authorization and Direction to Act</u>.  In accordance with section 1142 of the Bankruptcy Code, Section 213 of the Delaware Limited Liability Company Act, and any other applicable law of any jurisdiction, the Debtors, the Special Committee, the Reorganized Debtors, and each other appropriate party are hereby authorized and directed to take all steps and perform such acts as may be necessary, desirable, or appropriate, to comply with, implement, and effectuate the Plan, whether or not such action is specifically contemplated by the Plan, the Plan Documents, or this Confirmation Order.

12.    No further approval by the Bankruptcy Court shall be required for any action, transaction, or agreement that the management of the Debtors determines is necessary or appropriate to implement and effectuate or consummate the Plan, whether or not such action, transaction, or agreement is specifically contemplated in the Plan or this Confirmation Order. This Confirmation Order shall further constitute all approvals, consents, and directions required

for the Wind-Down Committee to act consistent with the Plan by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any other acts and transactions referred to in or contemplated by the Plan and the Plan Supplements, including the New Natrol Settlement Agreement.

13.     Unless specifically directed by this Confirmation Order or the Plan, no further action of the Debtors or the Reorganized Debtors shall be necessary to perform any act to comply with, implement, and effectuate the Plan. The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of the Debtors or the Reorganized Debtors to take any and all actions necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan, the Plan Documents, or this Confirmation Order, including the New Natrol Settlement Agreement.

14.     Corporate Action.  Prior to, on, or after the Effective Date, as appropriate, all matters expressly provided for under the Plan that would otherwise require approval of the shareholders, directors, or managers of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as appropriate) pursuant to the applicable general corporate or other applicable law of the jurisdictions in which the Debtors are incorporated without any requirement of further action by such shareholders, directors, or managers of the Debtors.

15.     Binding Effect.  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim against, or Equity

Interest in, the Debtors, and such Holder's respective successors and assigns. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan, and all documents related to the Plan shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

16.    Cancellation of Existing Securities and Agreements.    On the Effective Date, except for purposes of evidencing a right to Distribution pursuant to the Plan, any document, agreement, or instrument evidencing any Claim or Equity Interests in Leaf123 Products, Leaf123 Direct, Leaf123 Acquisition Corp., Leaf123 Nutrition, Leaf123 Research Institute, and Natrol UK shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the Debtors under such documents, agreements, or instruments evidencing such Claims and Equity Interests, as the case may be, shall be rendered legally ineffective.

17.    Committee Administration Guidelines.    Upon the occurrence of the Effective Date, the Wind-Down Committee shall be formed and shall have authority to act. The Wind-Down Committee shall operate in accordance with the Plan and the Committee Administration Guidelines in the form attached to the Plan Supplement filed at Docket No. 1112 as Exhibit A-1.

18.    Preservation and Retention of Causes of Action.    Except as otherwise provided expressly in the Plan, in this Confirmation Order, or in any document, instrument, settlement agreement approved by the Bankruptcy Court, release, or other agreement entered into in connection with the Plan, nothing contained in the Plan or in this Confirmation Order shall be deemed a waiver or relinquishment of Causes of Action (except with respect to the NPI Litigation and the Disputed Liabilities, which, subject to the terms of the New Natrol Settlement

01:17062257.11

Agreement, shall be transferred to Natrol under the New Natrol Settlement Agreement), or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law. The Debtors, the Reorganized Debtors, and, from and after the Effective Date, the Wind-Down Committee shall have, retain, reserve, and be entitled to assert all such Causes of Action, or other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and/or equitable rights respecting any Claim left unimpaired may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases had not been commenced. The failure to specifically list in the Disclosure Statement or in the Plan any potential or existing Causes of Action generally or specifically does not limit the rights of the Debtors or the Reorganized Debtors to pursue such action. Notwithstanding the foregoing, nothing contained in the Plan is intended to be inconsistent with the Settlement Agreement, the Cerberus Release, the Purchase Agreement, the Sale Order, the Side Letter, or the New Natrol Settlement Agreement, and the releases contained in those documents shall not be modified, altered, or amended by the Plan; provided further that for the avoidance of doubt nothing herein shall modify any rights that the Aurobindo Parties have against or in connection with the NPI Litigation and the Disputed Liabilities.

19.    Disputed Liabilities. Pursuant to the terms of the New Natrol Settlement Agreement, as of the Effective Date, Natrol shall assume the Disputed Liabilities, shall waive any and all rights under the Claims Administration Protocol, and shall be forever barred from arguing or asserting that any additional liabilities of the Debtors, whether or not currently known, were not assumed by Natrol pursuant to the Sale Order. On the Effective Date of the Plan, all of the Debtors' defenses, counterclaims, set-offs, and other rights of the Debtors' Estates with

respect to such Disputed Liabilities shall be transferred to Natrol and Natrol shall have standing to object and prosecute such defenses, counterclaims, set-offs, and other rights.

20.    NPI Litigation and NPI Claim.  Pursuant to the terms of the New Natrol Settlement Agreement, within five (5) Business Days of the Effective Date, the Debtors shall transfer all rights, title, and interest in the NPI Litigation to Natrol, including, without limitation, all client files, records, and privileges related to the NPI Litigation, and Natrol shall receive the benefit of any judgment, claim, or counterclaim against Nature's Products, Inc. in connection with the NPI Litigation, and shall assume full and sole responsibility for (1) the costs of prosecuting the NPI Litigation, including any appeals, whether currently pending or not; (2) defense of any and all counterclaims, cross-claims, and appeals; (3) payment of any judgments associated with the NPI Litigation; and (4) the proof of claim filed by Nature's Products, Inc., all at no costs to the Debtors.  Upon the transfer of the NPI Litigation to Natrol, (i) the Debtors shall have no obligations with respect to the NPI Litigation and (ii) any claims filed by Nature's Products, Inc. against the Debtors shall be automatically withdrawn pursuant to this Confirmation Order with prejudice and Nature's Products, Inc. shall be enjoined and foreclosed from filing any further claims in the Chapter 11 Cases or pursuing any Claims against the Debtors that arose or could have been brought prior to the Effective Date; provided, however, that the withdrawal of the NPI Claim shall not affect any defenses or affirmative claims that Nature's Products, Inc. may have in connection with the NPI Litigation.  To the extent that Nature's Products, Inc. pursues the Debtors or Reorganized Debtors with respect to any Claims filed against the Debtors by Nature's Products, Inc. or the NPI Litigation, the Aurobindo Parties shall indemnify the Debtors and Reorganized Debtors in connection with same.  For the avoidance of doubt, (a) on the Effective Date of the Plan, all of the Debtors' defenses,

counterclaims, set-offs, and other rights of the Debtors' Estates with respect to Nature's Products, Inc. or the NPI Litigation shall be transferred to Natrol, and (b) Natrol shall have standing to prosecute such defenses, counterclaims, set-offs, and other rights in non-Bankruptcy Court. Natrol shall have standing to dispute, compromise, settle, or otherwise resolve the NPI Litigation. Once the NPI Litigation is transferred to Natrol, the Bankruptcy Court will no longer have jurisdiction over Nature's Products, Inc. or the NPI Litigation.

21.    <u>Distributions and Claims Reconciliation</u>.  The provisions of Article VII of the Plan governing distributions and the resolution and treatment of disputed Claims and Equity Interests under the Plan, unless modified in this Paragraph 21, are hereby approved in all respect and found to be fair and reasonable.  Except as otherwise provided in the Plan, on and after the Effective Date, the Reorganized Debtors or the Wind-Down Committee shall have responsibility and authority for administering, disputing, objecting to, compromising, and settling, or otherwise resolving and making distributions (if any) with respect to all Claims, including all Administrative Expense Claims, without notice to any other party or approval of, or notice to, the Bankruptcy Court; <u>provided</u>, <u>however</u>, that with respect to the Disputed Liabilities, Natrol shall have responsibility, authority, and standing for administering, disputing, objecting to, compromising, and settling, or otherwise resolving and making distributions (if any) with respect to all Disputed Liabilities, whether or not currently known.

22.    <u>Interest on Distributions to Holders of Allowed General Unsecured Claims</u>.  Holders of Allowed General Unsecured Claims will be paid Interest on their Allowed Claim as set forth in the Plan.

23.    <u>Failure to Timely File Proof of Claim</u>.  Any person or entity (including, without limitation, any individual, partnership, joint venture, corporation, limited liability

company, estate, trust or governmental unit) that was required to file a timely proof of claim in the form and manner specified by the Bar Date Order and failed to do so on or before the General Bar Date or the Governmental Bar Date, as applicable, and failed to file an untimely proof of claim shall not receive or be entitled to receive any payment or distribution of property from the Debtors or its successors or assigns with respect to such claim.  The Debtors and the Reorganized Debtors retain the right to object to any untimely filed proof of claim.

24.     <u>Objections to Claims</u>.  Except as provided in the Plan or this Confirmation Order, any objections to Administrative Expense Claims or Claims shall be Filed and served on or before the later of (i) ninety (90) days after the Confirmation Date and (ii) such later date as may be fixed by the Bankruptcy Court, which later date may be fixed before or after the date specified in clause (i) above.  The Debtors and the Reorganized Debtors shall be entitled to File motions to extend the initial deadline to object to Administrative Expense Claims and Claims on notice to the GUC Representative, and with respect to extension of the deadline to object to Claims, on notice to the Aurobindo Parties, and the Bankruptcy Court may enter an Order approving such motion without further notice or a hearing.  Any objection not filed by such deadline shall be deemed waived.

25.     <u>Rejection of Executory Contracts</u>.  Through Section 12.13 of the Plan and this Confirmation Order, except as otherwise provided herein and in Paragraph 26 of this Confirmation Order, below, in the event that the Debtors are parties to any Contracts or Leases, all such Contracts and Leases shall be deemed to be rejected as of the Confirmation Date, in accordance with sections 365 and 1123 of the Bankruptcy Code, and counterparties to any Contract or Lease that was not assigned to the Buyer that believe they have a Claim out of the rejection of a Contract or Lease under the Plan must File a Claim for damages arising from the

rejection of the Contract or Lease within thirty (30) days of the Confirmation Date. All such Claims not Filed within such timeframe will be forever barred from assertion against the Debtors and their Estates, and the Reorganized Debtors. Notwithstanding the foregoing, the Debtors are a party to the New Natrol Settlement Agreement, which shall not be rejected and instead is incorporated into and made a part of the Plan. Entry of this Confirmation Order shall constitute approval of such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

26.    Certain Insurance Policy Matters.  With the exception of the D & O Policies, all of the Debtors' insurance policies were assigned to the Buyer through the Sale Transaction. Notwithstanding Section 12.13 of the Plan and Paragraph 25 of this Confirmation Order, the Debtors shall maintain the D & O Policies until the date when a Final Decree is entered with respect to all of the Chapter 11 Cases. To the extent that the D & O Policies are executory contracts entered into prior to the Petition Date, the policies shall be deemed assumed effective as of the Confirmation Date by the Reorganized Debtors. Further, to the extent any insurance policies to which the Debtors are a party were entered into post-petition, the Reorganized Debtors shall perform all of the insured's obligations under such policies. Nothing in the Plan or this Confirmation Order, or any provision that purports to be preemptory or supervening, shall in any way operate to, or have the effect of, impairing in any respect the legal, equitable, or contractual rights and defenses, if any, of the insured or insurer with respect to the D & O Policies.

27.    Bar Date for Rejection Claims. Pursuant to the Plan, Claims arising out of the rejection of executory contracts or unexpired leases rejected as of the Confirmation Date pursuant to the Plan must be filed no later than thirty (30) days after the entry of this Confirmation Order effectuating the rejection.

01:17062257.11

28.     Exculpation and Limitation of Liability.   From and after the Effective Date, none of the Debtors, the Reorganized Debtors, the Creditors' Committee, the Wind-Down Committee, GUC Representative, or any of their respective current or former members, partners, officers, directors, employees, advisors, professionals, affiliates, or agents and advisors of any of the foregoing (including any attorneys, financial advisors, investment bankers and other professionals retained by such Persons, but solely in their capacities as such) shall have or incur any liability to any Holder of any Claim or Equity Interest for any act or omission in connection with, related to, or arising out of the Chapter 11 Cases, the negotiation and execution of the Purchase Agreement, the sale of substantially all of the Debtors' assets, the negotiation and execution of the Plan, the Disclosure Statement, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan, and the property to be distributed under the Plan, including all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all prepetition activities leading to the promulgation and confirmation of the Plan except fraud, willful misconduct or gross negligence as determined by a Final Order.  Nothing in Article IX of the Plan shall: (i) be construed as a release of any entity's fraud, gross negligence, or willful misconduct with respect to matters set forth in Article IX of the Plan; (ii) limit the liability of attorneys for the Debtors, the Reorganized Debtors, or the Creditors' Committee, to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility; or (iii) be construed as a release or waiver of the Debtors' or Reorganized Debtors' right or ability to assert or raise certain claims against any party as a defense to a claim or suit brought against them by such party.  For the avoidance of doubt, nothing contained herein or in Section 9.7 of the Plan shall be construed as modifying any rights of any parties under the Purchase Agreement, the New Natrol Settlement Agreement, or any

rights of the Aurobindo Parties against the Plethico Parties, including, but not limited to those arising under the Natrol/Plethico Settlement Agreement.

29.     Injunction Related to Exculpation and Releases.  This Confirmation Order permanently enjoins the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released pursuant to the Plan, including the Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released in Article IX of the Plan.

30.     Termination of Claims and Equity Interests.  Except as otherwise provided in the Plan or this Confirmation Order, all Distributions under the Plan shall be in exchange for, and in complete satisfaction, settlement and release of, all Claims and Equity Interests of any nature whatsoever against the Debtors or their Estates, assets, properties or interest in property.

31.     Injunction.  Except as otherwise expressly provided in the Plan or this Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold liens, Claims, liabilities or encumbrances against or Equity Interests in, any or all of the Debtors or the Estates, along with their respective present or former employees, agents, officers, directors, or principals are permanently enjoined, with respect to any such liens, Claims, liabilities or encumbrances or Equity Interests, as of the Confirmation Date but subject to the occurrence of the Effective Date, from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting the Debtors, the Reorganized Debtors, the Estates, or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in

interest to, any of the foregoing Persons or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any pre-judgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, the Reorganized Debtors, or the Estates or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Reorganized Debtors, or the Estates or any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons, or any property of such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; (v) asserting any right of set-off (except to the extent timely asserted prior to the Confirmation Date), or subrogation of any kind against any obligation due from the Debtors, the Reorganized Debtors, the Estates or any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons, or any property of such transferee or successor; (vi) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, further, that the Releasing Parties are, with respect to Claims or Equity Interests held by such parties, permanently enjoined after the Confirmation Date from taking any actions referred to in clauses (i) through (vi) above against the Released Parties or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the Released Parties or any property of any such transferee or successor; provided, however, that nothing contained herein shall preclude any

Person from exercising its rights, or obtaining benefits, directly and expressly provided to such entity pursuant to and consistent with the terms of the Plan, the Plan Supplements, and the contracts, instruments, releases, agreements, and documents delivered in connection with the Plan or the Sale Transaction; provided further, that nothing contained herein shall be construed to grant the Debtors a discharge unless a party has expressly agreed to such discharge; provided further, that nothing contained herein shall be construed as enjoining VRS Chatsworth, LLC, or any of its successors or assigns, solely with respect to any and all claims arising out of or related to the Guaranty Obligations that may exist between VRS Chatsworth, LLC, or any of its successors or assigns on the one hand, and Plethico Pharmaceuticals Limited, or any of its respective successors or assigns on the other hand, with respect to the Chatsworth Leases, which were assumed by the Buyer through the Sale Transaction.

32.    All Persons releasing claims pursuant to Article IX of the Plan shall be permanently enjoined, from and after the Confirmation Date, from taking any actions referred to in clauses (i) through (vi) of the immediately preceding paragraph against any party with respect to any claim released pursuant to Article IX of the Plan.

33.    For the avoidance of doubt, nothing contained in the Plan or this Confirmation Order shall be construed as modifying any rights of the Aurobindo Parties under the Purchase Agreement or the New Natrol Settlement Agreement, or as against any non-Debtor.

34.    Releases by the Debtors.  Except as otherwise provided in the Plan or herein, as of the Effective Date, the Debtors and Reorganized Debtors, in their individual capacities and as debtors in possession, shall be deemed to forever release and waive all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or

01:17062257.11

36

unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, which are based in whole or in part on any act, omission, transaction, event or other occurrence taking place through and including the Effective Date in any way relating to the Debtors, the Reorganized Debtors, the Chapter 11 Cases, the Plan or this Disclosure Statement, and that could have been asserted by or on behalf of the Debtors, or the Reorganized Debtors, whether directly, indirectly, derivatively or in any representative or any other capacity against the Released Parties in their respective capacities as such, provided, however, that in no event shall anything in Article IX of the Plan be construed as a release of any Person's fraud, willful misconduct or gross negligence, or a release or waiver of the Debtors' or Reorganized Debtors' right or ability to assert or raise certain claims against any Released Party as defense to a claim or suit brought against them or their assets by any Released Party.

35.     Releases by Holders of Claims and Equity Interests.  Except as otherwise provided in the Plan, this Confirmation Order, or the New Natrol Settlement Agreement, on the Effective Date, to the fullest extent permissible under applicable law as determined by the Bankruptcy Court, as such law may be extended or interpreted subsequent to the Effective Date, all Holders of Claims and Equity Interests and the Committee, in consideration for the obligations of the Debtors and the Reorganized Debtors under the Plan, and other contracts, instruments, releases, agreements or documents executed and delivered in connection with the Plan, and each entity (other than the Debtors) that has held, holds or may hold a Claim, as applicable, will be deemed to have consented to the Plan for all purposes and the restructuring embodied in the Plan and will be deemed to forever release, and waive all claims, demands, debts, rights, causes of action or liabilities (other than the right to enforce the obligations of any party under the Plan and the contracts, instruments, releases, agreements and documents

01:17062257.11

delivered under or in connection with the Plan) or the Sale Transaction, including, without limitation, any Claims for any such loss such holder may suffer, have suffered or be alleged to suffer as a result of the Debtors commencing the Chapter 11 Cases or as a result of the Plan being consummated, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence from the beginning of time through and including the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, the Plan or the Disclosure Statement against the Released Parties in their respective capacities as such. Notwithstanding the foregoing, in no event shall anything in this Confirmation Order or Article IX of the Plan be construed as (i) a release of any Person's (other than a Debtor's) fraud, willful misconduct or gross negligence, (ii) modifying the scope of and recipients under any releases provided by Cerberus in connection with the Chapter 11 Cases, and any releases by Cerberus shall be to the extent, and only the extent, set forth in the Cerberus Release and shall not be expanded or altered by anything contained in the Plan; provided further that nothing in this Confirmation Order or section 9.6(b) of the Plan shall be deemed to release Plethico Pharmaceuticals Limited, or any of its respective successors or assigns, with respect to any Guaranty Obligations under the Chatsworth Leases, (iii) modifying any rights of the Aurobindo Parties under the Purchase Agreement, the New Natrol Settlement Agreement, or any rights of the Aurobindo Parties against the Plethico Parties, including, but not limited to those arising under the Plethico/Natrol Settlement Agreement, or (iv) be construed as including the Internal Revenue Service as a Releasing Party.

36.    <u>Release Limitations</u>.  Notwithstanding anything otherwise to the contrary, no provision of the Plan or of this Confirmation Order, including any release or exculpation provision, shall modify, release or otherwise limit the liability of any Person not specifically released hereunder, including any Person that is a co-obligor or joint tortfeasor of a Released Party, that otherwise is liable under theories of vicarious or other derivative liability.  Further, notwithstanding anything to the contrary in this Confirmation Order or the Plan, Plethico and Plethico US retain and reserve the right to object to any Fee Claims.  Finally, notwithstanding anything to the contrary in the Plan, the releases set forth in the New Natrol Settlement Agreement shall (a) not be modified and (b) be fully enforceable as of the Effective Date upon approval of the New Natrol Settlement Agreement through this Confirmation Order.

37.    <u>Approval of Releases</u>.  Entry of this Confirmation Order constitutes the Bankruptcy Court's approval of the releases set forth in Article IX of the Plan pursuant to Bankruptcy Rule 9019 and the New Natrol Settlement Agreement and the Bankruptcy Court hereby finds that the releases are: (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action thereby released; (b) in the best interests of the Debtors and all Holders of Claims; (c) fair, equitable, and reasonable; (d) approved after due notice and opportunity for hearing; and (e) a bar to any of the Debtors or Releasing Parties asserting any Claim or Cause of Action thereby released.

38.    <u>Term of Bankruptcy Injunction or Stays</u>.  Unless otherwise provided in the Plan, this Confirmation Order, or a separate Order from the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, (i) shall remain in full force and effect until the later of the Effective Date and the date indicated in such

applicable Order and (ii) with respect to all proceeds of the Sale Transaction and Excluded Assets (as defined in the Purchase Agreement), shall remain in effect until, and for purposes of enjoining any action interfering with, the final Distribution of such proceeds pursuant to the terms of the Plan.

39.    Claims Agent.  Unless Epiq has been previously relieved of its duties by written notice of the Debtors prior thereto, the request for the Final Decree shall provide that Epiq, in its capacity as claims, noticing, and balloting agent shall be relieved of such duties on the date of the entry of the Final Decree.

40.    Creditors' Committee.  The functions of the Creditors' Committee shall terminate on the later of:  (i) the Effective Date; (ii) the conclusion of any appeals with respect to this Confirmation Order (but such functions shall relate solely to services performed related to such appeal and work with respect to final fee applications); and (iii) entry of Final Order(s) on all Fee Claims, and the Creditors' Committee shall be deemed dissolved as of such date. Following the Effective Date, the attorneys to the Creditors' Committee shall be entitled to assert any claims for compensation for services rendered or reimbursement for expenses with respect to (i) through (iii) herein, subject to the cap set forth in Section 12.5 of the Plan.

41.    No Discharge.  Notwithstanding any provision of the Plan to the contrary, the Debtors are not entitled to, and shall not receive, a discharge pursuant to section 1141(d)(3) of the Bankruptcy Code; provided, however, for the avoidance of doubt, that to the extent the Debtors, Natrol, and the Buyer provided mutual discharges or releases pursuant to the Settlement Agreement, this provision shall not impact those discharges or releases.

42.    Subordination.  All Claims against the Debtors and all rights and Claims between or among Holders of Claims relating in any manner whatsoever to Claims against the

Debtors, based upon any claimed subordination rights (if any), shall be deemed satisfied by the Distributions under the Plan, and such subordination rights shall be deemed waived, released, and terminated as of the Effective Date.

43.     Amendment to Claims. After the Confirmation Date, a proof of Claim or Administrative Expense Claim may not be amended to increase the amount of the Claim or elevate the priority of the Claim without the authorization of the Bankruptcy Court. Any amendment to a proof of Claim or Administrative Expense Claim submitted after the Confirmation Date shall be deemed Disallowed in full and expunged, unless the Holder of the Claim or Administrative Expense Claim has obtained prior Bankruptcy Court authorization to File the amendment. After the Effective Date, upon the satisfaction of Allowed Claims, the Reorganized Debtors or the Wind-Down Committee shall periodically file (and serve on the affected parties and counsel to the Aurobindo Parties) a Notice of Satisfaction. The Debtors shall not file further amendments their schedules of assets and liabilities after the Confirmation Date.

44.     Bar Date for Administrative Expense Claims. Pursuant to the Plan, any request for payment of an Administrative Expense Claim must be filed by the Administrative Expense Claim Bar Date. Any objections to Administrative Expense Claims and Claims shall be Filed and served on or before the later of (i) ninety (90) days after the Confirmation Date and (ii) such later date as may be fixed by the Bankruptcy Court, which later date may be fixed before or after the date specified in clause (i) above. The Debtors and the Reorganized Debtors shall be entitled to File motions to extend the initial deadline to object to Administrative Expense Claims and Claims on notice to the GUC Representative, and with respect to extension of the deadline to object to Claims, on notice to counsel for the Aurobindo Parties, and the Bankruptcy

01:17062257.11

Court may enter an Order approving such motion without further notice or a hearing. No objection shall be required with respect to a proof of Claim or proof of Administrative Expense Claim Filed after the applicable Bar Date, and any and all such Claims and Administrative Expense Claims shall be deemed Disallowed unless otherwise ordered by the Bankruptcy Court after notice and a hearing. The Plan is intended not to be in any respect inconsistent with, or to modify, threaten, hinder, or prevent the implementation of, any terms of the Claims Administration Protocol.

45. <u>Professional Fee Claim Bar Date</u>. All Fee Claims must be Filed and served on the Reorganized Debtors, their counsel, the Wind-Down Committee, the United States Trustee, and former counsel to the Creditors' Committee no later than thirty (30) days after the Effective Date.

46. <u>Objections to Final Fee Applications</u>. Objections to Fee Claims, if any, must be Filed and served pursuant to the procedures set forth in the Plan and this Confirmation Order no later than twenty-one (21) days after the Effective Date or such other date as may be established by the Bankruptcy Court.

47. <u>The GUC Representative</u>. As of the Effective Date of the Plan, the GUC Representative shall be appointed and his rights and duties shall be governed by the Plan, and the reasonable fees and expenses of the GUC Representative and his advisors shall be subject to the cap set forth in the GUC Representative Reserve. The GUC Representative shall be released and discharged of and from further authority, duties, responsibilities, and obligations relating to, arising from, and in connection with, the Chapter 11 Cases, on the later of: (i) the date all Allowed Class 2 Claims are paid in full, with Interest, as applicable, and subject to the terms of the Plan; (ii) the first Business Day after the objection deadline related to the final Notice of

01:17062257.11

Satisfaction with respect Class 2 Claims filed by the Reorganized Debtors or the Wind-Down Committee, or the first Business Day following the resolution or determination of all objections to all Notices of Satisfaction with respect to Class 2 Claims; and (iii) the date that all reasonable fees and expenses of the GUC Representative and its professionals shall have been paid, subject to the cap amount set forth in the GUC Representative Reserve or, if the subject of a timely dispute, resolved consensually or pursuant to a Final Order.

48.     Notwithstanding any other provision of the Plan, the GUC Representative shall not be liable to any entity for anything other than the GUC Representative's own fraud, gross negligence or willful misconduct. The GUC Representative may, in connection with the performance of its duties, and in its sole discretion, consult with its counsel, accountants, financial advisors, or other professionals, and shall not be liable for anything done or omitted or suffered to be done in accordance with the advice or opinions obtained from such Persons. Except with respect to the GUC Representative's fraud, gross negligence or willful misconduct, if the GUC Representative determines not to consult with its counsel, accountants, financial advisors, or other professionals, the failure to so consult shall not itself impose any liability on the GUC Representative or any of its designees. Notwithstanding anything contained herein, the GUC Representative shall not be entitled to reimbursement of legal fees or expenses or to indemnification or contribution from the Estates, the Reorganized Debtors, or the Wind-Down Committee with respect to the GUC Representative's own fraud, gross negligence, or willful misconduct.

49.     Post-Effective Date Fees and Expenses. From and after the Effective Date, the Reorganized Debtors or the Wind-Down Committee shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable

01:17062257.11

43

fees and expenses of professional Persons thereafter incurred by the Reorganized Debtors and the Wind-Down Committee, including those fees and expenses incurred in connection with the implementation and consummation of the Plan, which fees and expenses shall constitute Wind-Down Expenses. In addition, the Reorganized Debtors or the Wind-Down Committee shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the documented, reasonable fees and expenses of the Creditors' Committee's professionals exclusively to the extent that such reasonable fees and expenses relate to defense or prosecution of fees and expenses earned prior to the Confirmation Date in an amount not to exceed $25,000 in the aggregate. For the avoidance of doubt, post-effective date fees and expenses of the GUC Representative and its professionals shall be paid by the Reorganized Debtors or the Wind-Down Committee in accordance with terms of the Plan and shall be subject to the cap set forth in the GUC Representative Reserve.

50. <u>Indian Insolvency Proceeding</u>. Notwithstanding anything to the contrary that may be contained in this Confirmation Order, none of the Plethico Parties shall be able to use the existence of this Confirmation Order, or any of the provisions, findings of fact, conclusions of law, or orders contained herein, for any purpose in (1) *In the Matter of Plethico Pharmaceuticals Limited* and Application Nos. 3211 to 3217, 3240 to 3242, 3244 to 3247, 3332 to 3350, 3352, 3386 to 3413, 3468 to 3496, 3500, 3514, 3584 to 3609, 3708 to 3720, 3720A, 3721 to 3761, 3840 to 3856, 3931, 3975 to 4007, 4092 to 4109, 4136 to 4155, 4228 to 4245, 4280 to 4321, 4380 to 4386, 4443 to 4446, 4524 to 4546, 4577, 4578, 4602/58A(9)/CLB/MB/2014/7048 before the Company Law Board, Mumbai Bench, Mumbai; (2) Company Petition No. 35 of 2013 before the High Court of Madhya Pradesh at Indore; (3) Company Appeal No. 5/2014 before the Division Bench, Madhya Pradesh High

Court at Indore; and (4) any appellate or other proceedings related thereto in India. ~~Consistent with the Bankruptcy Court's ruling on the record at the May 8, 2015 hearing, neither Citibank, N.A., London Branch ("Citibank"), as indenture trustee of those certain bonds issued pursuant to a trust deed dated October 22, 2007 by and between Plethico India and Citibank (the "Indenture Trustee"), nor the bondholders it represents (the "Bondholders") have standing in these Chapter 11 Cases.~~ Further, nothing contained in this paragraph 50 or elsewhere in this Confirmation Order shall give or confer standing in these Chapter 11 Cases to (a) the "Indenture Trustee" [*Citibank, N.A., London Branch*]; (b) the "Bondholders" [*holding bonds issued pursuant to a trust deed dated October 22, 2007 by and between Plethico India and the Indenture Trustee*]; or (c) Plethico India.

51.     <u>References to Provisions of the Plan</u>.  The failure to specifically include or reference any particular provision of the Plan, including any provision in a document in the Plan Supplements, in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety and such provisions shall have the same binding effect, enforceability, and legality as every other provision of the Plan.  Each term and provision of the Plan, as it may have been altered or interpreted by the Bankruptcy Court, is valid and enforceable pursuant to its terms.

52.     <u>Substantial Consummation</u>.  The substantial consummation of the Plan, within the meaning of section 1101(2) of the Bankruptcy Code, shall be deemed to occur on or as of the Effective Date.

53.     <u>Notice of Entry of Confirmation Order</u>.  Pursuant to Bankruptcy Rules 2002(f)(7)and 3020(c), promptly after entry of this Confirmation Order, the Debtors shall cause a notice of the entry of this Confirmation Order to be served on all parties on whom the Confirmation Hearing Notice was served.

54.    <u>Reversal</u>.  If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by subsequent order of this Bankruptcy Court or any other court of competent jurisdiction, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' or other applicable persons' receipt of written notice of such order; <u>provided, however</u>, that, the Settlement Agreement is hereby excluded from this provision. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the Effective Date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order or any amendments or modifications thereto.

55.    <u>Confirmation Order Controlling</u>.  If there is any inconsistency between the provisions of the Plan and this Confirmation Order, the terms and conditions contained in this Confirmation Order shall govern; <u>provided, however</u>, that solely with respect to the New Natrol Settlement Agreement, in the event of any conflict between the terms of the Plan and/or the Confirmation Order, and the New Natrol Settlement Agreement, the terms of the New Natrol Settlement Agreement shall govern; <u>provided, however</u>, with respect to the provision of the New Natrol Agreement providing for the retroactive amendment of the Sale Order, this Confirmation Order shall govern.

56.    <u>Applicable Non-Bankruptcy Law</u>.    Pursuant to section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order and the Plan shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

01:17062257.11

57.    <u>Retention of Jurisdiction</u>.  Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court, except as otherwise provided in the Plan or herein, shall retain exclusive jurisdiction over all matters arising in, arising out of, and related to, the Chapter 11 Cases and the Plan.

58.    <u>Standing</u>.  Notwithstanding anything to the contrary set forth herein or in the Plan, the Aurobindo Parties shall have standing before this Bankruptcy Court, and any other court of competent jurisdiction, to enforce the terms of the New Natrol Settlement Agreement.

59.    <u>Final Order, Effective Date</u>.  This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof. Notwithstanding Bankruptcy Rules 7062 or 3020(e), this Confirmation Order shall be effective and enforceable immediately upon its entry.

Dated: May 22, 2015
       Wilmington, Delaware

_____
BRENDAN LINEHAN SHANNON
CHIEF UNITED STATES BANKRUPTCY JUDGE

01:17062257.11